**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern _____ District of _____ New York _____
                                              (State)

Case number (*If known*): _____ Chapter _____

☐ Check if this is an
   amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/19

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Stearns Holdings, LLC |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | Stearns Holdings, Inc. |
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 45-1008219 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 750 State Hwy 121, Ste. 150 | |
| Number  Street | Number  Street |
| | P.O. Box |
| Lewisville       TX       75067 | |
| City        State        ZIP Code | City            State        ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Denton | |
| County | Number       Street |
| | City        State            ZIP Code |

5. **Debtor's website** (URL)
https://www.stearns.com/
https://www.stearnswholesale.com/
https://www.stearnsfig.com/
https://www.stearnsnondelegatedcorrespondent.com/

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above.

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

<u>5</u> <u>2</u> <u>2</u> <u>3</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☒ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.  District _____  When _____  Case number _____
                                                         MM / DD / YYYY

           District _____  When _____  Case number _____
                                                         MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes.  Debtor <u>See Schedule 1</u>  Relationship <u>Affiliate</u>

       District <u>New York</u>  When <u>Date Hereof</u>
                                                      MM / DD / YYYY
       Case number, if known _____

Debtor    19-12226-scc    Doc 1    Filed 07/09/19    Entered 07/09/19 00:37:58    Main Document
Stearns Holdings, LLC       Pg 3 of 34       Case number *(if known)* _____
Name

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

     Number      Street

_____

_____

     City                State     ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

     Contact name _____

     Phone _____

---

### Statistical and administrative information (Consolidated with debtor affiliates)

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49             ☐ 1,000-5,000           ☐ 25,001-50,000

☐ 50-99           ☐ 5,001-10,000         ☐ 50,001-100,000

☐ 100-199        ☐ 10,001-25,000       ☐ More than 100,000

☒ 200-999

**15. Estimated assets**

☐ $0-$50,000             ☐ $1,000,001-$10 million       ☐ $500,000,001-$1 billion

☐ $50,001-$100,000     ☐ $10,000,001-$50 million     ☒ $1,000,000,001-$10 billion

☐ $100,001-$500,000    ☐ $50,000,001-$100 million    ☐ $10,000,000,001-$50 billion

☐ $500,001-$1 million     ☐ $100,000,001-$500 million   ☐ More than $50 billion

Debtor    Stearns Holdings, LLC

Case number *(if known)* _____

Name

**16. Estimated liabilities**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☒ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

WARNING  --   Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17.    Declaration and signature of authorized representative of debtor**

- The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.
- I have been authorized to file this petition on behalf of the debtor.
- I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   07/09/2019
     MM / DD / YYYY

X _____
Signature of authorized representative of debtor

David Schneider
Printed name

Title   Chief Executive Officer

---

**18. Signature of attorney**

X   */s/ Jay M. Goffman*
Signature of attorney for debtor

Date    07/09/2019
    MM / DD / YYYY

Jay M. Goffman
Printed name

Skadden, Arps, Slate, Meagher & Flom LLP
Firm name

Four Times Square
Number    Street

New York    NY    10036-6522
City    State    Zip Code

(212) 735-3000
Contact phone

Jay.Goffman@skadden.com
Email address

1911239
Bar number

NY
State

---

## SCHEDULE 1 – AFFILIATED DEBTORS

The following list identifies all of the affiliated entities, including the Debtor filing this petition, that have filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended, substantially contemporaneously with the filing of this petition.

|   | **DEBTOR** | **FEDERAL EIN** |
|---|---|---|
| 1 | Stearns Holdings, LLC | 45-1008219 |
| 2 | Stearns Co-Issuer, Inc. | 47-2057096 |
| 3 | Stearns Lending, LLC | 33-0051773 |
| 4. | Stearns Ventures, LLC | 45-3682386 |
| 5. | Protos Acquisition LLC | 47-4644941 |
| 6. | bSNAP, LLC | 82-2082498 |
| 7. | Private Mortgage Advisors, LLC | 20-0013136 |

`
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Evan A. Hill
Edward P. Mahaney-Walter
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Proposed Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STEARNS HOLDINGS, LLC,** *et al.*, | **Case No. 19-_____ (_____)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

### DEBTORS' CONSOLIDATED CORPORATE OWNERSHIP STATEMENT PURSUANT TO FED. R. BANKR. P. 1007(a)(1) AND 7007.1 AND LOCAL RULE 1007-3

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-3 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), Stearns Holdings, LLC, ("Stearns Holdings, LLC") and certain of its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully represent:

1.   Blackstone Capital Partners VI NQ/NF L.P owns 99.755% of the equity interests in Protos Acquisition LLC.

2.   Protos Acquisition LLC owns 69.87% of the equity interests in Stearns Holdings, LLC.

---

[1]   The Debtors and the last four digits of their taxpayer identification numbers are: Stearns Holdings, LLC (8219); Stearns Co-Issuer, Inc. (7096); Stearns Lending, LLC (1773); Stearns Ventures, LLC (2386); Protos Acquisition LLC (4941); bSnap, LLC (2498); and Private Mortgage Advisors, LLC (7493). The address of Protos Acquisition LLC is 345 Park Avenue, New York, NY 10154. The address of the other Debtors is c/o Stearns Lending, LLC, 750 East Highway, 121 Bypass, Suite 150, Lewisville, TX 75067.

3.      Artemis Holdings, Inc. owns 29.00% of the equity interests in Stearns Holdings, LLC.

4.      Stearns Holdings, LLC owns 100% of the equity interests in the following Debtors: Stearns Co-Issuer, Inc. and Stearns Lending, LLC.

5.      Stearns Lending, LLC owns 100% of the equity interests in the following Debtors: Stearns Ventures, LLC and bSNAP, LLC.

