| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: September 26, 2019<br>Hearing Time: 11:00 a.m. |

------------------------------------------------------- x
                                                 :

In re                                       :                 Chapter 11

**STEARNS HOLDINGS, LLC,** *et al.*,     :                 Case No. 19-12226 (SCC)

                         Debtors.            :                 Jointly Administered

------------------------------------------------------- x


### OBJECTION OF UNITED STATES TRUSTEE TO AMENDED DISCLOSURE STATEMENT FOR AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF STEARNS HOLDINGS, LLC, ET AL., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

TO:    **THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:**

        William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Stearns Holdings, LLC and Its Debtor Affiliates (the "Disclosure Statement" and the "Plan"). ECF Nos. 318, 319. In support thereof, the United States Trustee respectfully states:

## I. INTRODUCTION

        The Disclosure Statement should not be approved because it fails to provide creditors with sufficient information to allow them to make an informed choice as to whether to approve or reject the Plan.[1] ECF No. 318. Specifically, the Disclosure Statement provides that the unsecured creditors in Classes 4 and 5 will be paid in full, but without interest. Despite the

---

[1] The United States Trustee filed an Objection to the Original Disclosure Statement (*see* ECF No. 223) and those objections – to the extent not resolved - have been preserved in connection with the Confirmation Hearing on the Plan.

proposal to pay these two classes of creditors without interest, they have been designated by the Debtors as unimpaired and as such not entitled to vote to on the Plan.  The designation of these creditors as unimpaired conflicts with the decisional law holding that failure to pay postpetition interest to unsecured creditors -- regardless of whether the debtor is insolvent or solvent -- renders the class of creditors as impaired.  Accordingly, the Debtors must provide sufficient information in the Disclosure Statement so that interested creditors can understand and evaluate the chance for confirmation of a Plan that does not allow unsecured creditors in Classes 4 and 5 to vote for or against the Plan.

Furthermore, the Plan improperly provides for the Debtors to pay the fees and expenses of unretained professionals.  The Disclosure Statement does not articulate the legal basis for the Debtors' position that these cases can be confirmed by this Court despite provisions in the Plan that are not authorized by either the Bankruptcy Code or appropriate case law.  Without this information, interested creditors will lack adequate information to evaluate properly the Plan.

## II.  BACKGROUND

### A.  General Background

1. On July 9, 2019 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  ECF No. 1.

2. The United States Trustee has not appointed an official committee of unsecured creditors.

3. Stearns sold its loan servicing portfolio in January 2018.  Declaration of Stephen Smith in Support of Chapter 11 Petitions and First Day Motions, ECF No. 3, ¶¶ 8-12.

4. Funds managed by Blackstone's private equity group own approximately 70% of the interests in the Debtors, while Mr. Glenn Stearns, the Debtors' founder, owns approximately 29%.  Smith Decl., ¶ 13.

5. On August 8, 2012, Stearns Holdings sold $250 million of senior secured notes maturing on August 15, 2020 and having a fixed annual interest rate of 9.375% (the "Secured Notes"). *Id.* at ¶ 15.

6. After repurchases of the Secured Notes, on the Petition Date, the outstanding balance of the Secured Notes was $183 million. *Id.* at ¶ 17.

7. On or about the Petition Date, various funds affiliated with Pacific Investment Management Company LLC ("PIMCO") collectively owned approximately 67% of the outstanding principal balance of the Notes. *Id.* at ¶ 17.

8. On August 1, 2019, the Court entered the Final DIP Cashflow Order, which *inter alia* provided that the Secured Notes Indenture Trustee's and PIMCO's professional fees would be paid provided that the foregoing parties did not take any position adverse to the Debtors, including, but not limited to contesting the Debtors' disclosure statement or the confirmation of the Debtors' plan of reorganization. ECF No. 209, ¶ 15(c).

**B.    Plan and Disclosure Statement**

9. On the Petition Date, the Debtors filed the Plan (the "Original Plan") and Disclosure Statement (the "Original Disclosure Statement"). ECF Nos. 30 and 31, respectively.

10. On August 9, 2019, the United States Trustee filed his objection the Disclosure Statement for the Joint Plan of Reorganization of Stearns Holdings, LLC and Its Debtor Affiliates (the "Disclosure Statement Objection"). ECF No. 31.

11. On August 19, 2019, the Debtors filed the Notice of Filing of Revised Disclosure Statement and Ballot with Respect to the Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, *et al.* and Cancellation of Disclosure Statement Hearing (ECF No. 236). The

Revised Disclosure Statement and Ballot incorporated language changes that were agreed upon with the United States Trustee.

