**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STEARNS HOLDINGS, LLC, *et al.*,** | **Case No. 19-12226 (SCC)** |
| **Debtors.**[1] | **Jointly Administered** |
| | **Related Docket Nos. 30, 219, 267, 318, 338, and 353** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF STEARNS HOLDINGS, LLC, ET AL.**

The Court having considered the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors," "Stearns," or the "Company" or, as applicable on and after the Effective Date, the "Reorganized Debtors"), dated as of September 19, 2019 and attached hereto as Exhibit A, (as may be amended, revised or supplemented from time to time in accordance with its terms and including all exhibits and supplements thereto, the "Plan"),[2] and the Amended Disclosure Statement with Respect to the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al., dated as of September 26, 2019 [Docket No. 354] (the "Amended Disclosure Statement"); and upon the

*Order (I) Approving the Amended Disclosure Statement; (II) Scheduling an Expedited Hearing and Shortening Notice on Confirmation of the Amended Plan; (III) Establishing Deadlines and*

---

[1]  The Debtors and the last four digits of their taxpayer identification numbers are: Stearns Holdings, LLC (8219); Stearns Co-Issuer, Inc. (7096); Stearns Lending, LLC (1773); Stearns Ventures, LLC (2386); Protos Acquisition LLC (4941); bSNAP, LLC (2498); and Private Mortgage Advisors, LLC (7493). The address of Protos Acquisition, LLC is 345 Park Avenue, New York, NY 10154. The address of the other Debtors is c/o Stearns Lending, LLC, 750 East Highway, 121 Bypass, Suite 150, Lewisville, TX 75067.

[2]  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is attached hereto as Exhibit A.

*Procedures for Filing Objections to Confirmation of the Amended Plan; (IV) Establishing and Shortening Notice on Deadlines and Procedures for Voting on the Amended Plan; (V) Approving Solicitation Procedures; (VI) Establishing Procedures for Tabulation of Votes; and (VII) Granting Related Relief* [Docket No. 349] (the "Amended Disclosure Statement Order"); and upon the *Order (I) Authorizing Entry into the Restructuring Support Agreement; and (II) Granting Related Relief* [Docket No. 350] (the "RSA Order"); and the Debtors having filed the documents comprising the Plan Supplement on October 11, 2019 [Docket No. 385], October 15, 2019 [Docket No. 393], and October 21, 2019 [Docket No. 408]; and the Court having held a hearing on October 24, 2019 (the "Confirmation Hearing") pursuant to section 1129 of the Bankruptcy Code to consider Confirmation of the Plan; and the Court having considered the Debtors' *Memorandum of Law (I) In Support of Entry of an Order Confirming the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al. and (II) In Response to Objections Thereto*, filed by the Debtors on October 21, 2019 [Docket No. 409] (the "Confirmation Brief"), the *Declaration of Stephen Smith in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 414] (the "Smith Declaration"), the *Declaration of Paul Sheaffer of PJT Partners LP in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 412] (the "PJT Declaration"), the *Declaration of Robert Campagna, Alvarez & Marsal North America, LLC in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 413] (the "A&M Declaration"), the *Declaration of D.J. Baker in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 411] (the "Baker Declaration"), and the *Declaration of Craig E Johnson of Prime Clerk LLC Regarding*

2

*the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan*

*of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 407] (the "<u>Voting Declaration</u>"),

each filed by the Debtors in advance of the Confirmation Hearing; and the Court having admitted

into the record and considered evidence at the Confirmation Hearing; and the Court having

overruled any and all unresolved objections to Confirmation of the Plan and all reservations of

rights not consensually resolved or withdrawn unless otherwise indicated herein; and the Court

having taken judicial notice of the contents of the docket of the Chapter 11 Cases maintained by

the clerk of the Bankruptcy Court of the Southern District of New York (the "<u>Clerk of the

Court</u>") or its duly-appointed agent, including all pleadings and other documents filed, all orders

entered thereon, all hearing transcripts, and all evidence and arguments made, proffered, or

adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases; and

after due deliberation thereon and good and sufficient cause appearing therefor, and, in addition

to the following, in accordance with the findings and decrees made by the Court on the record at

the Confirmation Hearing, it is hereby

## DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.    <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This

Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine

---

[3]    All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to
Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. Each
finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall
also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or
may be deemed a finding of fact, shall also constitute a finding of fact.

whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Filing of Plan</u>. On September 11, 2019, in accordance with the Restructuring Support Agreement (the "<u>RSA</u>"), dated as of September 5, 2019, by and among the Debtors, Blackstone (together with other equity holders that are party to the RSA, the "<u>Consenting Equity Holders</u>"), and the Consenting Noteholders, which include the PIMCO Noteholders and certain holders of Notes managed by Manulife Investment Management and Putnam Investment Management, LLC (collectively, the "<u>Consenting Noteholders</u>"), the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 318]; on September 19, 2019, the Debtors filed a revised version of the *Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 338]; and on September 26, 2019, the Debtors filed the solicitation version of the *Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 353].

C.    <u>Filing of Disclosure Statement</u>. On September 11, 2019, in accordance with the RSA, the Debtors filed the *Amended Disclosure Statement With Respect to the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 319]; on September 19, 2019, the Debtors filed a revised version of the *Amended Disclosure Statement With Respect to the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 339]; and on September 26, 2019 the Debtors filed the solicitation version of the *Amended Disclosure Statement With Respect to the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 354].

D.    <u>Plan Supplement</u>. On October 11, 2019, the Debtors filed a supplement (the "<u>First Plan Supplement</u>") to the Plan [Docket No. 385]. The First Plan Supplement includes: (i)

amended Corporate Governance Documents; (ii) the Rejection Schedule; (iii) a schedule of

Executory Contracts and Unexpired Leases to be assumed and proposed cure amounts; (iv) a

form of Cash Flow Exit Facility Agreement; (v) forms of Master Repurchase Agreements for the

Exit Repo Facility; (vi) a form of New Notes Indenture; (vii) a form of Warrants; (viii) the

identity, affiliations, and compensation of directors and officers of the Reorganized Debtors; (ix)

insider retention and compensation; and (x) tax disclosure pertaining to the Warrants. The First

Plan Supplement was served in the manner set forth in the Affidavit of Service of Nora Hafez

filed by Prime Clerk LLC on October 15, 2019 [Docket No. 391]. On October 15, 2019, the

Debtors filed a second supplement (the "Second Plan Supplement") to the Plan [Docket No.

393]. The Second Plan Supplement includes: (i) a revised schedule of Executory Contracts and

Unexpired Leases to be assumed and proposed cure amounts; (ii) forms of the Master Loan

Participation Purchase and Sale Agreement, the Amendment No. 2 to the Amended, Restated,

and Assumed Master Securities Forward Transaction Agreement, and the Global Netting and

Security Agreement for the Exit Repo Facility; and (iii) a revised form of the Cash Flow Exit

Facility Agreement. The Second Plan Supplement was served in the manner set forth in the

Affidavit of Service of Nora Hafez filed by Prime Clerk LLC on October 16, 2019 [Docket No.

399]. On October 21, 2019, the Debtors filed a third supplement (the "Third Plan Supplement"

and collectively with the First Plan Supplement and the Second Plan Supplement, the "Plan

Supplement") to the Plan [Docket No. 408]. The Third Plan Supplement includes: (i) a revised

schedule of Executory Contracts and Unexpired Leases to be assumed and proposed cure

amounts; (ii) revised amended Corporate Governance Documents; (iii) a revised form of the

New Notes Indenture; and (iv) a revised form of the Warrants. The Third Plan Supplement was

served in the manner set forth in the Affidavit of Service of Nora Hafez filed by Prime Clerk

LLC on October 23, 2019 [Docket No. 429]. The Plan Supplement complies with the terms of

the Plan, and the filing and notice of the Plan Supplement materials were good and proper, and in

accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Amended Disclosure

Statement Order, and no other or further notice is or shall be required.

       E.      <u>Transmittal of Solicitation Package</u>. On or before September 27, 2019, the

Debtors, through their solicitation agent, Prime Clerk LLC (the "<u>Claims and Solicitation</u>

<u>Agent</u>"), caused the applicable forms of ballots in the forms attached to the Amended Disclosure

Statement Order as Exhibits C-1 and C-2 (together, the "<u>Ballots</u>") and the solicitation materials

for voting on the Plan (the "<u>Solicitation Packages</u>") to be served and distributed as required by

the Amended Disclosure Statement Order, sections 1125 and 1126 of the Bankruptcy Code,

Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules for the Southern District of New

York (the "<u>Local Bankruptcy Rules</u>"), all other applicable provisions of the Bankruptcy Code,

and all other applicable rules, laws, and regulations applicable to such solicitation, as set forth in

the Affidavit of Service of Solicitation Materials of Craig Johnson filed on October 2, 2019

[Docket No. 376] (the "<u>Solicitation Declaration</u>"). The Solicitation Packages were transmitted to

all creditors entitled to vote on the Plan and sufficient time was prescribed for all creditors to

accept or reject the Plan. Such transmittal and service was adequate and sufficient under the

circumstances and no other or further notice is or shall be required.

       F.      <u>Adequate Notice</u>. As described herein and as evidenced by the Solicitation

Declaration, due, adequate, and sufficient notice of the Plan and Confirmation Hearing, together

with all deadlines for voting on or objecting to the Plan, was given in compliance with the

Amended Disclosure Statement Order, which approved the Debtors' request to have the

Confirmation Hearing heard on shortened notice. The Debtors, through the Claims and

Solicitation Agent, caused the *Notice of (I) Approval of the Adequacy of the Amended Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Objection and Voting Deadlines, and (IV) the Hearing to Confirm the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* (the "Confirmation Hearing Notice") to be mailed to the Notice Parties[4], all of their known creditors, and all other Entities required to be served under Bankruptcy Rules 2002 and 3016. The Debtors also published the *Notice of (A) Confirmation Hearing with Respect to the Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al. and (B) Related Objection Deadline* in the *Wall Street Journal* (National Edition) on September 28, 2019, in compliance with the Amended Disclosure Statement Order and Bankruptcy Rule 2002(l). The Debtors have given proper, adequate, and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). No other or further notice is or shall be required.