6.      Stearns Ventures, LLC owns 100% of the equity interests in Private Mortgage Advisors, LLC.

7.      An organizational chart that illustrates the Debtors' corporate structure is attached.

Stearns Organizational Chart



**Consolidated List of the Holders of the Debtors' 30 Largest Unsecured Claims**

   Pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, set forth below is a list of creditors holding the thirty (30) largest unsecured claims against Stearns Holdings, LLC, Stearns Co-Issuer, Inc.; Stearns Lending, LLC; Stearns Ventures, LLC; Protos Acquisition LLC; bSNAP, LLC; and Private Mortgage Advisors, LLC (collectively, the "Debtors"), as of approximately July 9, 2019. This list has been prepared on a consolidated basis, based upon the books and records of the Debtors. The information presented in the list below shall not constitute an admission by, nor is it binding on, the Debtors.

This List of Creditors does not include (a) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101 or (b) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 1. Wilmington Trust, National Association, As Indentured Trustee Attn: Boris Treyger Vice President 166 Mercer Street Suite 2R New York, NY 10012 United States<br><br>Alston & Bird LLP Attn: Jason J. Solomon, Esq. 101 S. Tryon Street Suite 4000 Charlotte, NC 28280 United States | Boris Treyger EMAIL - btreyger@wilmingtontrust.com PHONE - 646-645-1851 FAX - 302-636-8587<br><br>Jason J. Solomon EMAIL – jason.solomon@alston.com PHONE – 704-444-1295 | Potential Deficiency Claim - 9.375% Senior Secured Notes 2020 | Contingent, Unliquidated | $189,808,620 | Undetermined | Undetermined |
| 2. Thoroughbred Capital Advisors, LLC Attn: Joe F. Jackson Managing Partner 4745 W. 136Th Street Suite 109 Leawood, KS 66224 United States | Joe F. Jackson EMAIL - joefjackson@ymail.com PHONE - 913-558-0808 | Contract/Trade | Contingent, Unliquidated | | | $9,350,002 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 3. Loan Care Servicing Center, Inc. Attn: Dave Worrall President 3637 Sentara Way Ste 303 Virginia Beach, VA 23452 United States | Dave Worrall EMAIL - dave.worrall@loancare.net PHONE - 972-437-5943 FAX - 757-466-0384 | Trade Debt | Contingent, Unliquidated | | | $1,089,614 |
| 4. Jones, Ken Attn: Jody Grovier 6130 Anderson Rd Forestville, CA 95436 United States | Jody Grovier EMAIL - grove@sonic.net PHONE - 707-887-2365 | Severance | | | | $583,333 |
| 5. Tata America International Corporation Attn: Surya Kant Chief Executive Officer 12977 Collection Center Dr Chicago, IL 60693 United States | Surya Kant EMAIL - surya.kant@tcs.com PHONE - 212-557-8038 FAX - +91-22-6778 9000 | Trade Debt | | | | $ 316,075 |
| 6. Microsoft Licensing, GP Attn: Erich Andersen Corporate VP and Chief IP Counsel 1950 N. Stemmons Fwy, Ste 5010 LB #842467 Dallas, TX 75207 United States | Erich Andersen EMAIL - erich@microsoft.com PHONE - 425-421-6324 FAX - 425-706-7329 | Trade Debt | | | | $297,815 |
| 7. Docutech, LLC Attn: Amy Brandt President and Chief Executive Officer 4250 N. Drinkwater Blvd., Ste 110 Scottsdale, AZ 85251 United States | Amy Brandt EMAIL - abrandt@docutech.com PHONE - 208-535-9119 FAX - 208-932-0953 | Trade Debt | | | | $227,098 |
| 8. Synechron Inc Attn: Faisal Husain Chief Executive Officer 1 Corporate Place South Suite 200 Piscataway, NJ 08854 United States | Faisal Husain EMAIL - husain.faisal@synechron.com PHONE - 212-619-5200 FAX - 212-619-5210 | Trade Debt | | | | $209,168 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 9. TALX Corporation Attn: William W. Canfield President and Chief Executive Officer 4076 Paysphere Cir Chicago, IL  60674-4076 United States | William W. Canfield PHONE - 972-755-2100 FAX - 972-755-2080 | Trade Debt | | | | $170,614 |
| 10. SHI International Corp. Attn: Thai Lee President and Chief Executive Officer 290 Davidson Ave Somerset, NJ  08873 United States | Thai Lee EMAIL - thai_lee@shi.com PHONE - 203-380-8124 | Trade Debt | | | | $153,741 |
| 11. Optiv Security, Inc Attn: Daniel D. Burns Co-Founder, Chief Financial Officer & Director 1125 17th Street Suite 1700 Denver, CO  80202 United States | Daniel D. Burns PHONE - 303-298-0600 | Trade Debt | | | | $ 108,592 |
| 12. LV Office 1 & 2, LLC Attn: Rena Padachy Director, Landlord's Broker C/O Cushman & Wakefield 721 Emerson Road, Suite 600 St. Louis, MO  63141 United States | Rena Padachy EMAIL - rena.chappell@cushwake.com PHONE - 972-663-9704 | Landlord | | | | $ 84,241 |
| 13. Zayo Group LLC Attn: Matt Steinfort Chief Financial Officer 1805 29th St Boulder, CO  80301 United States | Matt Steinfort EMAIL - matt.steinfort@zayo.com PHONE - 303-577-5874 | Trade Debt | | | | $ 80,756 |
| 14. Mesenbrink, Daniel S Attn: Daniel S Mesenbrink 2801 Tyler St Southlake, TX  76092 United States | Daniel S Mesenbrink EMAIL - scottmesenbrink@yahoo.com PHONE - 469-231-6412 | Severance | | | | $ 66,250 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 15. | CultureIQ, Inc. Attn: Gregory Besner Founder, Chief Executive Officer, President and Director 18 Slope Dr Short Hills, NJ 07078 United States | Gregory Besner EMAIL - greg.besner@cultureiq.com PHONE - 212-755-8633 | Trade Debt | | | | $ 55,361 |
| 16. | Momentifi Attn: Gibran Nicholas Founder and Chief Executive Officer 3000 Old Alabama Road Suite 119-477 Alpharetta, GA 30022 United States | Gibran Nicholas EMAIL - gibran@cmpsinstitute.org PHONE - 630-901-2000 | Trade Debt | | | | $ 43,155 |
| 17. | Black Knight Financial Services, Inc. Attn: Darlene Ledet 601 Riverside Avenue Jacksonville, FL 32204 United States | Darlene Ledet EMAIL - darlene.ledet@bkfs.com PHONE - 904-854-3153 | Trade Debt | | | | $ 40,196 |
| 18. | Hewlett-Packard Financial Services Attn: Irv Rothman President and Chief Executive Officer 3000 Hanover Street Palo Alto, CA 94304 United States | Irv Rothman EMAIL - irv.rothman@hpe.com PHONE - 888-215-8868 FAX - 908-898-4146 | Trade Debt | | | | $ 32,920 |
| 19. | Staples, Inc. Attn: J. Alexander Douglas Chief Executive Officer 500 Staples Drive Framingham, MA 01702 United States | J. Alexander Douglas EMAIL - sandy.douglas@staples.com PHONE - 508–253–5000 FAX - 508-253-8989 | Trade Debt | | | | $ 32,562 |
| 20. | Corelogic Flood Services, LLC Attn: Frank Martell President and Chief Executive Officer 40 Pacifica, Suite 900 Irvine, CA 92618 United States | Frank Martell EMAIL - fmartell@corelogic.com PHONE - 949-214-1888 FAX - 800-237-6526 | Trade Debt | | | | $ 32,452 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 21. | Genesys Telecommunications Laboratories, Inc. Attn: Paul Segre Chairman 2001 Junipero Serra Blvd. #700 Daly City, CA  94014 United States | Paul Segre EMAIL - paul.segre@genesys.com PHONE - 650-466-1155 FAX - 650-466-1260 | Trade Debt | | | | $ 30,522 |
| 22. | 1-800 Contacts Inc Attn: John Graham President and Chief Executive Officer 261 Data Dr Draper, UT  84020 United States | John Graham EMAIL - jgraham@1800contacts.com PHONE - 801-924-9900 FAX - 801-924-9923 | Landlord | | | | $ 29,182 |
| 23. | MoreDirect, Inc dba Connection Enterprise Solutions Attn: Tim McGrath President and Chief Executive Officer Route 101A 730 Milford Road Merrimack, NH  03054-4631 United States | Tim McGrath EMAIL - tmcgrath@pcconnection.com PHONE - 603-890-8855 | Trade Debt | | | | $ 28,677 |
| 24. | AT&T Corp Attn: David Mcatee General Counsel 14575 Presidio Square Blvd Houston, TX  77083 United States | David Mcatee EMAIL - dm952g@att.com PHONE - 214 757-3300 | Trade Debt | | | | $ 28,614 |
| 25. | Randstad Technologies, LLC Attn: Karen Fichuk Chief Executive Officer 3625 Cumberland Blvd Atlanta, GA  30339 United States | Karen Fichuk EMAIL - karen.fichuk@randstadusa.com PHONE - 770-937-7000 | Trade Debt | | | | $ 28,056 |