12. On August 22, 2019, the Court entered the Order (I) Approving the Disclosure Statement (the "Original Disclosure Statement"); (II) Scheduling Hearing on Confirmation of the Plan (the "Original Plan"); (III) Establishing Deadlines and Procedures for Filing Objections to Confirmation of the Plan; (IV) Establishing Deadlines and Procedures for Voting on the Plan; (V) Approving Solicitation Procedures; (VI) Establishing Procedures for Tabulation of Votes; and (VII) Granting Related Relief (Docket No. 255).

13. On September 11, 2019, the Debtors filed (i) a Notice of Cancellation of Auction (ECF No. 314); (ii) a Motion for Order (I) Authorizing Entry into the Restructuring Support Agreement (the "RSA"); and (II) Granting Related Relief (ECF No. 317); (iii) a Notice of Filing of Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC *et al.* (ECF No. 318); and (iv) a Notice of Filing of Amended Disclosure Statement with Respect to the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC *et al.* (ECF No. 319).

14. The Plan retains all the same classes that were in the Original Plan with only one impaired class -- this time, only Class 2, Notes Secured Claims (instead of Class 4, Go-Forward Trade Claims) – are entitled to vote. The Debtors assert that every affected party is receiving better treatment under the Plan than they would have received under the Original Plan.

15. Under the Plan, holders of unsecured claims in both Class 4 ("Go-Forward Trade Claims") and Class 5 ("General Unsecured Claims") will be paid in full, without interest, and listed as unimpaired. In contrast, under the Original Plan, holders of Go-Forward Trade Claims were intended to receive distributions equal to 95% of their allowed Go-Forward Trade Claims, while General Unsecured Claims would not have received any distributions at all on account of

4

their allowed claims. The only voting class under the Plan, Class 2 (Notes Secured Claims), will receive an increased recovery under the Plan compared to the stalking-horse bidder under the Original Plan.  ECF No. 319.

16. The Plan contains broad injunction, release and exculpation provisions, which are copied in the Disclosure Statement pp. 19-21.  Plan, Art. IX.

17. In Section 1.133, the Plan defines a Releasing Party (with blacklined changes) as follows:

> **Releasing Parties** means, collectively: (a) the DIP Credit Parties; (b) the Creditors' Committee, if any, and each of its members in their capacity as such; (c) each holder of a Claim voting to accept the Plan; (d) each holder of a Claim abstaining from voting or voting to reject the Plan, unless such holder elects to opt out of the releases contained in Section 9.3 by checking the box on its timely submitted applicable Ballot; (e) the ~~Plan Sponsor; (f) Blackstone~~Consenting Equity Holders; (f) the Consenting Noteholders; (g) the Indenture Trustee; and (~~g~~h) with respect to each of the foregoing clauses (a) through (~~f~~g), to the fullest extent permitted by law, such Person's Related Parties, in each case in their capacity as such. For the sake of clarity, the Releasing Parties identified in items (c) and (d) above shall not include Persons in Classes 1, ~~2,~~ 3, 4, 5, 6, 7, 8, 9, ~~and~~or 10 that are presumed to either accept the Plan or reject the Plan and/or such Persons' Related Parties.

18. A new provision, Section 2.2(d), was added to the Plan and provides as follows:

> *Fees and Expenses Pursuant to RSA.* The Debtors shall pay all reasonable and documented fees and expenses that were incurred in connection with the Chapter 11 Cases or otherwise in connection with the restructuring of the Company, whether incurred pre- or post- petition, by (a) one primary counsel and one financial advisor for all Consenting Equity Holders; (b) one primary counsel and one financial advisor for Pacific Investment Management Company LLC ("PIMCO"); and (c) (i) the Indenture Trustee, and (ii) one primary counsel for the Indenture Trustee, in accordance with the terms of the RSA (as applicable), without the need of such parties to file fee applications with the Bankruptcy Court or motions seeking payment of such fees as administrative claims pursuant to Bankruptcy Code section 503(b), or the need for approval of the Bankruptcy Court. Such fees and expenses shall be paid (i) on the Effective Date, with respect to fees and expenses evidenced by invoices received by the Debtors at least 10 calendar days prior to the Effective Date, and (ii) as soon as practicable upon receipt, but in no event later than 10 calendar days from the date of receipt, with respect to fees and expenses evidenced by subsequent invoices.

5

## II.    DISCUSSION

### A.    The Governing Law

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as:  Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . . . 11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 54 (S.D.N.Y. 1999). To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.,* 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan").

Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). Section 1125 of the

6

Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596.

In short, the purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor as to what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). For the reasons set forth below, the Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of these cases.

**B.     The Objections by the United States Trustee to the Original Plan and Original Disclosure Statement Are Preserved for Confirmation with Two Exceptions**

As noted in the Disclosure Statement, the United States Trustee's disclosure statement objections regarding Third-Party Releases and the "opt-out" mechanic are preserved for Confirmation. ECF No. 319, p. 10. The Plan's revisions renders the United States Trustee's Objection to Disclosure Statement with respect to the discriminatory treatment between the creditors in Class 4 ("Go-Forward Trade Claims") and Class 5 ("General Unsecured Claims") moot because each of those classes of creditors will receive a 100% distribution under the Plan.

7

### C.    The Court Should not Approve the Designation of Classes 4 and 5 as Unimpaired Where Postpetition Interest is Not Being Paid

Classes 4 and 5 are incorrectly described in the Plan as unimpaired, and as such, are not entitled to vote to accept or reject the Plan.  However, courts have held that an unsecured creditor that receives a 100% distribution without interest is impaired.  *See e.g., In re Amster Yard Associates*, 214 B.R. 122, 123 (Bankr. S.D.N.Y. 1997)(unsecured creditors that will receive 100% of their claims without also receiving post-petition interest are impaired); *In re Seasons Apts., Ltd. P'shp*, 215, B.R. 953, 956, 960 (Bankr W.D. La. 1997)(Although Congress repealed Sec. 1124(3) to reverse the result in *In re New Valley Corp*. 168 B.R. 73 (Bankr. D.N.J. 1994 ) wherein, a solvent debtor was permitted to treat the unsecured creditors as unimpaired without the payment of interest, Congress, while aware of the distinction between insolvent and solvent debtors chose to delete the entire section);  *In re Crosscreek Apartments*, 213 B.R. 521, 535 (Bankr. E.D. Tenn. 1997)("the deletion of subsection (3) from § 1124 means that . . . a class of creditors which will receive payment in full upon the effective date of the plan is now impaired within the meaning of the Bankruptcy Code."); *Equitable Life Ins. Co. Of Iowa v. Atlanta-Stewart Partners (In re Atlanta-Stewart Partners)*, 193 B.R. 79, 82 (Bankr. N.D. Ga. 1996)("a class of creditors which will receive payment in full [without interest] upon the effective date of the plan is impaired within the meaning of the Bankruptcy Code."); *but see contra In re PPI Enters*., 324 F.3d 197 (3$^d$ Cir. 2003).   Accordingly, unless the two classes of unsecured creditors in this case (i) receive post-petition interest, or alternatively (ii) are treated as impaired classes of creditors entitled to vote to accept or reject the plan, the United States Trustee objects to the description and treatment of the Class 4 and 5 unsecured creditors in the Disclosure Statement and the Plan, respectively.

D.  **Payments to Unretained Professionals Under the RSA and/or the Plan May Not Be Made Absent Compliance with Section 503(b) of the Bankruptcy Code**

Section 2.2(d) of the Plan provides for the payment of professional fees and expenses (the "Unretained Professional Fees") to professionals not retained by the Bankruptcy Court. Neither the Disclosure Statement nor the Plan specifies the authority upon which the Debtors rely in support of the provisions in the Plan that direct those payments. However, it appears that that the Debtors seek to pay the Unretained Professional Fees in accordance with Section 15 of the RSA.

The Supreme Court has made clear that professionals seeking the reimbursement of their fees and expenses from a debtor must first be retained under section 327 of the Bankruptcy Code. *Lamie v. United States Trustee,* 540 U.S. 526, 538 (2004)(In order to be paid from estate funds, a debtor's counsel performing services during a Chapter 7 case must be retained by the Chapter 7 trustee and approved by the Court). Creditors seeking reimbursement for payments made to their respective professionals must move for such reimbursement under Section 503 of the Bankruptcy Code. *See infra In re Lehman Bros. Holdings, Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014). An agreement by a debtor in a restructuring support agreement, however, to pay for the fees and expenses of certain of its creditors' unretained professionals does not pass muster under the Bankruptcy Code.