       G.      <u>Objections</u>. For the reasons stated on the record at the Confirmation Hearing, all objections and all reservations of rights that have not been withdrawn, waived, or settled pertaining to Confirmation of the Plan are overruled on the merits.

---

[4]    The term "Notice Parties" as used in this context means: (i) Debtors' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036, Attention: Jay Goffman, Mark McDermott, and Shana Elberg; (ii) counsel to any statutory committee appointed by the United States Trustee, or if no committee is appointed, the entities listed on the consolidated list of 30 largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; (iii) counsel to Blackstone, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attention: Elisha Graff and Jamie Fell; (iv) counsel to PIMCO, Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067, Attention: Bennett L. Spiegel and Stacey Rosenberg; (v) counsel to the indenture trustee for the Debtors' Notes, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE 19801, Attention: Kurt F. Gwynne (kgwynne@reedsmith.com) and Jason D. Angelo (jangelo@reedsmith.com); (vi) counsel to Barclays Bank PLC, Hunton Andrews Kurth LLP, 200 Park Avenue, New York, NY 10166, Attention: Peter S. Partee, Sr., and Brian Clarke, (vii) co-counsel to Nomura Corporate Funding Americas LLC, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attention: Mark Shinderman and Lauren C. Doyle and Alston & Bird LLP, 90 Park Avenue, New York, NY 10016, Attention: Karen Gelernt; and (viii) William K. Harrington, United States Trustee For Region 2, United States Department of Justice, Office of the United States Trustee, 201 Varick Street, Room 1006, New York, NY 10014, Attention: Brian Masumoto and Andy Velez-Rivera.

H.     <u>Solicitation</u>. Votes on the Plan were solicited in good faith and in compliance with

sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Amended

Disclosure Statement, the Amended Disclosure Statement Order, the Local Bankruptcy Rules, all

other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations

applicable to such solicitation. Pursuant to the Amended Disclosure Statement Order, the

Debtors transmitted the Solicitation Packages to those holders of Claims entitled to vote on the

Plan as of the Voting Record Date (as defined in the Amended Disclosure Statement), including

to their nominee holders of record, if applicable.

I.     <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. All Persons who solicited votes on

the Plan, including any such Persons released pursuant to Article IX of the Plan, solicited such

votes in good faith and in compliance with the applicable provisions of the Bankruptcy Code and

are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the

exculpation and limitation of liability provisions set forth in section 9.4 of the Plan.

J.     <u>Tabulation Results</u>. On October 21, 2019, the Debtors filed the Voting

Declaration, certifying the method and results of the ballot tabulation for the only Class entitled

to vote under the Plan, Class 2 (Note Secured Claims). As evidenced by the Voting Declaration,

Class 2 has accepted the Plan with respect to each of the Debtors in accordance with section

1126 of the Bankruptcy Code. All procedures used to tabulate the Ballots were fair and

reasonable and conducted in accordance with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and

regulations.

K.      Bankruptcy Rule 3016. The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Amended Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

L.      Burden of Proof. As more fully set forth herein, the Debtors, as proponents of the Plan, have met their burden of proving each of the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

M.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the procedures for determining the identities and affiliations of the directors, members, and officers with respect to the Reorganized Debtors (11 U.S.C. § 1123(a)(7)); and (h) the inclusion of additional plan provisions permitted to effectuate the restructuring of the Debtors (11 U.S.C. § 1123(b)).

(a)      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). In particular, Article III of the Plan adequately and properly identifies and classifies all Claims and Interests. The Plan designates seven (7) Classes of Claims and three (3) Classes of Interests. The Claims or Interests placed in each Class are substantially similar to other

Claims or Interests, as the case may be, in each such Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code. Valid business and legal reasons exist for the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

(b)    <u>Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. The Plan specifies in Article III that Classes 1, 3, 4, 5, 7, 9, and 10 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. The Plan specifies in Article III that Classes 2, 6, and 8 are Impaired under the Plan and sets forth the treatment of the Impaired Classes in Article III of the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. Article III of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. Article V of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)    <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Section 5.4(a) of the Plan provides that the organizational documents of each Reorganized Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code,

including section 1123(a)(6). Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(g)    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>. The Debtors have identified proposed directors and officers of the Reorganized Debtors in the Plan Supplement. The Plan Supplement also discloses additional compensation, if any, that was awarded to certain members of the Debtors' board of directors that will be paid on or after the Effective Date. The manner of selection and appointment of directors of each of the Reorganized Debtors under the Plan is consistent with the interests of holders of Claims and Interests and with public policy and, thus, satisfies section 1123(a)(7) of the Bankruptcy Code.

(h)    <u>Additional Plan Provisions (11 U.S.C. §1123(b)(6))</u>. The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation: (a) the provisions of Article VII of the Plan governing distributions on account of Allowed Claims; (b) the provisions of Article VIII establishing procedures for resolving contingent, unliquidated, and Disputed Claims; and (c) the provisions of Article XII governing retention of jurisdiction by the Court over certain matters after the Effective Date.

N.    <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Amended Disclosure Statement Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code. The Debtors are proper proponents of the Plan pursuant to section 1121(a) of the Bankruptcy Code. The Debtors, as proponents of the

Plan, complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Bankruptcy Rules, and the Amended Disclosure Statement Order in transmitting the Plan,

the Amended Disclosure Statement, the Ballots and notices, and in soliciting and tabulating votes

on the Plan.

O.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have

proposed the Plan in good faith, for proper purposes and not by any means forbidden by law,

thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has

been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases, the formulation of the Plan and the Global

Settlement incorporated therein, and all modifications thereto. The Chapter 11 Cases were filed,

and the Plan and all modifications thereto were proposed, with the legitimate and honest purpose

of reorganizing and maximizing the value of the Debtors and the recovery to stakeholders.

P.      Further, as evidenced by the Baker Declaration, the Plan negotiations were

conducted in good faith and were not unduly influenced by any party. In determining to pursue

the Plan, the Global Settlement incorporated therein, and the RSA, the Debtors employed a fair

process that resulted in a fair price. In particular, (i) Blackstone and the Debtors were at all times

represented by separate counsel and Professionals; (ii) a special restructuring committee

comprised of independent directors unaffiliated with Blackstone or any other stakeholder were

solely responsive for the Debtors' decision to enter into the RSA and to propose the amended

Plan; (iii) PIMCO was extensively involved in the negotiation of the RSA and, by extension, the

Plan; and (iv) Blackstone did not impede the Debtors' efforts to pursue alternative restructuring

transactions and, in fact, facilitated the exploration of alternative restructuring transactions by

agreeing to serve as the Debtors' stalking-horse plan sponsor. The Debtors actively pursued

alternatives prior to and during their negotiation of the Plan and RSA with Blackstone and

PIMCO. Accordingly, this Court finds that (i) the Plan and RSA were negotiated in good faith;

(ii) the Debtors have proposed the Plan in good faith and not by any means forbidden by law;

and (iii) section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

Q.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Payments

made or to be made by the Debtors for services or for costs and expenses in or in connection

with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases,

have been approved by, or are subject to the approval of, the Court as reasonable, including

pursuant to the terms of the RSA. Accordingly, the requirements of section 1129(a)(4) of the

Bankruptcy Code are satisfied.

R.      Board of Managers, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors

have sufficiently disclosed the initial members of the new board of each of the Reorganized

Debtors, including the identity of any insider that will be employed or retained by the

Reorganized Debtors. Section 5.5 of the Plan provides the process and procedure for selecting

the members of each of the new boards of the Reorganized Debtors. The Plan Supplement

discloses the identity of the members of the new board of each of the Reorganized Debtors and

the officers of the Reorganized Debtors, as well as additional compensation that was awarded to

certain members of the Debtors' board of directors that will be paid on or after the Effective

Date. The appointment to, or continuance in, such office of each individual, and the methods

established therefore, are consistent with the interests of holders of Claims and Interests, and

with public policy. Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with

respect to the Plan.

S.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

T.    <u>Best Interests Test (11 U.S.C. §1129(a)(7))</u>. The liquidation analysis included as Exhibit B to the Amended Disclosure Statement, the PJT Declaration, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible; (ii) are based upon reasonable and sound assumptions; (iii) provide a reasonable estimate of the liquidation values of the Debtors in the event that the Debtors were liquidated under chapter 7 of the Bankruptcy Code; and (iv) establish that each holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

U.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Classes 1, 3, 4, 5, 7, 9, and 10 are Unimpaired by the Plan and, therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan. Class 2 was entitled to vote on the Plan and has voted to accept the Plan. Accordingly, section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to Classes 1, 2, 3, 4, 5, 7, 9, and 10. Classes 6 and 8 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, but, as found below, the Plan is confirmable under section 1129(b) of the Bankruptcy Code notwithstanding the rejections by such Classes. Therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes.

V.      Treatment of Administrative Claims, Priority Tax Claims, Priority Non-Tax
Claims, and DIP Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims, DIP
Claims, and Priority Tax Claims satisfies the requirements of section 1129(a)(9)(A) and (B) of
the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the
requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

W.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). One Impaired Class of
Claims voted to accept the Plan, determined without including any acceptance of the Plan by any
"insiders." Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the
Plan.