| Name of creditor and complete mailing address, including zip code | | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total Claim, if partially secured | Deduction for value of collateral or setoff | Unsecured Claim |
| 26. | Pendo Management LLC Attn: Mike Peck Co-Founder 200 Se Douglas Street Suite 200 Lee's Summit, MO 64063 United States | Mike Peck EMAIL - mpeck@pendomanagement.com PHONE - 816-332-6627 FAX - 816-332-6628 | Trade Debt | | | | $ 27,775 |
| 27. | Convergeone, Inc Attn: John A. Mckenna Chairman and Chief Executive Officer NW 5806 Po Box 1450 Minneapolis, MN 55485-5806 United States | John A. Mckenna EMAIL - jmckenna@converge-one.com PHONE - 651-796-6791 | Trade Debt | | | | $ 25,648 |
| 28. | Assurance Software Inc. Attn: Craig Potts Chief Executive Officer 680 E Swedesford Road Wayne, PA 19087 United States | Craig Potts EMAIL - cwpotts@bellsouth.net PHONE - 800-478-7645 | Trade Debt | | | | $ 21,320 |
| 29. | The Stratmor Group Attn: Garth Graham Senior Partner 5445 DTC Parkway Penthouse 4 Greenwood Village, CO 80111 United States | Garth Graham EMAIL - Garth.graham@stratmorgroup.com PHONE - 954-325-7816 | Earn Out | Contingent | | | $ 20,000 |
| 30. | Lehman Brothers Holdings, Inc. Attn: William A Maher Plaintiff Counsel, Wollmuth Maher & Deutsch LLP 500 Fifth Avenue New York, NY 10110 United States | William A Maher EMAIL - wmaher@wmd-law.com PHONE - 212-382-3300 | Litigation | Disputed | | | Undetermined |

**Fill in this information to identify the case:**

Debtor name        Stearns Holdings, LLC

United States Bankruptcy Court for the:    Southern    District of New York
                                            (State)