A restructuring support agreement is an agreement among a debtor and its significant creditors reflecting the material terms and framework for the plan of reorganization. *See Genco Shipping and Trading Ltd.*, 509 B.R. 455, 460 (Bankr. S.D.N.Y. 2014). Approval of a restructuring support agreement, however, does not guarantee that a plan embodying its terms will be confirmed. *Id. In re Residential Capital, LLC* ("ResCap"), 2013 WL 3286198, at *2-3 (Bankr. S.D.N.Y. June 27, 2013). That issue is addressed at the confirmation hearing in a

distinct inquiry that examines whether the plan satisfies the applicable standard under the Bankruptcy Code. *Genco*, 509 B.R. at 460 (citing *ResCap*, 2013 WL 3286198, at *2-3).

The plain meaning of the Bankruptcy Code's text is clear and determinative. The "general language of a [Bankruptcy Code] statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (internal quotation, citation, and modification omitted). This rule "is particularly true where … Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (internal quotation and citation omitted); *see also In re Keren Ltd. P'ship*, 189 F.3d 86 (2d Cir. 1999). So too here, where Congress has enacted Section 503(b) to govern administrative expense payments from the bankruptcy estate, the broader business judgment rule of Section 363(b) should not apply. *See In re Lehman Bros. Holdings, Inc.*, 508 B.R. at 289 (Section 503(b) is the exclusive avenue for payment of administrative expenses).

In *Lehman*, the District Court, in citing and following *Radlax*, held that the specific provisions governing creditor reimbursement provided for in Section 503(b), with a few specific exceptions, is the exclusive avenue for the payment of administrative expenses and that the federal scheme cannot remain comprehensive if interested parties are free to "tweak" the law to fit their preferences. *Id.* at 294 (quotation in original). Here, the Plan's provision for the payment of the Unretained Professional Fees outside the Court's purview conflicts with the statutory standards and procedures for payment of administrative expenses because it authorizes certain creditors to be paid administrative expenses without the necessity of filing an application and meeting their evidentiary burden for payment under Section 503(b). *Id.*

Certainly, if Sections 1123 and 1129 of the Bankruptcy Code – at issue in *Lehman* – are by law not excepted from this rule, there is no logical reason that Section 363 and the broad business judgment rule should escape the same treatment. Neither the RSA nor the Plan can "short circuit the process by effectively deeming an entity to have made a substantial contribution" without an application and a determination by the Court. *Id.* at 294.

In addition, the total amount of fees and expenses at issue are unknown and the signatories to the RSA have apparently, and inappropriately, arrogated to themselves the exclusive right to review these undisclosed fees and expenses for reasonableness. In so doing, they seek to usurp the Court's authority and independent duty to review and approve the fee requests under the appropriate statutory standards. *See In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (professionals cannot settle fee requests among themselves because it undermines the duties of the judicial and executive branches to review bankruptcy fees).

The Court has an independent duty to review fee applications and serves a vitally important gate-keeping role in (i) enforcing the Bankruptcy Code's requirements that only reasonable fees be approved and paid and (ii) maintaining public confidence in the bankruptcy system itself. *In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989); *see also In re Child World, Inc.*, 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) ("the judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system."). Lastly, other parties in interest, including the United States Trustee, have the right under the Bankruptcy Code to review and object to fee applications. *McGuirl v. White*, 86 F.3d 1232, 1246 (D.C. Cir. 1996) ("many parties including the United States Trustee and creditors, as well as the bankruptcy court itself, have the right to object to fee applications."); 28 U.S.C. § 586(a)(3)(A).

11

Accordingly, these professional fees and expenses cannot be approved unless and until those creditors seeking reimbursement for the costs and expenses of their respective unretained professionals file application(s) with the Court and demonstrate to the Court's satisfaction that each such creditor made a "substantial contribution" in the case pursuant to Section 503(b)(3)(D). *See generally, Lehman*. To the degree that a "substantial contribution" is proven, then the standards as set forth in Section 330 of the Bankruptcy Code apply in determining the extent the fees and expenses of a professional are reimbursable under Section 503(b)(4). *See, e.g., In re Wind N' Wave*, 509 F.3d 938, 944 (9th Cir. 2007); *In re Celotex Corp.*, 227 F.3d 1336, 1341 (11th Cir. 2000).

WHEREFORE, the United States Trustee respectfully requests that the Court deny the approval of the Disclosure Statement and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
September 19, 2019

                                                Respectfully submitted,

                                                WILLIAM K. HARRINGTON
                                                UNITED STATES TRUSTEE

By:    */s/ Brian Masumoto*
          Brian Masumoto
          Andrew Velez-Rivera
          Trial Attorneys
          201 Varick Street, Suite 1006
          New York, New York 10014
          Tel. No. (212) 510-0500
          Fax No. (212) 668-2255