X.      Feasibility (11 U.S.C. § 1129(a)(11)). The Plan does not provide for the
liquidation of all or substantially all of the property of the Debtors. The financial projections
attached to the Amended Disclosure Statement as Exhibit C , the A&M Declaration, and the
evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible; (ii)
have not been controverted by other credible evidence or sufficiently challenged in any of the
objections to the Plan; and (iii) establish that the Plan is feasible and that Confirmation of the
Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for
further financial reorganization of the Reorganized Debtors. Therefore, the Plan satisfies section
1129(a)(11) of the Bankruptcy Code.

Y.      Payment of Fees (11 U.S.C. § 1129(a)(12)). The Debtors have paid or, pursuant to
the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying
section 1129(a)(12) of the Bankruptcy Code.

Z.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 5.6 of the
Plan provides that, on and after the Effective Date, the Debtors shall honor, in the ordinary

15

course of business, among other things, retirement benefits, health care benefits, disability

benefits, deferred compensation benefits, severance benefits, welfare benefits, workers'

compensation insurance, and accidental death and dismemberment insurance for the directors,

officers, and employees of any of the Debtors who served in such capacity at any time. Therefore

section 1129(a)(13) of the Bankruptcy Code is satisfied.

AA.    Miscellaneous Provisions (11 U.S.C. § 1129(a)(14)-(16)). Sections 1129(a)(14)-

(16) of the Bankruptcy Code are inapplicable as the Debtors (i) have no domestic support

obligations (1129(a)(14)); (ii) are not individuals (1129(a)(15)); and (iii) are for-profit businesses

(1129(a)(16)).

BB.    Section 1129(b); Confirmation of Plan Over Nonacceptance of Impaired Classes.

Holders of Claims and Interests in Classes 6 and 8 are deemed to have rejected the Plan (the

"Deemed Rejecting Classes"). All of the requirements of section 1129(a) of the Bankruptcy

Code, other than section 1129(a)(8) with respect to the Deemed Rejecting Classes, have been

met. Notwithstanding the fact that the Deemed Rejecting Classes are deemed to reject the Plan

and thus do not satisfy section 1129(a)(8) of the Bankruptcy Code, the Plan may be confirmed

pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan does not discriminate

unfairly and is fair and equitable with respect to the Deemed Rejecting Classes. After entry of

this Confirmation Order and upon consummation of the Plan, the Plan shall be binding upon the

members of the Deemed Rejecting Classes.

CC.    The Plan does not unfairly discriminate because members within each Class are

treated similarly. In particular, there is no unfair discrimination among creditors and interest

holders with respect to Class 6 (Artemis Note Claims) and Class 8 (Existing Stearns Holdings

Interests). Neither of these Classes is entitled to receive any recovery because there is

16

insufficient value to pay them. Specifically, Stearns Holdings is insolvent and its senior creditors are not being paid in full. Therefore, no value remains for distributions to holders of Existing Stearns Holdings Interests in Class 8. Similarly, Protos is insolvent and following the cancellation of its only assets—the Existing Stearns Holdings Interests—it will have no assets with which it may satisfy any portion of the Artemis Note Claims.

DD.    While the Claims and Interests in Class 7 (Intercompany Claims), Class 9 (Intercompany Interests), and Class 10 (Protos Interests) may be Reinstated, such treatment does not constitute unfair discrimination with respect to Classes 6 or 8 because such Reinstatement is for administrative convenience purposes and does not prejudice any other creditor or party in interest. Because the Debtors (other than Protos) collectively comprise a unitary enterprise, the Debtors will not receive any value on account of the Reinstatement of Claims or Interests in Classes 7 or 9. Furthermore, to the extent any such value exists, such value would go to holders of senior Claims who have consented to Reinstatement of Intercompany Claims and Intercompany Interests to preserve the going-concern attributes of the Debtors' business. Similarly, the Reinstatement of the Protos Interests is merely for administrative convenience and does not afford any recovery of value to holders of Protos Interests or prejudice the holders of Artemis Note Claims. Accordingly, the Plan does not discriminate unfairly in respect to the Deemed Rejecting Classes or any other Class of Claims or Interests.

EE.    The Plan does not violate sections 1129(b)(2)(B) and (C) of the Bankruptcy Code and is fair and equitable with respect to the Deemed Rejecting Classes because Claims and Interests in Classes 7, 9, and 10 are being Reinstated for administrative purposes only and such Reinstatement does not indicate that value is being distributed on account of any Claims and Interests junior to the Deemed Rejecting Classes. The preservation of Intercompany Interests,

Intercompany Claims, and Protos Interests is a means to preserve the Reorganized Debtors' corporate and tax structure that does not have any economic substance and that does not enable any holder of Claims or Interests junior to the Deemed Rejecting Classes to retain or recover any value under the Plan. Further, the Reorganized Stearns Holdings Interests to be received by the Plan Sponsor under the Plan are not being provided to the Plan Sponsor on account of any Interests, but instead in exchange for its new money contribution of (i) $65 million and (ii) an amount of cash sufficient to fund all payments of Claims in Class 5 to be made on the Effective Date, which together comprise the New Money Investment, and other valuable consideration provided pursuant to the Plan, the Global Settlement, and the RSA. Moreover, no holders of Claims are entitled to any recovery that exceeds 100% of their Claims under the Plan. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code, and may be confirmed under section 1129(b) of the Bankruptcy Code notwithstanding the Deemed Rejecting Classes' deemed rejection of the Plan.

FF.    Only One Plan (11 U.S.C. § 1129(c)). The Debtors are seeking to confirm only one Plan in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

GG.    Principal Purpose of Plan (11 U.S.C. §1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "Securities Act"). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

HH.    Small Business Case (11 U.S.C. §1129(e)). Section 1129(e) is inapplicable because these Chapter 11 Cases do not qualify as small business cases thereunder.

18

II.     Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan

satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

JJ.     Global Settlement. In accordance with Bankruptcy Rule 9019, the Plan is

dependent upon and incorporates the terms of the Global Settlement, which is an essential

element of the Plan. With respect to the Global Settlement:

(a)     A fair and reasonable opportunity to object or be heard with respect to the

Global Settlement has been afforded to all interested Persons and Entities.

(b)     The Global Settlement (i) is fair and equitable, (ii) is in the best interests

of the estates, and (iii) falls well above the lowest point in the range of reasonableness –

the relevant inquiry with respect to Bankruptcy Rule 9019 settlements – as it resolves any

potential objections the Consenting Noteholders or Consenting Equity Holders might

have raised at the Confirmation Hearing.

(c)     The Global Settlement is fully supported by the Debtors' key

constituencies, including the Consenting Noteholders and Consenting Equity Holders.

Notably, the Debtors have not received a single objection to the Plan, which incorporates

the Global Settlement, from any party other than the U.S. Trustee.

(d)     The negotiation and execution of the Global Settlement was at arm's-

length and in good faith among sophisticated parties represented by separate and

experienced counsel. The Debtors relied on advisors from Skadden, Arps, Slate, Meagher

& Flom LLP, Alvarez & Marsal North America, LLC, and PJT Partners when exercising

their business judgment to enter into the RSA and pursue the Global Settlement. PIMCO

was represented by Hogan Lovells US LLP and FTI Consulting, Inc. The Consenting

Equity Holders were represented by counsel from Simpson Thacher & Bartlett LLP and

the Indenture Trustee was aided by counsel at Reed Smith LLP.

(e)    The Classes affected by the Global Settlement all receive material benefits

as a direct result of the Global Settlement. Classes 2, 4, and 5—the only Classes to have

their treatment under the Plan altered by the Global Settlement—all receive significantly

improved distributions following integration of the Global Settlement into the Plan.

Class 2 will receive Warrants, New Notes, and an increased Cash distribution, while

Class 4's recovery improved from 95% of its Claims to 100% and Class 5's recovery

improved from 0% of its Claims to 100% of its Claims.

Accordingly, the Global Settlement is fair, equitable, reasonable, and appropriate in light of the

facts and circumstances, and is in the best interests of the Debtors, the Estates, and the Holders of

Claims and Interests. The terms of the Global Settlement are approved and the Debtors or the

Reorganized Debtors, as applicable, are directed to implement, effectuate and consummate any

and all documents or transactions contemplated by the Global Settlement.

KK.    Executory Contracts. The Debtors have exercised reasonable business judgment

in determining whether to assume or reject the Executory Contracts and Unexpired Leases

pursuant to Article VI of the Plan. Each assumption of an Executory Contract or Unexpired

Lease pursuant to Article VI of the Plan shall be legal, valid, and binding upon the applicable

Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and

their assignees or successors) to such Executory Contract or Unexpired Lease, all to the same

extent as if such assumption had been effectuated pursuant to an order of the Court entered

before the Confirmation Date under section 365 of the Bankruptcy Code.

20

LL.    <u>Adequate Assurance</u>. The Debtors have cured, or provided adequate assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors pursuant to the Plan.

MM.    <u>Releases and Discharges</u>. The releases and discharges of Claims and Causes of Action described in Article IX of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are (i) made in exchange for adequate consideration including, without limitation, the New Money Investment, entry into the RSA, and the facilitation of the transactions contemplated by the Plan, including without limitation the DIP Repo Facility, the DIP Repo Documents, and the DIP MSFTAS, and the Exit Repo Facility, the Exit Repo Facility Documents, and the Amended DIP MSFTAS as defined herein; (ii) in the best interests of the Debtors' Estates, holders of Claims, and other parties in interest; (iii) fair, equitable, and reasonable; (iv) integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan; and (v) in the cases of releases provided pursuant to section 9.3 of the Plan, are consensual by holders of Claims that did not elect to opt out of such releases, or are otherwise approved by the Court as appropriate pursuant to applicable law. Each of the discharge, release, injunction, indemnification, and exculpation provisions set forth in the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan; (iv) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors; (v) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the

Debtors, their organization, capitalization, operation, and reorganization; (vi) is appropriately tailored to the circumstances of the Chapter 11 Cases; and (vii) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

NN.    <u>Entry into Investment Agreement</u>. The Investment Agreement is an essential element of the Plan and entry into the Investment Agreement is in the best interests of the Debtors, their Estates, and their creditors. The Debtors have exercised sound business judgment in deciding to enter into the Investment Agreement and have provided adequate notice thereof. The Investment Agreement has been negotiated in good faith and at arm's length among the Debtors and Blackstone.