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐   *Schedule H: Codebtors* (Official Form 206H)

☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐   *Amended Schedule* _____

☒   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Consolidated with debtor affiliates) (Official Form 204)

☒   Other document that requires a declaration __Consolidated Corporate Ownership Statement__.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __July 9, 2019__

x _____
Signature of individual signing on behalf of debtor

David Schneider
Printed name
Chief Executive Officer
Position or relationship to debtor

# United States Bankruptcy Court
# Southern District of New York

In re:  Stearns Holdings, LLC

Debtor(s)

Case No. _____

Chapter ____11_____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtors' equity security holders which is prepared in accordance with rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure for filing in this Chapter 11 Case.

| Name and last known address or place of business of holder | Number/Percentage of Securities |
| --- | --- |
| Protos Acquisition, LLC<br>345 Park Avenue<br>New York, NY 10154-0191 | 69.87 % |
| Artemis Holding, Inc.<br>1851 E. First Street, Suite 700<br>Santa Ana, CA 92705 | 29% |

### ACTION BY WRITTEN CONSENT
### OF THE BOARD OF MANAGERS OF
### STEARNS HOLDINGS, LLC
### JULY 8, 2019

The undersigned, being duly elected members of the board of managers of Stearns Holdings, LLC, a Delaware limited liability company (the "Company"), acting pursuant to the Company's organizational documents, as they may be amended and/or restated from time to time, and the Delaware Limited Liability Company Act, do hereby consent in writing to the taking of the following actions and adopt the following resolutions as of the date first set forth above to the same extent and to have the same force and effect as if such resolutions were approved and adopted at a duly convened meeting of the Company:

### I.        Chapter 11 Filing

WHEREAS, the undersigned have considered presentations by the management and the financial and legal advisors of the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it and the effect of the foregoing on the Company's business, creditors, stakeholders and other parties in interest;

WHEREAS, the undersigned have had the opportunity to consult with the Company's management and financial and legal advisors and fully consider each of the strategic alternatives available to the Company;

WHEREAS, based on its review of all available alternatives and advice provided by such advisors and professionals, the undersigned have determined that it is in the best interest of the Company and its stakeholders for the Company to take the actions specified in the following resolutions;

WHEREAS, the undersigned have been presented with a proposed voluntary petition (the "Chapter 11 Petition") to be filed by the Company in the United Stated Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in which the authority to operate as a debtor-in-possession will be sought;

WHEREAS, the undersigned have had the opportunity to consult with the management and the legal and financial advisors of the Company regarding the material terms of the "first day" pleadings, applications, affidavits and other documents (collectively, the "Chapter 11 Filings") to be filed by the Company before the Bankruptcy Court in connection with the commencement of the Company's chapter 11 case;

WHEREAS, the undersigned, having considered the financial and operational aspects of the Company's business and the best course of action to maximize value, deem it advisable and in the best interest of the Company, its creditors, stakeholders and other interested parties that the Chapter 11 Petition be filed by the Company seeking relief under the provisions of chapter 11 of the Bankruptcy Code;

NOW, THEREFORE, BE IT

RESOLVED, that in the judgment of the undersigned, it is desirable and in the best interest of the Company, its creditors, stakeholders and other interested parties, that the Chapter 11 Petition and the Chapter 11 Filings be filed by the Company seeking relief under the provisions of chapter 11 of the Bankruptcy Code, and the filing of such Chapter 11 Petition and Chapter 11 Filings is authorized hereby; and be it further

RESOLVED, that the officers of the Company, or any one of them (collectively, the "Officers"), be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to execute and verify the Chapter 11 Petition and the Chapter 11 Filings in the name of the Company under chapter 11 of the Bankruptcy Code and to cause the same to be filed in the Bankruptcy Court in such form and at such time as the Officer(s) executing said Chapter 11 Petition and Chapter 11 Filings on behalf of the Company shall determine.

II.      **Plan of Reorganization and Disclosure Statement**

WHEREAS, the undersigned have had the opportunity to consult with the management and the legal and financial advisors of the Company regarding the material terms of a proposed Plan of Reorganization (the "Plan of Reorganization") pursuant to which the Company and certain of its affiliates would, among other things, implement a reorganization of the Company's liabilities and emerge from its chapter 11 case;

WHEREAS, the undersigned have had the opportunity to consult with the management and the legal and financial advisors of the Company regarding the material terms of a proposed Disclosure Statement (the "Disclosure Statement") accompanying the Plan of Reorganization and the contents and disclosures thereof;

WHEREAS, the undersigned have determined that it is advisable and in the best interest of the Company, its creditors, stakeholders and other interested parties that the Company, in furtherance of a reorganization of the Company's liabilities and emergence from chapter 11, file the Plan of Reorganization and the Disclosure Statement with the Bankruptcy Court and to solicit acceptances and approvals thereof;

NOW, THEREFORE, BE IT

RESOLVED, that the undersigned authorize, approve, adopt and ratify the form, terms and provisions of, and each of the transactions contemplated by the Plan of Reorganization and the Disclosure Statement, as each may be amended or modified from time to time; and be it further

RESOLVED, that the Company's advisors be, and each hereby is, authorized to prepare, finalize and file, as appropriate, procedures for the solicitation and tabulation of votes to accept or reject the Plan of Reorganization and procedures for the selection of a Plan of Reorganization sponsor.