OO.    <u>Issuance of Reorganized Stearns Holdings Interests</u>. Issuance of the Reorganized Stearns Holdings Interests is an essential element of the Plan, the Global Settlement, and the Investment Agreement and is in the best interests of the Debtors, their Estates, and their creditors. The Debtors are authorized, without further approval of this Court or any other party, to issue the Reorganized Stearns Holdings Interests in accordance with the Plan, the Global Settlement, and the Investment Agreement and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

PP.    <u>Issuance of New Notes</u>. Issuance of the New Notes is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their creditors. The Debtors are authorized, without further approval of this Court or any other party, to issue the New Notes in accordance with the Plan and to execute and deliver all agreements, guarantees, documents, instruments, and certificates relating thereto.

QQ.    <u>Issuance of Warrants</u>. Issuance of the Warrants is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their creditors. The Debtors are

authorized, without further approval of this Court or any other party, to issue the Warrants in

accordance with the Plan and to execute and deliver all agreements, documents, instruments, and

certificates relating thereto.

RR.    <u>Distributions Exempt from Registration under the Securities Act</u>. The

distributions of the New Notes and Warrants pursuant to the Plan are exempt from the

registration and prospectus delivery requirements of section 5 of the Securities Act, as amended,

and any state or local laws requiring registration for offer or sale of a security or registration or

licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to and subject

to the limitations in section 1145(a) of the Bankruptcy Code. The issuance by the Reorganized

Debtors of the Reorganized Stearns Holdings Interests pursuant to the Plan are exempt from the

registration requirements of the Securities Act and similar state statutes pursuant to section

4(a)(2) of the Securities Act and/or Rule 506 of Regulation D promulgated thereunder.

SS.    <u>Entry into Cash Flow Exit Facility</u>. The Cash Flow Exit Facility is an essential

element of the Plan and entry into the Cash Flow Exit Facility is in the best interests of the

Debtors, their Estates, and their creditors. The Debtors have exercised sound business judgment

in deciding to enter into the Cash Flow Exit Facility and have provided adequate notice thereof.

The Cash Flow Exit Facility has been negotiated in good faith and at arm's length among the

Debtors, the Cash Flow Exit Facility Agent, and the Cash Flow Exit Facility Lenders, and any

credit extended to and transactions and guarantees entered into thereunder with the Debtors, and

any fees paid thereunder, are deemed to have been extended, issued, and made in good faith.

TT.    <u>Entry into Exit Repo Facility</u>. The Exit Repo Facility is an essential element of

the Plan and entry into the Exit Repo Facility is in the best interests of the Debtors, their Estates,

and their creditors. The Debtors have exercised sound business judgment in deciding to enter

into the Exit Repo Facility and have provided adequate notice thereof. The Exit Repo Facility

has been negotiated in good faith and at arm's length among the Debtors, the Exit Repo Facility

Agent, and the Exit Repo Facility Lenders, and any credit extended to and transactions entered

into thereunder with the Debtors, and any fees paid thereunder, are deemed to have been

extended, issued, and made in good faith.

UU.    <u>Entry into the Amended DIP MSFTA Transactions</u>. The Debtors or the

Reorganized Debtors, as applicable, and the DIP MSFTA Counterparties (as defined in the Final

DIP Repo Order) are authorized to continue performing under, and to amend the DIP MSFTAs

(as defined in the Final DIP Repo Order), to among other things, reflect the Reorganized Debtors

as the applicable counterparties to the DIP MSFTAs, post Effective Date, on terms mutually

satisfactory to the Debtors or the Reorganized Debtors, as applicable and the DIP MSFTA

Counterparties (the "<u>Amended DIP MSFTA</u>"); and the Amended DIP MSFTA shall be deemed

to be in the best interests of the Debtors, their Estates, and their creditors. Entering into and

continuing to perform under the Amended DIP MSFTA transactions is an exercise of the Debtors

and the Reorganized Debtors' sound business judgment and shall have been undertaken after

adequate notice thereof had been provided to all parties as to which notice was required to be

provided. The Amended DIP MSFTAs shall be deemed to have been negotiated in good faith

and at arm's length among the Debtors or the Reorganized Debtors, as applicable, and the DIP

MSFTA Counterparties, and any transactions entered into thereunder with the Debtors or the

Reorganized Debtors, as applicable, and any fees paid thereunder, are deemed to have been

extended, issued, and made in good faith.

VV.    <u>Reorganization Transactions</u>. The Reorganized Debtors' entry into and

assumption of all obligations under and in respect of the transactions contemplated by section 5.8

24

of the Plan and the other transactions contemplated by the Plan (collectively, the "Reorganization Transactions") is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, the Estates, and creditors. The Reorganization Transactions were negotiated, proposed, and entered into or will be entered into, as the case may be, by the Debtors, the Reorganized Debtors, and the counterparties thereto without collusion, in good faith, and from arm's-length bargaining positions. All documents heretofore executed in connection with the Reorganization Transactions are valid, binding, and enforceable agreements, and are not in conflict with any applicable federal or state law, and all documents to be executed following entry of this Confirmation Order in connection with the Reorganization Transactions, upon their execution, will be valid, binding, and enforceable agreements and will not be in conflict with any applicable federal or state law.

WW.    Plan Conditions to Confirmation. Each of the conditions to Confirmation set forth in section 10.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan.

XX.    Plan Conditions to Consummation. Each of the conditions to the Effective Date, as set forth in section 10.2 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

YY.    Retention of Jurisdiction. The Court properly may retain jurisdiction over the matters set forth in Article XII of the Plan, subject to the exceptions set forth therein.

**DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

**Confirmation of Plan and Related Matters**

1.      <u>Confirmation</u>. The Plan, in the form attached hereto as <u>Exhibit A</u>, as modified by

this Confirmation Order, including all provisions thereof and all Exhibits attached thereto, is

approved and confirmed under section 1129 of the Bankruptcy Code. All acceptances and

rejections previously cast for or against the Plan are hereby deemed to constitute acceptances or

rejections of the Plan in the form attached to this Confirmation Order. The terms of the Plan are

incorporated by reference into and are an integral part of this Confirmation Order and the

Debtors are authorized to implement their provisions and consummate the Plan without any

further authorization except as expressly required by the Plan or this Confirmation Order.

Without limiting the foregoing, the Global Settlement as set forth in the Plan is hereby approved

pursuant to Bankruptcy Rule 9019.

2.      <u>Confirmation Order Binding on All Parties</u>. Subject to the provisions of the Plan

and Bankruptcy Rule 3020(e), in accordance with section 1141(a) of the Bankruptcy Code and

notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the

terms of the Plan and this Confirmation Order shall be binding upon, and inure to the benefit of:

(a) the Debtors; (b) the Reorganized Debtors; (c) any and all holders of Claims or Interests

(irrespective of whether such Claims or Interests are Impaired under the Plan or whether the

holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected

the Plan); (d) any other Person giving, acquiring, or receiving property under the Plan; (e) any

and all non-Debtor parties to Executory Contracts or Unexpired Leases with any of the Debtors;

and (f) the respective heirs, executors, administrators, trustees, affiliates, officers, directors,

agents, representatives, attorneys, beneficiaries, guardians, successors, or assigns, if any, of any

of the foregoing. On the Effective Date, all settlements (including the Global Settlement),

compromises, releases, waivers, discharges, exculpations, and injunctions set forth in the Plan

shall be effective and binding on all Persons who may have had standing to assert any settled,

released, discharged, exculpated or enjoined causes of action, and no other Person or Entity shall

possess such standing to assert such causes of action after the Effective Date.

3. Notice. Notice of the Plan, the exhibits thereto (and all amendments and

modifications thereto), the Amended Disclosure Statement, the Solicitation Packages (as defined

in the Amended Disclosure Statement), and the Confirmation Hearing was proper and adequate.

4. Objections. For the reasons stated on the record at the Confirmation Hearing, all

objections and all reservations of rights that have not been withdrawn, waived or settled,

pertaining to the Confirmation of the Plan are hereby overruled on the merits.

5. Effectiveness of All Actions. All actions contemplated by the Plan are hereby

authorized and approved in all respects (subject to the provisions of the Plan). The approvals and

authorizations specifically set forth in this Confirmation Order are nonexclusive and are not

intended to limit the authority of any Debtor or Reorganized Debtor or any officer or director

thereof to take any and all actions necessary or appropriate to implement, effectuate, and

consummate any and all documents or transactions contemplated by the Plan or this

Confirmation Order. Pursuant to this Confirmation Order and other applicable law, the Debtors

and the Reorganized Debtors are authorized and empowered, without action of their respective

stockholders or members or boards of directors or managers to take any and all such actions as

any of their executive officers may determine are necessary or appropriate to implement,

effectuate, and consummate any and all documents or transactions contemplated by the Plan or

this Confirmation Order.