III.      **Cash Flow DIP Facility**

WHEREAS, the Company's subsidiary Stearns Lending, LLC ("Stearns Lending"), as borrower, has requested that one or more potential financing sources (collectively, the "Cash Flow DIP Lenders" and, each, a "Cash Flow DIP Lender") arrange, backstop and/or provide one or more debtor-in-possession superpriority credit facilities, including a delayed draw a term loan facility in an aggregate principal amount of up to approximately $35 million (the "Cash Flow DIP Facilities") subject to exceptions and limitations to be set forth in any orders of the Bankruptcy Court concerning any of the Cash Flow DIP Facilities (the "Cash Flow DIP Financing Orders");

WHEREAS, in connection with the Cash Flow DIP Facilities, the Cash Flow DIP Lenders are requiring that the Company and certain direct or indirect subsidiaries of the Company (the "Cash Flow DIP Guarantors," and together with the Company and any other subsidiary of the Company that grants a lien to secure the Cash Flow DIP Facilities, the "Cash Flow DIP Parties") guarantee the obligations under the Cash Flow DIP Facilities on a joint and several basis (collectively, the "Cash Flow DIP Guaranties" and, each, a "Cash Flow DIP Guaranty");

WHEREAS, in connection with the Cash Flow DIP Facilities, the Cash Flow DIP Lenders are requiring that the Cash Flow DIP Parties grant continuing security interests in substantially all of their respective assets that now or hereafter come into the possession, custody or control of the Cash Flow DIP Parties (other than assets securing the Warehouse DIP Facility), in order to secure the prompt and complete payment, observance and performance of all obligations under the Cash Flow DIP Facilities (including, without limitation, the Cash Flow DIP Guaranties), subject to exceptions and limitations to be set forth in the Cash Flow DIP Financing Orders and the other Cash Flow DIP Documents (as defined below);

WHEREAS, in connection with the Cash Flow DIP Facilities and the transactions contemplated thereby, the Company is contemplated to execute one or more term sheets evidencing the initial terms thereof and/or enter into one or more credit agreements in such forms as may be approved by any Officer, and the Company, the other Cash Flow DIP Parties and certain of their respective subsidiaries may be required to enter into certain other instruments, agreements or documents related thereto, including, without limitation, financing term sheets or proposals, intellectual property security agreements, control agreement, cash collateral agreements, assignment agreement, stock powers, mortgages, deeds of trust, debentures, share pledges, pledge agreements, security agreements, other collateral documents, reaffirmation agreements, intercreditor or subordination agreements, forbearance agreements, intercompany subordination agreements, intercompany notes, commitment letters, engagement letters, fee letters and payoff letters in such forms as may be approved by any Officer (all of the foregoing, collectively with the Cash Flow DIP Guaranties and the Cash Flow DIP Financing Orders, the "Cash Flow DIP Documents");

WHEREAS, the undersigned have determined that the Cash Flow DIP Facilities are in the best interest of the Company, its subsidiaries and their respective stakeholders, and, that it is in the best interest of the Company and its subsidiaries to (i) consummate the financing contemplated by the Cash Flow DIP Facilities, (ii) execute and deliver the Cash Flow DIP Documents and (iii) authorize the officers of the Company to take any and all actions as may be deemed appropriate to effect and perform the transactions contemplated thereby;

3

NOW, THEREFORE, BE IT

RESOLVED, that (i) the Cash Flow DIP Facilities, in the amounts and on the terms and conditions set forth in the term sheet and/or draft agreements provided to the undersigned, or such other amounts, terms and conditions as deemed necessary, desirable or appropriate by any Officer, (ii) the transactions contemplated thereby (including the borrowing of loans thereunder and issuance or deemed issuance of debt thereunder) and (iii) the execution and delivery by the Company of any Cash Flow DIP Documents evidencing or in connection with the Cash Flow DIP Facilities and the performance by the Company of all of its obligations thereunder and under the Cash Flow DIP Financing Orders, be, and they hereby are, in all respects, authorized, ratified, approved and adopted by the undersigned on behalf of the Company; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized to, in the name of and on behalf of the Company, (i) negotiate, execute, deliver and perform the Company's obligations under the Cash Flow DIP Documents, including, without limitation, the granting of the security interests and liens contemplated thereby and the incurrence of other obligations contemplated thereunder, and carry out the Company's duties thereunder, (ii) borrow any loans or incur other indebtedness in any amounts according to the terms of the Cash Flow DIP Documents, (iii) extend or renew any loans, advances or other extensions of credit or any installment of principal or interest thereof or any indebtedness owing to any Cash Flow DIP Lender, and (iv) negotiate, execute and deliver all other agreements, instruments and documents in connection therewith and any and all amendments, waivers or other modifications thereto and take or cause to be taken any and all such further actions, in each case on such terms and conditions as any Officer may deem necessary, desirable or appropriate, in each case, the delivery thereof or the taking of such action by any such Officer to conclusively evidence the approval thereof by the undersigned; and be it further

RESOLVED, that the Company be, and hereby is, authorized and empowered and directed to grant security interests in, and pledge its right, title and interest in, substantially all present and after-acquired assets and properties of the Company, all proceeds thereof, including, real property, trademarks, patents, copyrights and licenses therefor, the capital stock of or equity or membership interests in its subsidiaries and the proceeds of any of the foregoing, as required or contemplated by the Cash Flow DIP Facilities, the Cash Flow DIP Documents and/or any of the other agreements entered into pursuant thereto or in connection therewith, or as any Officer may deem necessary, advisable or proper to carry out the terms, intents and purposes of the Cash Flow DIP Documents, the transactions contemplated thereby and the resolutions related thereto, subject to such exceptions and limitations as set forth in any applicable Cash Flow DIP Documents; and be it further

RESOLVED, that the filing of financing statements and amendments and continuation statements to financing statements, other filings, recordations, registrations or any other document, in any jurisdictions or with any filing offices as contemplated by or specified in the relevant Cash Flow DIP Documents or otherwise advisable and/or the entering into of any other agreement or instrument, necessary or advisable to create, register or perfect the security interests granted pursuant to the relevant Cash Flow DIP Documents or any related transaction document is hereby authorized in such form as any Officer shall approve; and be it further