6.        <u>Revesting of Assets and Operation as of the Effective Date</u>. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates and all Causes of Action (except those released by the Debtors pursuant to section 9.2 of the Plan) shall revest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and clear of all Claims, Liens, and Interests of any Entity other than the Debtors, other than as expressly provided in the Plan and this Confirmation Order. No Person (other than the Released Parties to the extent of the relevant release or releases) may rely on the absence of a specific reference in the Plan or the Amended Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person (other than the Released Parties to the extent of the relevant release or releases), except as otherwise provided in the Plan. As of the Effective Date, each of the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims without the supervision of the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

7.        Except as otherwise provided in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to

the Reorganized Debtors and their successors and assigns. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code. Notwithstanding anything herein or in the Plan to the contrary, and for the avoidance of doubt, the release of any mortgages, deeds of trust, Liens, pledges, or other security interests related to the DIP Repo Claims or supporting the obligations under the DIP Repo Facilities shall be expressly contingent upon the indefeasible repayment in full in cash of the DIP Repo Claims, *provided* that to the extent any of the obligations under the DIP Repo Facilities are being refinanced pursuant to the terms of the Exit Repo Facility and/or the Amended MSFTAS, such mortgages, deeds of trust, Liens, pledges, and other security interests granted on behalf of the DIP Repo Parties with respect tothe DIP Repo Facilities, shall only revert to the Reorganized Debtors and their successors and assigns for the sole purpose of being pledged to the Exit Repo Parties and the DIP MSFTA Counterparties, and, upon occurrence of the Effective Date, such mortgages, deeds of trust, Liens, pledges, and other security interests shall be deemed pledged, as collateral for the Exit Repo Facility and the Amended DIP MSFTAS (as applicable).

8.      Notwithstanding anything in the Plan to the contrary, Confirmation or the occurrence of the Effective Date, the DIP Repo Facilities shall not be cancelled unless and until the DIP Repo Claims have been indefeasibly paid in full in cash or refinanced in full in accordance with the terms of the Exit Repo Facility and the Exit Repo Documents, *provided* that for the avoidance of doubt, any DIP Repo Claims for fees and/or expenses or any similar obligations may only be satisfied, if and when satisfied in full in cash; *provided further* that

notwithstanding anything to the contrary in the Plan, Confirmation, or the occurrence of the

Effective Date, the DIP MSFTAS shall not be cancelled and shall continue in full force and

effect to the extent that the Debtors and the Reorganized Debtors and the DIP MSFTA

Counterparties determine to continue performing under such agreements pursuant to the

Amended DIP MSFTAS; and, if and when cancelled, the DIP Repo Facilities shall continue in

effect solely for the purposes of (i) seeking compensation and reimbursement for fees and

expenses incurred in accordance with the provisions thereof; and (ii) maintaining and enforcing

any right to indemnification, expense reimbursement, contribution, or subrogation or any other

claim or entitlement that any DIP Repo Party may have under any DIP Repo Document or

applicable law. To the extent that any provision in a DIP Repo Document or the DIP Repo

Orders is of a type that survives repayment of the subject indebtedness, such provisions shall

remain in effect notwithstanding satisfaction of the DIP Repo Claims.

9.      New Organizational Documents. On or immediately prior to the Effective Date,
the Reorganized Debtors are hereby authorized to file the amended certificates of formation or

incorporation, as applicable, with the relevant secretary of state.

10.     Reorganization Transactions. The Reorganization Transactions are approved, and
the Debtors and Reorganized Debtors and their officers, managers, and directors are authorized,

to execute and/or amend such documents and take such actions as may be reasonably required in

order to effectuate the Reorganization Transactions.

11.     Cancellation of Existing Stearns Holdings Interests. On the Effective Date, each
purchase right, instrument, guarantee, certificate, share, bond, note, warrant, indenture, option,

put, agreement (including registration rights agreements), and other instrument or document

directly or indirectly evidencing or creating the Existing Stearns Holdings Interests, shall be

cancelled, terminated and extinguished and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

12. <u>Cancellation of the Notes</u>. On the Effective Date, each purchase right, instrument, guarantee, certificate, share, bond, note, warrant, indenture, option, put, agreement (including registration rights agreements), and other instrument or document directly or indirectly evidencing the Notes shall be deemed cancelled, and the obligations of the Debtors thereunder and in any way related thereto shall be fully satisfied, released, and discharged; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, the Indenture shall continue in effect solely for the purposes of, as applicable, (a) allowing Noteholders to receive distributions under the Plan and (b) allowing and preserving the rights of the Indenture Trustee to (i) make distributions in satisfaction of Notes Secured Claims; (ii) maintain and exercise its Charging Liens; (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in making or facilitating distributions to Noteholders; (iv) maintain and enforce any right to indemnification, expense reimbursement, contribution, or subrogation or any other claim or entitlement that the Indenture Trustee may have under the Indenture or applicable law; and (v) appear and raise issues in these Chapter 11 Cases; *provided further*, *however*, that the cancellation of purchase rights, instruments, guarantees, certificates, shares, bonds, notes, warrants, indentures, options, puts, agreements, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors hereunder shall not itself alter the obligations or rights among third parties (apart from the Debtors, Reorganized Debtors, and Non-Debtor Affiliates). Upon cancellation of the Indenture all duties and responsibilities of the Indenture Trustee under the Indenture, as applicable, shall be discharged except to the extent required in order to effectuate the Plan or as described above.

13.     <u>Entry into Investment Agreement</u>. The Debtors' entry into, and performance

under, the Investment Agreement is approved.

14.     <u>Issuance of Reorganized Stearns Holdings Interests</u>. Issuance of the Reorganized

Stearns Holdings Interests in accordance with the Plan, the Global Settlement, and the

Investment Agreement is approved. Each of the Debtors and the Reorganized Debtors are

authorized and empowered, without further approval of this Court or any other party, to take

such actions and to perform such acts as may be necessary, desirable or appropriate to implement

the issuance of the Reorganized Stearns Holdings Interests in accordance with the Plan, the

Global Settlement, and the Investment Agreement and to execute and deliver all agreements,

documents, securities, instruments, and certificates relating thereto. The Reorganized Stearns

Holdings Interests to be issued are hereby deemed issued as of the Effective Date regardless of

the date on which they are actually distributed. All Reorganized Stearns Holdings Interests

issued by the Reorganized Debtors pursuant to the provisions of the Plan, the Global Settlement,

and the Investment Agreement are hereby deemed to be duly authorized and issued, fully paid

and nonassessable.

15.     <u>Issuance of New Notes</u>. Issuance of the New Notes in accordance with the Plan

and the Global Settlement is approved. Each of the Debtors and the Reorganized Debtors are

authorized and empowered, without further approval of this Court or any other party, to take

such actions and to perform such acts as may be necessary, desirable or appropriate to implement

the issuance of the New Notes in accordance with the Plan and the Global Settlement and to

execute and deliver all agreements, guarantees, documents, instruments, and certificates relating

thereto. All New Notes to be issued are hereby deemed issued as of the Effective Date regardless

of the date on which they are actually distributed.

16.    The Restructured Debtors need not provide any further evidence (including, without limitation, any legal opinion) other than the Plan and this Confirmation Order to the DTC or any other person with respect to the treatment of the New Notes under applicable securities laws. The DTC, and any distribution or stock transfer agent, shall be required to accept and conclusively rely upon the Plan or this Confirmation Order in lieu of a legal opinion regarding whether the New Notes are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

17.    <u>Issuance of Warrants</u>. Issuance of the Warrants in accordance with the Plan and the Global Settlement is approved. Each of the Debtors and the Reorganized Debtors are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the Warrants in accordance with the Plan and the Global Settlement and to execute and deliver all agreements, documents, instruments, and certificates relating thereto. All Warrants to be issued are hereby deemed issued as of the Effective Date regardless of the date on which they are actually distributed. All Warrants issued by the Reorganized Debtors pursuant to the provisions of the Plan and the Global Settlement are hereby deemed to be duly authorized and issued. In order to participate in the issuance of the Warrants, holders of Notes Secured Claims must complete the registration form provided to them by the Claims and Solicitation Agent and send the completed registration form to the Claims and Solicitation Agent so that it is received on or before January 6, 2020. For the avoidance of doubt, holders of Notes Secured Claims that fail to submit a completed and valid registration form by January 6, 2020 will forfeit the Warrants to which they would otherwise be entitled irrespective of section 7.7(b) of the Plan, which governs undeliverable distributions and unclaimed property.

18.      <u>Exemption from Registration</u>. The issuance by the Reorganized Debtors of the
New Notes and Warrants pursuant to the Plan are exempt from the registration requirements of
the Securities Act and similar state statutes pursuant and subject to section 1145 of the
Bankruptcy Code. The issuance by the Reorganized Debtors of the Reorganized Stearns
Holdings Interests pursuant to the Plan are exempt from the registration requirements of the
Securities Act and similar state statutes pursuant to section 4(a)(2) of the Securities Act and/or
Rule 506 of Regulation D promulgated thereunder.

19.      <u>Minimum Distributions</u>. Notwithstanding anything in the Plan to the contrary, the
Reorganized Debtors and the Disbursing Agent shall not be required to make distributions or
payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial
distributions or payments of fractions of dollars. Whenever any payment or distribution of a
fraction of a dollar or fractional share of Reorganized Stearns Holdings Interests or a fractional
New Note or Warrant to purchase a fractional Class B unit under the Plan would otherwise be
called for, the actual payment or distribution will reflect a rounding down of such fraction to the
nearest whole dollar (for Cash), whole interest (for Reorganized Stearns Holdings Interests),
whole Class B unit (for Warrants), or nearest $1.00 (for New Notes), and no Cash shall be
distributed in lieu of such fractional amounts of Reorganized Stearns Holdings Interests, New
Notes, or Class B units. For distribution and rounding purposes, DTC shall be considered a
single holder.

20.      <u>Entry Into Cash Flow Exit Facility</u>. Confirmation of the Plan shall be deemed
approval by the Reorganized Debtors to enter into and execute the Cash Flow Exit Facility
Agreement and such other documents and guarantees as may be required to effectuate the
transactions contemplated by the Cash Flow Exit Facility on the Effective Date, and no further

corporate action or any further action by the Debtors or the Reorganized Debtors, as applicable, and no further notice to or action, order, or approval of the Court shall be required in connection therewith.