4

RESOLVED, that the Officers be, or any one of them individually, be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to negotiate, execute, deliver, record and/or file all documents, agreements and instruments (including, without limitation, (i) Uniform Commercial Code financing statements, (ii) blocked account control agreement, (iii) account control agreements, and (iv) any collateral (including one or more stock certificates (or, as applicable, other certificates) evidencing the capital stock (or other equity or membership interest, as applicable) of its subsidiaries or notes evidencing debt owed to it (accompanied by one or more stock powers (or, as applicable, other transfer powers) or note powers duly executed in blank by any Officer))), and to do any and all other acts as may be required or as they, or any of them, may deem necessary or proper to carry out and perform, to give effect to or to cause the Company to comply with the terms of or the transactions contemplated by the Cash Flow DIP Facilities, the Cash Flow DIP Documents and any other related agreement or document that any Officer may deem necessary or proper to consummate the transactions contemplated by the foregoing, such Officer's performance of any such act and his or her execution and delivery of any such document, agreement or instrument to be conclusive evidence of the Company's approval thereof, and to honor and discharge its obligations thereunder; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to pay and direct the payment of all fees and expenses as in the judgment of such Officer or Officers shall be necessary, proper, appropriate, desirable or advisable of such Officer or Officers to effectuate the purpose and intent of any and all of the foregoing resolutions.

## IV.        **Warehouse DIP Facility**

WHEREAS, Stearns Lending intends to enter into a Warehouse DIP Facility (as defined below), by and among Stearns Lending (and, as and to the extent provided in the Warehouse DIP Financing Documents (as defined below) some or all of its wholly-owned direct subsidiaries, as guarantors (the "Warehouse DIP Guarantors")), Stearns Lending, as seller, Barclays Bank PLC ("Barclays"), as administrative agent on behalf of the committed purchasers and as a committed purchaser, and Nomura Corporate Funding Americas, LLC ("Nomura"), as a committed purchaser (together with Barclays in its capacity as committed purchaser, the "Purchasers" and each a "Purchaser"), pursuant to which the Purchasers will provide new debtor-in-possession warehouse financing in an amount of up to approximately $1.5 billion on terms and subject to conditions set forth in the Warehouse DIP Financing Documents (as defined below);

### NOW THEREFORE, BE IT

RESOLVED, that it is in the best interest of the Company, and its subsidiaries (including any Warehouse DIP Guarantors), to engage in, and the Company, and its subsidiaries (including any Warehouse DIP Guarantors), will obtain benefits from, the financing transactions contemplated by the term sheets and/or draft definitive documents governing the Warehouse DIP Facility, the terms of which have been described to the undersigned, and any and all of the other agreements, including, without limitation, any other guarantees, certificates, documents and instruments authorized, executed, delivered, reaffirmed, verified and/or filed in connection with

5

the Warehouse DIP Facility (collectively, the "<u>Warehouse DIP Financing Documents</u>"), which, subject to the approval of the Bankruptcy Court, will provide Stearns Lending up to approximately $1.5 billion in available warehouse financing, which is necessary and appropriate for the conduct, promotion and attainment of the business of the Company and its subsidiaries, including any Warehouse DIP Guarantors (the "<u>Warehouse DIP Facility</u>"); and be it further

RESOLVED, that the Company's performance of its obligations under the Warehouse DIP Financing Documents, including any guarantees contemplated thereunder, are hereby, in all respects confirmed, ratified and approved; and be it further

RESOLVED, that any Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to negotiate and approve the terms, provisions of and performance of, and to prepare, execute and deliver the Warehouse DIP Financing Documents, on substantially the same terms and conditions presented to the Company, in the name and on behalf of the Company under its corporate seal or otherwise, and such other documents, agreements, instruments and certificates as may be required by the administrative agent or any Purchaser or required by the Warehouse DIP Financing Documents; and be it further

RESOLVED, that any Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses and transfer or assign the Company's positions under various master securities forward transaction agreements, from the existing counterparties thereunder to the Purchasers, in accordance with the terms of the Warehouse DIP Financing Documents, which shall, in such Officer's judgment, be necessary, proper or advisable to perform the Company's obligations under or in connection with the Warehouse DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

RESOLVED, that any Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of any of the Warehouse DIP Financing Documents which shall, in such Officer's sole judgment, be necessary, proper or advisable; and be it further

RESOLVED, that any Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, perform and approve any necessary public disclosures and filings related to such documents, agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities and certificates as may be required in connection with the Warehouse DIP Financing Documents and the Warehouse DIP Facility, and to take such other actions that in the judgment of the Officer shall be or become necessary, proper or desirable in connection therewith; and be it further

RESOLVED, that any actions taken by any Officer, for or on behalf of the Company, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized,

adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Company.