21.    The Debtors or the Reorganized Debtors, as applicable, and the Persons and Entities granted such liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents as necessary to establish and perfect such liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

22.    <u>Entry into Exit Repo Facility</u>. Confirmation of the Plan shall be deemed approval by the Reorganized Debtors to execute and deliver the Exit Repo Facility Documents and such other documents as may be required to effectuate the transactions contemplated by the Exit Repo Facility on the Effective Date, including but not limited to those documents required to be executed and delivered by any of the Reorganized Debtors under Section 10 of the Master Repurchase Agreement, and no further corporate action or any other further action by the Debtors or the Reorganized Debtors, as applicable, and no further notice to or action, order, or approval of the Court shall be required in connection therewith. On the Effective Date, the Exit Repo Facility Documents and all other documents executed and delivered by or on behalf of the

Reorganized Debtors in connection therewith shall be legal, valid, binding and authorized

obligations of the Reorganized Debtors, enforceable in accordance with their respective terms.

23.     The Debtors or the Reorganized Debtors, as applicable, and the Persons and

Entities granted such liens and security interests under and in connection with the Exit Repo

Facility shall be authorized to make all filings and recordings, and to obtain all governmental

approvals and consents as necessary to establish and perfect such liens and security interests

under the provisions of the applicable state, federal, or other law that would be applicable in the

absence of the Plan and this Confirmation Order (it being understood that perfection shall occur

automatically by virtue of the entry of this Confirmation Order and any such filings, recordings,

approvals, and consents shall not be required), and will thereafter cooperate to make all other

filings and recordings that otherwise would be necessary under applicable law to give notice of

such liens and security interests to third parties.

24.     The Debtors or the Reorganized Debtors, as applicable, shall be further authorized

to (i) enter into, execute and perform under ancillary agreements and letters and to take all

necessary steps, including making any necessary cash payments, transfers of margin, transfers of

cash collateral, or otherwise, in furtherance of the Exit Repo Facility.

25.     <u>Entry into DIP MSFTA Transactions</u>. The Debtors or the Reorganized Debtors, as

applicable, shall be authorized to enter into, execute and perform under the Amended DIP

MSFTAS with such DIP MSFTA Counterparties to provide for the assignment, transfer or

novation of the transactions under the DIP MSFTAs (as defined in the Final DIP Repo Order) on

the Effective Date on terms mutually satisfactory to the Debtors or the Reorganized Debtors, as

applicable, and the applicable DIP MSFTA Counterparty, and without the need for any further

corporate action or further action by other holders of Claims or Interests.

26.     The Debtors or the Reorganized Debtors, as applicable, shall be further authorized to (i) enter into, execute and perform under ancillary agreements and letters and to take all necessary steps, including making any necessary cash payments, transfers of margin, transfers of cash collateral, or otherwise, in furtherance of such assignment, transfer or novation agreement; and (ii) make all filings and recordings, and to obtain all governmental approvals and consents as necessary to establish and perfect such liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required); (iii) thereafter cooperate with the applicable DIP MSFTA Counterparty to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of any such liens and security interests to third parties.

27.     <u>Executory Contracts and Unexpired Leases</u>. On the Effective Date, all Executory Contracts or Unexpired Leases of the Debtors, other than any Executory Contract or Unexpired Lease that (a) was previously assumed or rejected, (b) was listed in the Plan Supplement as an Executory Contract or Unexpired Lease to be rejected by the Debtors pursuant to the Plan, or (c) is subject to a pending motion to assume or reject as of the Confirmation Date, shall be deemed assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

28.     All Executory Contracts or Unexpired Leases assumed by the Debtors pursuant to the foregoing provision (the "<u>Assumed Agreements</u>") shall remain in full force and effect for the benefit of the Reorganized Debtors, as applicable, and be enforceable by the Reorganized

Debtors, as applicable, in accordance with their terms and notwithstanding any provision in such

Assumed Agreements that purports to prohibit, restrict or condition such assumption. Any

provision in the Assumed Agreements that purports to declare a breach or default based in whole

or in part on the filing of the Chapter 11 Cases is hereby deemed unenforceable, and the

Assumed Agreements shall remain in full force and effect. Any postpetition lease termination

agreements entered into by any of the Debtors with respect to nonresidential real property leases

constitute Assumed Agreements and are hereby assumed pursuant to this Confirmation Order.

29.    Cure amounts for the Assumed Agreements shall be such amounts as are

scheduled on the Plan Supplement or on subsequent plan supplements filed by the Debtors or the

Reorganized Debtors, or such other amounts as are agreed to between the Debtors or

Reorganized Debtors and the applicable counterparty, regardless of whether an objection is filed,

or as otherwise set forth in Section 6.3 of the Plan and the Plan Supplement or subsequent plan

supplements.

30.    The Debtors shall continue to perform under all mortgage loan purchase

agreements, servicing rights sale agreements, related agreements executed in connection with

such agreements, and similar agreements to which they are party, in the ordinary course.  For the

avoidance of doubt, the agreements referenced in the foregoing sentence shall include, without

limitation, those certain Bulk Agreements for the Purchase and Sale of Mortgage Servicing

Rights, and the related Assignment Agreements for Mortgage Loans, each by and among Stearns

Lending, LLC and New Residential Mortgage LLC.  Notwithstanding anything herein or in the

Plan, the Plan Supplement, or any other order in the Chapter 11 Cases to the contrary, (a) the

counterparties to all those agreements (i) need not file proofs of claim and (ii) shall be entitled to

enforce their rights in respect of any claims arising under those agreements against the

Reorganized Debtors, subject to the Reorganized Debtors' rights and defenses, which are reserved with respect to all claims; and (b) all claims thereunder are deemed reinstated and unimpaired and, to the extent payable in the ordinary course, shall be paid in the ordinary course. The Debtors reserve all rights and defenses with respect to all claims, including the right to dispute any such claim on the basis of its nature, amount, or priority, or on any other grounds, as well as the right to assert any offsets thereto.

31.     <u>Exemption from Certain Transfer Taxes</u>. The issuance, transfer or exchange of debt and equity under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any contract, lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes (including, without limitation, stamp tax or similar taxes) to the fullest extent permitted by section 1146 of the Bankruptcy Code, and the appropriate state or local governmental officials or agents shall not collect any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

32.     <u>Payment of Fees</u>. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. Each and every Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

**Discharge of Debtors, Releases and Injunctions**

33.     <u>Discharge of Debtors</u>. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in this Confirmation Order, the

distributions, rights and treatment that are provided in the Plan shall be in full and final

satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims,

Interests and Causes of Action of any nature whatsoever, including any interest accrued on

Claims or Interests from and after the Petition Date, whether known or unknown, against,

liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their

Assets or properties, regardless of whether any property shall have been distributed or retained

pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and

Causes of Action that arose before the Effective Date, any contingent or non-contingent liability

on account of representations or warranties issued on or before the Effective Date, and all debts

of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case

whether or not: (a) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is

filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest

based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the

Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. The Plan

shall bind all holders of Claims and Interests notwithstanding whether any such holders failed to

vote to accept or reject the Plan. All Claims and Interests shall be satisfied, discharged, and

released in full, and the Debtors' liability with respect thereto shall be extinguished completely,

including any liability of the kind specified under section 502(g) of the Bankruptcy Code. All

Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized

Debtors, their successors and assigns, and their Assets and properties any other Claims or

Interests based upon any documents, instruments, or any act of omission, transaction, or other

activity of any kind or nature that occurred prior to the Effective Date. This Confirmation Order

shall be a judicial determination of the discharge of all Claims and Interests, subject to the Effective Date.

34.     <u>Releases, Limitations of Liability and Indemnification</u>. The releases set forth in sections 9.2 and 9.3 of the Plan, the exculpation and limitation of liability provisions set forth in section 9.4 of the Plan, and the indemnification obligations set forth in section 5.12 of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved and authorized in their entirety and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all Persons and Entities who may have had standing to assert released Claims or Causes of Action, and no Person or Entity shall possess such standing to assert such Claims or Causes of Action after the Effective Date.

35.     Entry of this Confirmation Order constitutes this Court's approval, pursuant to Bankruptcy Rule 9019, of the releases pursuant to section 9.2 and section 9.3 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan. Such releases are (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by such releases; (iii) in the best interests of the Debtors and all holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, Reorganized Debtors, or Releasing Parties asserting any Claim or Cause of Action released pursuant to the releases.

36.     <u>Injunctions</u>. Except as otherwise expressly provided in the Plan, the Plan Supplement, or related documents, or for obligations issued pursuant to the Plan, all Persons who have held, hold, or may hold Claims or Interests that have been released pursuant to section 9.2 or section 9.3 of the Plan, discharged pursuant to section 9.5 of the Plan, or are subject to

exculpation pursuant to section 9.4 of the Plan, are permanently enjoined, from and after the

Effective Date, from taking any of the following actions against the Released Parties:

(A) commencing or continuing in any manner any action or other proceeding of any kind on

account of or in connection with or with respect to any such claims or interests; (B) enforcing,

attaching, collecting or recovering by any manner or means any judgment, award, decree or

order against such Persons on account of or in connection with or with respect to any such

Claims or Interests; (C) creating, perfecting or enforcing any encumbrance of any kind against

such Persons or the property of estates of such Persons on account of or in connection with or

with respect to any such claims or interests; and (D) commencing or continuing in any manner

any action or other proceeding of any kind on account of or in connection with or with respect to

any such Claims or Interests released, settled, or discharged pursuant to the Plan.

37.    The rights afforded in the Plan and the treatment of all Claims and Interests

therein shall be in exchange for and in complete satisfaction of all Claims and Interests of any

nature whatsoever, including any interest accrued on Claims from and after the Petition Date,

against the Debtors or any of the Assets, property, the Estates, or the Released Parties. On the

Effective Date, all such Claims against the Released Parties shall be fully released and

discharged, and the Interests shall be cancelled.