## V.        **Blackstone Warehouse DIP Guarantee**

NOW, THEREFORE, BE IT

RESOLVED, that in connection with the Warehouse DIP Facility, the undersigned authorize and approve (a) the execution, delivery and performance of one or more Limited Recourse DIP Guarantees (as the same may be amended, restated, supplemented, replaced, superseded or otherwise modified from time to time, and including any fee letters in connection therewith, the "Warehouse DIP Guarantees"), to the extent the Officers determine that it is in the best interests of the Company to become party thereto, such guarantee to be provided by Blackstone Capital Partners VI NQ/NF L.P. (the "Warehouse DIP Guarantor") to and for the benefit of the Purchasers, substantially on the terms described to the undersigned, and with such changes thereto as the Officers or any of them executing the same shall approve, and any other agreements, consents, certificates, amendments, assignments and instruments in connection therewith, and (b) the payment of all fees in connection with the Warehouse DIP Guarantee, as set forth in the Warehouse DIP Guarantees; and be it further

RESOLVED, that to induce the Warehouse DIP Guarantor to execute and deliver the Warehouse DIP Guarantee, the Company be, and hereby is, authorized, empowered and directed to grant security interests in, and pledge its right, title and interest in, substantially all present and after-acquired assets and properties of the Company, all proceeds thereof, including, real property, trademarks, patents, copyrights and licenses therefor, the capital stock of or equity or membership interests in its subsidiaries and the proceeds of any of the foregoing, as required or contemplated by the Warehouse DIP Guarantees and/or any of the other agreements or documents entered into pursuant thereto or in connection therewith, or as any Officer may deem necessary, advisable or proper to carry out the terms, intents and purposes of the Warehouse DIP Guarantees, the transactions contemplated thereby and the resolutions related thereto, subject to such exceptions and limitations as set forth in the Warehouse DIP Guarantees; and be it further

RESOLVED, that any Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to execute and deliver the Warehouse DIP Guarantees and any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of any Warehouse DIP Guarantee which shall, in such Officer's sole judgment, be necessary, proper or advisable; and be it further

RESOLVED, that any Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, perform and approve any necessary public disclosures and filings related to, such documents, agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities and certificates as may be required in connection with the Warehouse DIP Guarantees, and to take such other actions that in the judgment of the Officer shall be or become necessary, proper or desirable in connection therewith; and be it further

7

RESOLVED, that any actions taken by any Officer, for or on behalf of the Company, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized, adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Company.

## VI.    Investment Agreement

WHEREAS, in connection with the chapter 11 case and as contemplated by the Plan of Reorganization, it is proposed that the Company enter into an Investment Agreement by and between the Company and Defteros Acquisition LLC (the "Blackstone Purchaser"), which Investment Agreement shall be substantially on the terms described to the undersigned (the "Investment Agreement"), pursuant to which, among other things, the Company will, on the terms and subject to the conditions set forth therein, issue and sell to Blackstone Purchaser, and Blackstone Purchaser will purchase from the Company, Class A Units of the Company which will represent 100% of the issued and outstanding Class A Units of the Company as of the closing date (the "Investment");

WHEREAS, the undersigned believe that the transactions contemplated by the Investment Agreement, including the Investment, are advisable, and the undersigned desire for the Company to enter into the Investment Agreement and to take certain other actions in connection therewith;

NOW, THEREFORE, BE IT

RESOLVED, that the undersigned have determined that the Investment, the terms and conditions of the Investment Agreement and the transactions contemplated thereby are in the best interest of the Company and hereby approve and declare advisable the Investment Agreement and the transactions contemplated thereby, including the Investment, with any such changes and additions deemed necessary, appropriate or advisable by any Officers; and be it further

RESOLVED, that each of the Officers be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, (a) to take or cause to be taken all actions necessary, appropriate or advisable to effect the Investment and to negotiate, execute and deliver the Investment Agreement and any other documents, agreements, consents, certificates, amendments, assignments and instruments required in connection therewith in such forms as the Officer or Officers executing the same may approve, such approval to be conclusively evidenced by the execution thereof and (b) perform the obligations and carry out the duties of the Company thereunder and under all such other documents required to be executed and delivered in connection therewith;

## VII.    Retention of Professionals

NOW, THEREFORE, BE IT

RESOLVED, that the Officers, or any one of them, be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to retain and

employ professionals to render services to the Company in connection with the chapter 11 case and the transactions contemplated by the foregoing resolutions, including, without limitation, the firm Skadden, Arps, Slate, Meagher & Flom LLP to act as chapter 11 counsel; PJT Partners L.P. to act as investment banker; Alvarez & Marsal North America, LLC to act as financial advisor; and Prime Clerk LLC to act as claims and noticing agent and administrative advisor; and, in connection herewith, each Officer is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers and to cause to be filed appropriate applications for authority to retain the services of the foregoing.

## VIII.        General

NOW, THEREFORE, BE IT

RESOLVED, that the Officers, or any one of them, be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to amend, supplement or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements, financing statements, notices, undertakings or other writings referred to in the foregoing resolutions; and be it further

RESOLVED, that the Officers be, and each of them hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to take or cause to be taken any and all such further action and to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on its behalf as provided herein) all such further documents, agreements, instruments, financing statements, notices, undertakings, certificates, resolutions (including in the Company's capacity as sole member of Stearns Lending, LLC) and other writings to effectuate the purpose and intent of any and all of the foregoing resolutions; and be it further

RESOLVED, that all acts lawfully done or actions lawfully taken by any Officer to seek relief on behalf of the Company under chapter 11 of the Bankruptcy Code, or in connection with the chapter 11 case, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company in all respects by the undersigned; and be it further

RESOLVED, that all acts lawfully done or actions lawfully taken by any Officer, or by any employees or agents of the Company, on or before the date hereof in connection with the transactions contemplated by the foregoing resolutions be, and they hereby are, ratified, confirmed and approved in all respects by the undersigned; and be it further

RESOLVED, that the omission from these resolutions of any agreement, document or other arrangement contemplated by any of the agreements, instruments, filings or other documents described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments, filings or other documents described in the foregoing resolutions shall in no manner derogate from the authority of the Officers to take all actions necessary, desirable, proper, advisable, or appropriate to consummate, effectuate, carry out or further the transaction contemplated by, and the intent and purposes of, the foregoing resolutions; and be it further

RESOLVED, that the undersigned have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice; and be it further