38.    Except as otherwise expressly provided for in the Plan or in obligations issued

pursuant thereto from and after the Effective Date, all Claims against the Debtors shall be fully

released and discharged, and all Interests shall be cancelled, and the Debtors' liability with

respect thereto shall be extinguished completely, including any liability of the kind specified

under section 502(g) of the Bankruptcy Code. All Persons shall be precluded from asserting

against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their respective

42

successors and assigns, and each of their Assets and properties, any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

39.      Exculpations. Except as otherwise specifically provided in the Plan or Plan Supplement, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim, obligation, cause of action or liability for any Exculpated Claim, except for gross negligence, intentional fraud or willful misconduct (to the extent such duty is imposed by applicable non-bankruptcy law), but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtors and the Reorganized Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Plan securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

40.      Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**Fannie Mae Provisions**

41.     The Debtors' assumption of the Fannie Mae Lender Contract[5] is conditioned on Fannie Mae's consent under the Fannie Mae Lender Contract and application law. Except to the extent that Fannie Mae expressly agrees otherwise in its consent, if any, to the assumption of the Fannie Mae Lender Contract, the Reorganized Debtors will assume and be responsible for any and all obligations of the Debtors under the Fannie Mae Lender Contract, whether arising prior to, on or after the Petition Date. The terms of any consent provided by Fannie Mae, and any related agreements upon which Fannie Mae's consent is conditioned, shall be binding upon the parties to any such assumed and/or assigned agreements including, without limitation, the Reorganized Debtors.

42.     The Debtors and the Reorganized Debtors are further authorized to enter, and perform under, such supplemental agreements with Fannie Mae as may be necessary and appropriate to effectuate Fannie Mae's rights as provided or preserved in this Confirmation Order, the Plan, and applicable law. The Debtors and the Reorganized Debtors are authorized to pay such cure claims and provide adequate protection as may be agreed with Fannie Mae as a condition for its consent to the assumption the Fannie Mae Lender Contracts. Without limiting the generality of the foregoing, the Reorganized Debtors are authorized to grant Fannie Mae a security interest in cash collateral in the amount of $2 million to secure their obligations to Fannie Mae and to provide adequate assurance of future performance for obligations owed under the Fannie Mae Lender Contract.

---

[5]    "<u>Fannie Mae Lender Contract</u>" means that certain Lender Contract between Fannie Mae and Stearns Lending, LLC, f/k/a First Pacific Financial, Inc., as defined in the Fannie Mae Selling Guide, including that certain Mortgage Selling and Servicing Contract between Fannie Mae and First Pacific Financial, Inc., effective April 15, 2002, as amended and supplemented from time to time.

43.     To the extent the automatic stay of section 362(a) of the Bankruptcy Code applies to any payment to Fannie Mae in connection with the assumption of the Fannie Mae Lender Contract, the automatic stay is modified to permit such payment.

44.     The Debtors shall perform all obligations and pay all claims and amounts due under the Fannie Mae Lender Contract (and any other agreements with Fannie Mae) whether arising prior to, on or after the Petition Date, and are directed to maintain compliance with the Fannie Mae Lender Contract pending any assumption or rejection of the Fannie Mae Lender Contract by the Debtors or any exercise of Fannie Mae's rights to terminate the Fannie Mae Lender Contract and transfer of servicing of loans owned by Fannie Mae.

45.     Fannie Mae shall not be required to file a proof of claim, an administrative expense claim, or take any other action to preserve any of its rights, claims, or defenses against the Debtors, all of which are expressly preserved and shall survive entry of this Confirmation Order, the Plan's discharge and injunction provisions, and the effectiveness of the Plan. If the Debtors fail to satisfy all of the obligations owing to Fannie Mae, then Fannie Mae shall be permitted to seek recovery against the Debtors. Neither the automatic stay nor any post-confirmation injunction shall apply to Fannie Mae's exercise of any rights or remedies under the Fannie Mae Lender Contract (or any other agreement), including with respect to any collateral securing Fannie Mae's claims or with respect to Fannie Mae's rights to unilaterally terminate or transfer servicing of loans owned by Fannie Mae.

46.     Immediately upon entry of this Confirmation Order, the Debtors are authorized to enter into, and perform under, any agreements or settlements with Fannie Mae, including with respect to the resolution of claims, the termination of servicing rights, or the transfer of servicing rights, without further court approval or order.

47.     Notwithstanding any other provision of this Confirmation Order, or anything in the Plan, Plan Supplement, Exit Repo Facility Documents, Cash Flow Exit Facility Agreement, New Notes Indenture, or any other order or document in the Chapter 11 Cases to the contrary:

(a)     any proposed severance of rights and obligations or any other proposed modification of any agreement between any of the Debtors and Fannie Mae shall be subject to the prior written consent of Fannie Mae, in its sole and absolute discretion;

(b)     absent express written consent by Fannie Mae, all of Fannie Mae's rights, powers, prerogatives, remedies, payment and lien priorities, lien rights, security interests, and claims against the Debtors or any other person or entity with respect to the Fannie Mae Lender Contract and all other related agreements are reserved and shall not be discharged, enjoined, impaired, released, modified or limited in any respect;

(c)     no Lien or security interest shall attach to, modify, prime, or otherwise affect (A) the Fannie Mae Lender Contract (or any rights or obligations related thereto) or any other rights with respect to assets owned by or transferred to Fannie Mae or (B) any Cash, accounts, securities, or other collateral (and any proceeds thereof) pledged (or to be pledged) to Fannie Mae pursuant to any collateral pledge agreement or other security agreement between the Debtors and Fannie Mae;

(d)     the term of the Fannie Mae Lender Contract shall remain unchanged, and any extension of the term or changes to other provisions of a contract between any of the Debtors and Fannie Mae must be expressly agreed to by the parties in a separate written agreement;

(e)     Fannie Mae does not, and shall not be deemed to, release any Released Party or any other Person or Entity from any Claims or Causes of Action that it may

have, nor shall Fannie Mae be enjoined from pursuing any such Claims or Causes of
Action; and

(f)      all transactions with and transfers to Fannie Mae prior to the Effective
Date are hereby reaffirmed and ratified by the Debtors and shall not be subject to
avoidance.

48.      For the avoidance of doubt, Sections 5.15(a)(i)-(x) of the Plan apply
notwithstanding anything therein or in this Confirmation Order, the Plan Supplement, the Exit
Repo Facility Documents, the Cash Flow Exit Facility Agreement, the New Notes Indenture, or
any other order or documents in the Chapter 11 Cases to the contrary.

**Freddie Mac Provisions**

49.      Notwithstanding any other provision of this Confirmation Order, the Plan, the
Plan Supplement, the Cash Flow Exit Facility, the Exit Repo Facility, New Notes Indenture, or
any other order in these Chapter 11 Cases:

(a)      all agreements between the Debtors and Freddie Mac, except for the
Master Securities Forward Transaction Agreement executed on or about July 2, 2019 (the
"Freddie MSFTA"), shall be assumed, upon the Effective Date, by the Reorganized
Debtors, and the Reorganized Debtors shall perform all obligations, and pay all claims
and amounts due, under any agreement with Freddie Mac (except the Freddie MSFTA),
whether incurred or arising prior to or after the Effective Date;

(b)      the Freddie MSFTA shall terminate on the Effective Date;

(c)      Freddie Mac's rights, powers, prerogatives, remedies, payment or lien
priorities, lien rights, security interests, and claims against the Debtors or any other

person or entity shall not be discharged, enjoined, impaired, released, modified, or

limited in any respect;

(d)     neither the automatic stay nor any post-confirmation injunction shall apply

to Freddie Mac's exercise of any rights or remedies against the Debtors, the Reorganized

Debtors, or any other person or entity, including Freddie Mac's right to terminate or

transfer the servicing of loans; and

(e)     the protections provided to Freddie Mac pursuant to Section 5.15(b) of the

Plan shall not be modified, limited, or impaired in any respect, without Freddie Mac's

express written consent.

### Ginnie Mae Provisions

50.     Notwithstanding anything herein or in the Plan, Plan Supplement, Exit Repo

Facility Documents, Cash Flow Exit Facility Agreement, New Notes Indenture, or any other

order in the Chapter 11 Cases to the contrary:

(a)     the Debtors' obligations relating to Ginnie Mae shall not be transferred by

the Debtors to the Plan Sponsor (or any other Person or Entity) without the express prior

written consent of Ginnie Mae, in its sole and absolute discretion;

(b)     the assumption or assumption and assignment of any agreements between

any of the Debtors and Ginnie Mae shall be subject to the express prior written consent of

Ginnie Mae in its sole and absolute discretion;

(c)     any proposed severance of rights and obligations or any other proposed

modification of any agreement between any of the Debtors and Ginnie Mae shall be

subject to the prior written consent of Ginnie Mae, in its sole and absolute discretion;

(d)      Ginnie Mae's rights, powers, prerogatives, remedies, payment or lien priorities, and Claims against the Debtors, any Non-Debtor Affiliate or any other Person or Entity under a contract between the Debtors and Ginnie Mae (including, without limitation, any guaranty by any Debtor of the obligations thereunder) shall not be Impaired, released, modified, or limited in any respect, except as otherwise expressly agreed to in writing by Ginnie Mae;