RESOLVED, that the Officers, or any one of them, be, and each hereby is, authorized, empowered and directed, on behalf of and in the name of the Company, to execute, deliver, perform, verify and/or file, or cause to be executed, delivered, performed, verified and/or filed (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, statements, schedules, motions, lists, applications, pleadings, other papers, guarantees, reaffirmations, additional security documents, control agreements, waivers of or amendments to existing documents, and to negotiate the forms, terms and provisions of, and to execute and deliver any amendments, modifications, waivers or consent to any of the foregoing as may be approved by any Officer, which amendments, modifications, waivers or consents may provide for consent payments, fees or other amounts payable or other modifications of or relief under such agreements or documents, the purpose of such amendments, modifications, waivers or consents being to facilitate consummation of the transactions contemplated by the foregoing resolutions or for any other purpose, and, in connection with the foregoing, to employ and retain all assistance by legal counsel, investment bankers, accountants, restructuring professionals or other professionals, and to take any and all action which such Officer or Officers deem necessary or proper in connection with the chapter 11 case, the Plan of Reorganization and the Disclosure Statement, with a view to the successful prosecution of the chapter 11 case contemplated by the foregoing resolutions and the successful consummation of the transactions contemplated by the foregoing resolutions including, without limitation, any action necessary or proper to maintain the ordinary course operation of the Company's business; and be it further

RESOLVED, that the Officers be, and each of them is, authorized to execute, deliver and perform any and all special powers of attorney as such Officer may deem necessary or desirable to facilitate consummation of the transactions contemplated by the foregoing resolutions, pursuant to which such Officer will make certain appointments of attorneys to facilitate consummation of the transactions contemplated by the foregoing resolutions as the Company's true and lawful attorneys and authorize each such attorney to execute and deliver any and all documents of whatsoever nature and description that may be necessary or desirable to facilitate consummation of the transactions contemplated by the foregoing resolutions.

\*\*\*

10

**STEARNS HOLDINGS, LLC**

By: _____
Name: David Schneider
Title:  Manager


By: _____
Name: William Cary
Title:  Manager


By: _____
Name: Glenn Stearns
Title:  Manager


By: _____
Name: Nadim El Gabbani
Title:  Manager


By: _____
Name: Chinh Chu
Title:  Manager


By: _____
Name: Jason Roswig
Title:  Manager


By: _____
Name: Chris Mitchell
Title:  Manager


[Signature Page to Written Consent]

**STEARNS HOLDINGS, LLC**

By: _____
Name:  David Schneider
Title:  Manager


By: _____
Name:  William Cary
Title:  Manager


By: _____
Name:  Glenn Stearns
Title:  Manager


By: _____
Name:  Nadim El Gabbani
Title:  Manager


By: _____
Name:  Chinh Chu
Title:  Manager


By: _____
Name:  Jason Roswig
Title:  Manager


By: _____
Name:  Chris Mitchell
Title:  Manager


[Signature Page to Written Consent]

**STEARNS HOLDINGS, LLC**

By:  _____
Name:  David Schneider
Title:  Manager

By:  _____
Name:  William Cary
Title:  Manager

By:  _____
Name:  Glenn Stearns
Title:  Manager

By:  _____
Name:  Nadim El Gabbani
Title:  Manager

By:  _____
Name:  Chinh Chu
Title:  Manager

By:  _____
Name:  Jason Roswig
Title:  Manager

By:  _____
Name:  Chris Mitchell
Title:  Manager

[Signature Page to Written Consent]

**STEARNS HOLDINGS, LLC**

By: _____
Name: David Schneider
Title:  Manager

By: _____
Name: William Cary
Title:  Manager

By: _____
Name: Glenn Stearns
Title:  Manager

By: _____
Name: Nadim El Gabbani
Title:  Manager

By: _____
Name: Chinh Chu
Title:  Manager

By: _____
Name: Jason Roswig
Title:  Manager

By: _____
Name: Chris Mitchell
Title:  Manager

[Signature Page to Written Consent]

**STEARNS HOLDINGS, LLC**


By:    _____
Name:  David Schneider
Title:  Manager



By:    _____
Name:  William Cary
Title:  Manager



By:    _____
Name:  Glenn Stearns
Title:  Manager



By:    _____
Name:  Nadim El Gabbani
Title:  Manager



By:    */s/ Chinh Chu*
Name:  Chinh Chu
Title:  Manager



By:    _____
Name:  Jason Roswig
Title:  Manager



By:    _____
Name:  Chris Mitchell
Title:  Manager



[Signature Page to Written Consent]

SE... S HOLDINGS, LLC

By: _____
Name: David Schneider
Title:  Manager


By: _____
Name: William Cary
Title:  Manager


By: _____
Name: Glenn Stearns
Title:  Manager


By: _____
Name: Nadim El Gabbani
Title:  Manager


By: _____
Name: Chinh Chu
Title:  Manager


By: _____
Name: Jason Roswig
Title:  Manager


By: _____
Name: Chris Mitchell
Title:  Manager


[Signature Page to Written Consent]

**STEARNS HOLDINGS, LLC**

By: _____
Name:  David Schneider
Title:  Manager

By: _____
Name:  William Cary
Title:  Manager

By: _____
Name:  Glenn Stearns
Title:  Manager

By: _____
Name:  Nadim El Gabbani
Title:  Manager

By: _____
Name:  Chinh Chu
Title:  Manager

By: _____
Name:  Jason Roswig
Title:  Manager

By: _____
Name:  Chris Mitchell
Title:  Manager

[Signature Page to Written Consent]

By:

Name:    D. J. (Jan) Baker

Title:    Manager

[Signature Page to Written Consent]