(e)      nothing in the Plan, Plan Supplement, Exit Repo Facility Documents, Cash Flow Exit Facility Agreement, New Notes Indenture, this Confirmation Order, or any other order in the Chapter 11 Cases shall discharge, release, extinguish, terminate, modify, subordinate, prime, grant a lien or administrative claim in, or otherwise impair, Ginnie Mae's interests in or rights to the mortgages backing the Ginnie Mae securities and any related collateral. Ginnie Mae's collateral includes, but is not limited to, cash, account or collateral held or required to be held by the Debtors, the non-Debtor affiliates, Ginnie Mae, or any other party in connection with the Ginnie Mae Guaranty Agreements, including without limitation Principal and Interest Custodial Accounts (each as defined in the Ginnie Mae Guaranty Agreements) and funds, and Taxes and Insurance Custodial Accounts (each as defined in the Ginnie Mae Guaranty Agreements) and funds, established in accordance with the Ginnie Mae program requirements;

(f)      the term of agreements between any of the Debtors and Ginnie Mae shall remain unchanged, and any extension of the term or changes to other provisions of a contract between any of the Debtors and Ginnie Mae must be expressly agreed to by the parties in a separate written agreement;

49

(g)    Ginnie Mae does not, and shall not be deemed to, release any Released

Party or any other Person or Entity from any Claims or Causes of Action that it may

have, nor shall Ginnie Mae be enjoined from pursuing any such Claims or Causes of

Action;

(h)    agreements between any of the Debtors and Ginnie Mae shall be, upon the

Effective Date, assumed by the Reorganized Debtors;

(i)    Ginnie Mae's rights pursuant to 12 U.S.C. § 1721(g) shall not be limited

nor shall the right of any governmental unit to take any action not subject to the

automatic stay be limited; and

(j)    all transactions with and transfers to Ginnie Mae prior to the Effective

Date are hereby reaffirmed and ratified by the Debtors and shall not be subject to

avoidance.

51.    Without limiting the generality of, and subject to, the foregoing, in connection

with the proposed assumption or assumption and assignment of any agreement between any of

the Debtors and Ginnie Mae, such agreements may be assumed or assumed and assigned only

upon: (i)(1) the Reorganized Debtors agreeing to honor all obligations under the agreements

between any of the Debtors and Ginnie Mae whether incurred prior to or after the Effective Date;

or (2) such other treatment of the Cure amount or any other obligations as shall be agreed to by

Ginnie Mae and the Debtors in good faith negotiations, and (ii) adequate assurance of future

performance.

**Provisions for Governmental Units**

52.    As to any Governmental Unit (as defined in section 101(27) of the Bankruptcy

Code), nothing in the Plan or this Confirmation Order shall limit or expand the scope of

discharge, release or injunction to which the Debtors or Reorganized Debtors are entitled to under the Bankruptcy Code, if any. The discharge, release, and injunction provisions contained in the Plan and this Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to the entry of this Confirmation Order, pursuing any police or regulatory action.

53.     Accordingly, notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of any Governmental Unit arising on or after the Effective Date; (3) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtors; or (4) any liability of the Debtors or Reorganized Debtors under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Confirmation Date. Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

54.     Moreover, nothing in this Confirmation Order or the Plan shall release or exculpate any non-Debtor, including any Released Parties, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties, nor shall

anything in this Confirmation Order or the Plan enjoin any Governmental Unit from bringing any

claim, suit, action or other proceeding against any non-Debtor for any liability whatsoever;

*provided*, *however*, that the foregoing sentence shall not (x) limit the scope of discharge granted

to the Debtors under sections 524 and 1141 of the Bankruptcy Code, or (y) diminish the scope of

any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code.

55.    Nothing contained in the Plan or this Confirmation Order shall be deemed to

determine the tax liability of any person or entity, including but not limited to the Debtors and

the Reorganized Debtors, nor shall the Plan or this Confirmation Order be deemed to have

determined the federal tax treatment of any item, distribution, or entity, including the federal tax

consequences of the Plan, nor shall anything in the Plan or this Confirmation Order be deemed to

have conferred jurisdiction upon this Court to make determinations as to federal tax liability and

federal tax treatment except as provided under 11 U.S.C. § 505.

## Plan Modifications

56.    <u>Plan Modifications</u>. The Plan, as modified by this Confirmation Order, satisfies

the requirements of sections 1122 and 1123 of the Bankruptcy Code. Accordingly, pursuant to

Bankruptcy Rule 3019, these modifications do not require additional disclosure under section

1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy

Code, nor do they require that holders of Claims be afforded an opportunity to change previously

cast acceptances or rejections of the Plan. Such changes are approved pursuant to section

1127(a).

57.    Specifically, the definitions in the Plan of "Exit Repo Facility Agent" and "Exit

Repo Facility Agreement" are hereby modified to include both the singular and plural. Further,

the Debtors are permitted to enter into multiple Exit Repo Facility Agreements in the Debtors'

discretion and such Exit Repo Facility Agreements may use different Exit Repo Facility Agents or no Exit Repo Facility Agent at all.

58.     Further, in section 5.15(a) of the Plan, *Fannie Mae*, the phrase "or any other order" shall be read as and replaced with "or any other order or documents".

## Notice and Other Provisions

59.     <u>Notice of Confirmation Order and Occurrence of Effective Date</u>. On or before the tenth (10th) business day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) the United States Trustee; (b) counsel to any statutory committee appointed by the United States Trustee, or if no committee is appointed, the entities listed on the consolidated list of 30 largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; (c) the Debtors' five largest secured creditors; (d) counsel to the indenture trustee for the Debtors' senior secured notes, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE 19801 (Attn: Kurt F. Gwynne and Jason D. Angelo); (e) counsel to Pacific Investment Management Company LLC, Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067 (Attn: Bennett L. Spiegel and Stacey Rosenberg); (f) counsel to Blackstone Capital Partners VI-NQ/NF L.P., Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Elisha Graff and Jamie Fell); (g) counsel to Barclays Bank PLC, Hunton Andrews Kurth LLP, 200 Park Avenue, New York, NY 10166 (Attn: Peter S. Partee, Sr., and Brian Clarke); (h) co-counsel to Nomura Corporate Funding Americas LLC, Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Mark Shinderman and Lauren C. Doyle) and Alston & Bird LLP, 90 Park Avenue, New York, NY 10016 (Attn: Karen Gelernt); (i) counsel to Fannie Mae, O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071 (Attn: Stephen

H. Warren); (j) counsel to Freddie Mac, McKool Smith, P.C., 600 Travis Street, Suite 7000,

Houston, TX 77002 (Attn: Paul D. Moak); (k) counsel to Ginnie Mae, 451 7th Street SW, Room

9250, Washington, DC 20410 (Attn: Lisa Mulrain and Lynne Chandler) and Director,

Monitoring & Asset Management to Ginnie Mae, 425 3rd Street SW, Suite 500, Washington, DC

20024 (Attn: Rene Mondonedo); and (l) all parties required by Local Bankruptcy Rule 9013-

1(b), by causing a notice of this Confirmation Order in substantially the form of the notice

annexed hereto as <u>Exhibit B</u> (the "<u>Notice of Confirmation</u>"), which form is hereby approved, to

be delivered to such parties by first class mail, postage prepaid.  The Notice of Confirmation

shall also be published in the *Wall Street Journal* (National Edition).

60.    Mailing and publication of the Notice of Confirmation in the time and manner set

forth in the preceding paragraph shall be good and sufficient notice under the particular

circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c),

and no other or further notice is necessary. The Notice of Confirmation shall have the effect of

an order of the Court, shall constitute sufficient notice of the entry of the Confirmation Order to

any filing and recording officers, and shall be a recordable instrument notwithstanding any

contrary provision of applicable non-bankruptcy law.

61.    <u>Failure to Consummate Plan and Substantial Consummation</u>. If the Effective Date

does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the

fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or

rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or

agreement executed pursuant to the Plan, shall be null and void. In such event, nothing contained

in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the

Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any Claims by or against

54

or Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the

Debtors or any Person in any further proceedings involving the Debtors, (c) constitute an

admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact

or conclusion of law with respect thereto.

62.    <u>References to Plan Provisions</u>. The failure to include or specifically reference any

particular provision of the Plan in this Confirmation Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its

entirety.

63.    <u>Exhibits</u>. Each reference to a document, agreement or summary description in this

Confirmation Order or in the Plan shall be deemed to be a reference to such document,

agreement or summary description in substantially the form of the latest version of such

document, agreement or summary description filed with the Court (whether filed as an

attachment to the Plan or filed separately).

64.    <u>Plan and Confirmation Order Provisions Mutually Dependent</u>. The provisions of

this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable and

mutually dependent.

65.    <u>Confirmation Order Provisions Mutually Dependent</u>. The provisions of this

Confirmation Order are hereby deemed nonseverable and mutually dependent.

66.    <u>Confirmation Order Supersedes</u>. It is hereby ordered that this Confirmation Order

shall supersede any orders of this Court issued prior to the Confirmation Date that may be

inconsistent with this Confirmation Order.

67.    <u>Conflicts Between Confirmation Order and Plan</u>. The provisions of the Plan and

of this Confirmation Order shall be construed in a manner consistent with each other so as to

effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

68.     Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XII of the Plan.

69.     Survival of the Final DIP Repo Order. Notwithstanding anything herein or the Plan or any Plan Document to the contrary, the Final DIP Repo Order shall survive the Effective Date and the stipulations and releases set forth therein shall remain binding and enforceable.

70.     Immediate Effectiveness. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or otherwise, immediately upon the entry of this Confirmation Order, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, were deemed to have accepted, rejected or were deemed to have rejected the Plan), any trustees or examiners appointed in the Chapter 11 Cases, all Persons and Entities that are party to or subject to the settlements, compromises, releases, discharges, injunctions, stays and exculpations

described in the Plan or herein, each Person or Entity acquiring property under the Plan, and any

and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and

the respective heirs, executors, administrators, successors or assigns, affiliates, officers,

directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the

foregoing.


Dated: New York, New York
       October 24, 2019

                       /S/ Shelley C. Chapman
                       HONORABLE SHELLEY C. CHAPMAN
                       UNITED STATES BANKRUPTCY JUDGE