## Exhibit A

**Amended Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **STEARNS HOLDINGS, LLC, *et al.*,** | **Case No. 19-12226 (SCC)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF STEARNS HOLDINGS, LLC, ET AL.

Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Evan A. Hill
Edward P. Mahaney-Walter
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
(212) 735-3000

*Counsel for Debtors and Debtors in Possession*

Dated: September 19, 2019

---

[1]    The Debtors and the last four digits of their taxpayer identification numbers are: Stearns Holdings, LLC (8219); Stearns Co-Issuer Inc. (7096); Stearns Lending, LLC (1773); Stearns Ventures, LLC (2386); Protos Acquisition LLC (4941); bSNAP, LLC (2498); and Private Mortgage Advisors, LLC (7493). The address of Protos Acquisition LLC is 345 Park Avenue, New York, NY 10154. The address of the other Debtors is c/o Stearns Lending, LLC, 750 East Highway, 121 Bypass, Suite 150, Lewisville, TX 75067.

# TABLE OF CONTENTS

**Article I Defined Terms, Rules of Interpretation, Computation of Time, and
Governing Law**..................................................................................................**4**

Section 1.1    Defined Terms ..............................................................................4

Section 1.2    Rules of Interpretation..................................................................15

Section 1.3    Computation of Time ....................................................................16

Section 1.4    Governing Law .............................................................................16

Section 1.5    Reference to Monetary Figures ....................................................16

Section 1.6    Reference to the Debtors or Reorganized Debtors ........................16

**Article II Treatment of Unclassified Claims** .............................................................**16**

Section 2.1    Administrative Claims ..................................................................16

Section 2.2    Fee Claims ...................................................................................17

Section 2.3    Priority Tax Claims.......................................................................18

Section 2.4    DIP Claims ...................................................................................19

**Article III Classification and Treatment of Claims and Interests** ...........................**19**

Section 3.1    Classification of Claims and Interests...........................................19

Section 3.2    Grouping of Debtors for Convenience Only ..................................20

Section 3.3    Summary of Classification ...........................................................20

Section 3.4    Treatment of Claims and Interests ...............................................20

Section 3.5    Special Provision Governing Unimpaired Claims..........................24

Section 3.6    Intercompany Interests and Protos Interests.................................24

**Article IV Acceptance Requirements** ........................................................................**24**

Section 4.1    Acceptance or Rejection of the Plan ............................................24

Section 4.2    Confirmation Pursuant to Bankruptcy Code Section 1129(b)..........25

**Article V Means for Implementation** ........................................................................**25**

Section 5.1    Cancellation of Securities and Agreements...................................25

Section 5.2    Sources of Consideration for Plan Distributions ...........................26

Section 5.3    Exemption from Securities Act Registration Requirements ...........27

Section 5.4    Governance Documents and Corporate Existence.........................27

Section 5.5    Reorganized Debtors' Board of Directors......................................27

Section 5.6    Employee Benefits ...........................................................................27

Section 5.7    Vesting of Assets in the Reorganized Debtors ...................................28

Section 5.8    Reorganization Transactions ..............................................................28

Section 5.9    Corporate Action................................................................................28

Section 5.10   Effectuating Documents; Further Transactions ..................................29

Section 5.11   Section 1146 Exemption from Certain Taxes and Fees ......................29

Section 5.12   D&O Liability Insurance Policies and Indemnification Provisions ....29

Section 5.13   Preservation of Causes of Action.......................................................30

Section 5.14   Single Satisfaction of Claims ............................................................30

Section 5.15   Fannie Mae; Freddie Mac; Ginnie Mae .............................................31

Section 5.16   Global Settlement...............................................................................33

**Article VI Treatment of Executory Contracts and Unexpired Leases ...................................34**

Section 6.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........34

Section 6.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases ...........35

Section 6.3    Determination of Assumption Disputes and Deemed Consent ...........36

Section 6.4    Insurance Policies ..............................................................................36

Section 6.5    Reservation of Rights.........................................................................38

Section 6.6    Contracts and Leases Entered Into After the Petition Date.................38

Section 6.7    Modifications, Amendments, Supplements, Restatements, or Other Agreements ........................................................................................38

**Article VII Distributions ........................................................................................38**

Section 7.1    Record Date for Distributions.............................................................38

Section 7.2    Timing and Calculation of Amounts to be Distributed.......................39

Section 7.3    Disbursing Agent ...............................................................................39

Section 7.4    Rights and Powers of the Disbursing Agent.......................................39

Section 7.5    Expenses of Disbursing Agent ...........................................................39

Section 7.6    Distributions on Account of Claims Allowed After the Effective Date ..............39

Section 7.7    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........40

Section 7.8    Withholding and Reporting Requirements...........................................41

Section 7.9    Setoffs ................................................................................................41

Section 7.10   Claims Paid or Payable by Third Parties.............................................41

Section 7.11   Allocations of Distributions Between Principal and Unpaid Interest ..................42

Section 7.12    No Postpetition Interest on Claims. ................................................................42

**Article VIII Procedures for Resolving Contingent, Unliquidated, and Disputed
Claims................................................................................................42**

Section 8.1    Objections to Claims ................................................................................42

Section 8.2    Allowance of Claims ................................................................................42

Section 8.3    Distributions After Allowance ................................................................43

Section 8.4    Estimation of Claims ................................................................................43

Section 8.5    Deadline to File Objections to Claims ..................................................43

Section 8.6    Disallowance of Claims ..........................................................................43

**Article IX Settlement, Release, Injunction, and Related Provisions .......................44**

Section 9.1    Compromise and Settlement of Claims, Interests, and Controversies .................44

Section 9.2    Releases by the Debtors ..........................................................................44

Section 9.3    Releases by Holders of Claims and Interests ......................................45

Section 9.4    Exculpation ................................................................................................46

Section 9.5    Discharge of Claims and Termination of Interests ............................46

Section 9.6    Injunction................................................................................................47

Section 9.7    Term of Injunctions or Stays ................................................................48

Section 9.8    Release of Liens........................................................................................48

**Article X Conditions Precedent to Confirmation of The Plan and The Effective Date ........48**

Section 10.1    Conditions Precedent to Confirmation of The Plan............................48

Section 10.2    Conditions Precedent to Effective Date ..............................................48

Section 10.3    Waiver of Conditions Precedent ..........................................................50

Section 10.4    Effect of Failure of a Condition ............................................................50

**Article XI Modification, Revocation, or Withdrawal of the Plan .......................50**

Section 11.1    Modification and Amendments ............................................................50

Section 11.2    Effect of Confirmation on Modifications............................................50

Section 11.3    Revocation or Withdrawal of the Plan ................................................51

**Article XII Retention of Jurisdiction................................................................51**

Section 12.1    Retention of Jurisdiction ........................................................................51

**Article XIII Miscellaneous Provisions** .................................................................................**53**

Section 13.1    Immediate Binding Effect ...............................................................53

Section 13.2    Additional Documents ...................................................................53

Section 13.3    Dissolution of Statutory Committees ..............................................53

Section 13.4    Reservation of Rights .....................................................................53

Section 13.5    Successors and Assigns ..................................................................54

Section 13.6    Service of Documents ....................................................................54

Section 13.7    Entire Agreement ...........................................................................54

Section 13.8    Severability of Plan Provisions ......................................................54

Section 13.9    Exhibits ..........................................................................................55

Section 13.10   Votes Solicited in Good Faith ........................................................55

Section 13.11   Conflicts ........................................................................................55

## INTRODUCTION

The above-captioned Debtors respectfully propose the following joint chapter 11 plan of reorganization for the resolution of all outstanding Claims against and Interests in the Debtors. Reference is made to the Amended Disclosure Statement distributed contemporaneously herewith, which discusses:

(a)    the history, business, and operations of the Debtors and their Affiliates;

(b)    a summary and analysis of this Plan; and

(c)    other related matters, including risk factors related to this Plan.

Subject to Bankruptcy Code section 1127 and Federal Rule of Bankruptcy Procedure 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to substantial consummation.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*Section 1.1    Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form:

1.    ***Accrued Professional Compensation*** means, at any given moment, all accrued, contingent, and/or unpaid fees (including success fees) for legal, financial advisory, accounting, and other services, and all obligations for reimbursement of expenses rendered or incurred by

any retained Professional in the Chapter 11 Cases before the Effective Date that are awardable and allowable under Bankruptcy Code sections 328, 330(a), 331, or 363 or that are awardable and allowable under Bankruptcy Code section 503, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.      ***Administrative Claim*** means a Claim for payment of costs and expenses of administration pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, accounting, and other services, and reimbursement of expenses Allowed pursuant to Bankruptcy Code sections 328, 330(a), 331, or 363 for the period commencing on the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code, 28 U.S.C. §§1–4001; (d) all Allowed Claims for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5); and (e) all other Claims entitled to administrative claim status pursuant to an order of the Bankruptcy Court.

3.      ***Administrative Claims Bar Date*** means the deadline for filing Proofs of Claim for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

4.      ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.      ***Allowed*** means, with respect to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

6.      ***Allowed Claim*** means (a) any Claim against the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, if listed as liquidated in amount and not listed as Disputed or contingent and for which no contrary Proof of Claim has been filed; (b) any Claim arising on or before the Effective Date that the Debtors have assented to the validity of or have not objected to or requested estimation of prior to the Claims Objection Deadline; (c) any Claim expressly allowed by the Plan; (d) any Claim expressly allowed by a Final Order; or (e) any Claim allowed by an agreement between the holder of such Claim and the Debtors or the Reorganized Debtors; *provided*, *however*, that, notwithstanding anything herein to the contrary, by treating a Claim as an Allowed Claim under clause (b) above following the expiration of the Claims Objection Deadline, the Debtors do not waive their rights to contest the amount and validity of any Disputed, contingent, and/or unliquidated Claim in the time, manner, and venue in which such Claim would have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced. An Allowed Claim (y) includes a Disputed Claim to the extent such Disputed Claim becomes Allowed after the Effective Date; and (z) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code,

2

or by Final Order of the Bankruptcy Court, an Allowed Claim shall not, for purposes of distributions under the Plan, include interest on such Claim accruing from and after the Petition Date.

7.    ***Amended Disclosure Statement*** means the disclosure statement for this Plan, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, which is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, which shall be in all respects reasonably acceptable to the Required Consenting Noteholders and the Consenting Equity Holders.

8.    ***Amended Disclosure Statement Order*** means the order by the Bankruptcy Court approving the Amended Disclosure Statement, which shall be in all respects reasonably acceptable to the Required Consenting Noteholders and the Consenting Equity Holders.

9.    ***Artemis Note*** means the 5% secured note due December 4, 2020, issued pursuant to the Artemis Promissory Note.

10.    ***Artemis Note Claim*** means any Claim arising under or in connection with the Artemis Note (including all accrued and unpaid interest through and including the Petition Date).

11.    ***Artemis Promissory Note*** means that certain Secured Promissory Note, dated as of August 8, 2013, as modified from time to time, by and among Protos, as issuer, and Artemis Holdings, Inc., as holder.

12.    ***Assets*** means all of the rights, title, and interests of the Debtors of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

13.    ***Avoidance Action*** means any Claim, Cause of Action, and right arising under sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code.

14.    ***Ballot*** means the ballot upon which holders of Claims entitled to vote on the Plan shall cast their votes to accept or reject the Plan, and, if applicable, make such other elections as may be made thereon.

15.    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §101, *et seq.*, as amended from time to time.

16.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over these Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

17.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and any corresponding local rules of the Bankruptcy Court.

18.    ***Bar Date*** means the deadlines set by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing proofs of Claim in the Chapter 11 Cases.

19.     ***Bar Date Order*** means the order entered by the Bankruptcy Court establishing the Bar Date and any subsequent order supplementing such order or relating thereto.

20.     ***Blackstone*** means Blackstone Capital Partners VI NQ/NF L.P. and Blackstone Family Investment Partnership VI-NQ – ESC L.P.

21.     ***Business Day*** means any day other than a Saturday, Sunday, or "Legal Holiday," as defined in Bankruptcy Rule 9006(a).

22.     ***Cash*** means legal tender of the United States of America.

23.     ***Cash Flow DIP Claims*** means any and all Claims derived from or based on the Cash Flow DIP Credit Agreement.

24.     ***Cash Flow DIP Credit Agreement*** means that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement, dated on or about the DIP Closing Date, by and among the Cash Flow DIP Lender and the Debtors, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

25.     ***Cash Flow DIP Facility*** means the credit facility or facilities established pursuant to the Cash Flow DIP Credit Agreement.

26.     ***Cash Flow DIP Lender*** means Blackstone in its capacity as lender and agent under the Cash Flow DIP Facility and its permitted assigns.

27.     ***Cash Flow Exit Facility*** means the senior secured first-lien credit facility to be established pursuant to the Cash Flow Exit Facility Agreement on the terms set forth in the RSA.

28.     ***Cash Flow Exit Facility Agent*** means the agent under the Cash Flow Exit Facility Agreement.

29.     ***Cash Flow Exit Facility Agreement*** means that certain Credit Agreement to be entered into by and among the Cash Flow Exit Facility Lenders, the Reorganized Debtors, and the Cash Flow Exit Facility Agent, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof. A form of Cash Flow Exit Facility Agreement will be provided with the Plan Supplement.

30.     ***Cash Flow Exit Facility Lenders*** means the lenders under the Cash Flow Exit Facility Agreement and their permitted assigns.

31.     ***Cause of Action*** means any action, proceeding, agreement, Claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of

4

Action include: (a) any right of setoff, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to Bankruptcy Code section 362; (d) any Claim or defense, including fraud, mistake, duress, usury, and any other defense set forth in Bankruptcy Code section 558; (e) any state law fraudulent transfer claim; and (f) any Avoidance Action.

32.     *Chapter 11 Cases* means the Debtors' chapter 11 cases pending under chapter 11 of the Bankruptcy Code.

33.     *Charging Lien* means any Lien and any right to priority of payment of the Indenture Trustee under the Indenture or any related or ancillary document, instrument, agreement, or principle of law, to receive payment of its fees, costs, and expenses prior to payment of any distributions under the Plan owing to the Noteholders.

34.     *Claim* means any claim as defined in section 101(5) of the Bankruptcy Code.

35.     *Claims Objection Deadline* means, for each Claim, the latest of (a) the date that is 90 days after the Effective Date; (b) as to a particular Claim, 90 days after the filing of a Proof of Claim, or request for payment of such Claim; and (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to Claims.

36.     *Class* means a category of holders of Claims or Interests as set forth in Article III of the Plan and classified pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

37.     *Confirmation* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

38.     *Confirmation Date* means the date of entry of the Confirmation Order.

39.     *Confirmation Hearing* means the hearing held before the Bankruptcy Court on Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as such hearing may be continued from time to time.

40.     *Confirmation Order* means an order confirming this Plan pursuant to Bankruptcy Code section 1129.

41.     *Consenting Equity Holders* means those Entities that are holders of Interests that are party to the RSA.

42.     *Consenting Noteholders* means, collectively, the PIMCO Noteholders and certain holders of Notes managed by Manulife Investment Management and Putnam Investment Management, LLC, representing approximately 75% of the outstanding principal amount of the Notes.

43.     *Corporate Governance Documents* means the certificate of incorporation, certificate of formation, limited liability agreement, bylaws, and other formation documents of the Debtors and the Reorganized Debtors. Forms of the Corporate Governance Documents will be provided with the Plan Supplement.

44.     ***Creditors' Committee*** means any statutory committee of unsecured creditors, if any such committee is appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

45.     ***Cure*** means the Debtors' cash payment, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an Executory Contract or Unexpired Lease of one or more Debtors and to permit assumption of such Executory Contract or Unexpired Lease under Bankruptcy Code section 365(a).

46.     ***Cure Objection Deadline*** means the deadline for filing objections to a proposed Cure, which shall be on or before 7 days after the filing of the Rejection Schedule or, if the Rejection Schedule is amended, 7 days after such amendment.

47.     ***D&O Liability Insurance Policies*** means all Insurance Policies of any of the Debtors for directors', managers', and officers' liability.

48.     ***Debtor*** means each above-captioned debtor, in its capacity as a debtor and debtor in possession in the Chapter 11 Cases, namely: (a) Stearns Holdings, LLC ("**Stearns Holdings**"), a Delaware limited liability company; (b) Stearns Co-Issuer Inc. ("**Stearns Co-Issuer**"), a Delaware corporation and a direct, wholly owned subsidiary of Stearns Holdings; (c) Stearns Lending, LLC ("**Stearns Lending**"), a California limited liability company and a direct, wholly owned subsidiary of Stearns Holdings; (d) Stearns Ventures, LLC ("**Stearns Ventures**"), a Delaware limited liability company and a direct, wholly owned subsidiary of Stearns Lending; (e) Protos Acquisition, LLC ("**Protos**"), a Delaware limited liability company; (f) bSNAP, LLC ("**bSNAP**"), a Delaware limited liability company and direct wholly owned subsidiary of Stearns Lending; and (g) Private Mortgage Advisors, LLC ("**Private Mortgage**"), a Delaware limited liability company and wholly owned subsidiary of Stearns Ventures.

49.     ***Debtors*** means all of the Debtors collectively.

50.     ***DIP Claims*** means the Cash Flow DIP Claims and the DIP Repo Claims.

51.     ***DIP Closing Date*** means July 11, 2019.

52.     ***DIP Credit Parties*** means (a) the DIP Repo Parties; and (b) the Cash Flow DIP Lender.

53.     ***DIP Documents*** means (a) the DIP Repo Facility Documents; and (b) the Cash Flow DIP Credit Agreement and related documents.

54.     ***DIP MSFTAs*** means those transactions under those certain Amended and Restated Master Securities Forward Transaction Agreements among Stearns Lending and the DIP MSFTA Counterparties, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

55.     ***DIP MSFTA Counterparties*** means the counterparties to certain Master Securities Forward Transaction Agreements with Stearns Lending, in their capacities as such.

56.     ***DIP Netting Agreements*** means those certain Margin, Setoff and Netting Agreements among Stearns Lending and the DIP Netting Parties.

57.     ***DIP Netting Parties*** means (a) the DIP MSFTA Counterparties; and (b) the DIP Repo Parties, in each case, in their respective capacities as such and to the extent that they are party to certain margin, setoff, and netting agreements.

58.     ***DIP Repo Agent*** means Barclays Bank PLC, as administrative agent of the DIP Repo Facility Agreement, in its capacity as such.

59.     ***DIP Repo Claims*** means any and all Claims derived from, based on, and related to the DIP Repo Facility Documents.

60.     ***DIP Repo Facility Agreement*** means certain master repurchase agreement, dated on or about the DIP Closing Date, by and among the DIP Repo Agent, the DIP Repo Facility Purchasers, and the Debtors, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof.

61.     ***DIP Repo Facility Documents*** means the DIP Repo Orders, DIP Repo Facility Agreement, the DIP MSFTAs, the DIP Netting Agreements, and each other agreement, security agreement, pledge agreement, collateral assignment, mortgage, control agreement, guarantee, certificate, document, or instrument executed and/or delivered in connection with any of the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, supplemented, or replaced from time to time.

62.     ***DIP Repo Facility Purchasers*** means the buyers from time to time party to the DIP Repo Facility Agreement, in their capacities as such.

63.     ***DIP Repo Orders*** means the Interim DIP Repo Order and Final DIP Repo Order.

64.     ***DIP Repo Parties*** means: (a) the DIP Repo Agent; (b) the DIP Repo Facility Purchasers; (c) the DIP MSFTA Counterparties; and (d) the DIP Netting Parties, in each case, in their respective capacities as such.

65.     ***Disallowed*** means, with respect to any Claim or any portion thereof, that such Claim or such portion thereof is not Allowed.

66.     ***Disbursing Agent*** means the Reorganized Debtors or the Person or Persons chosen by the Reorganized Debtors to make or facilitate distributions pursuant to this Plan.

67.     ***Disclosure Statement*** means the *Disclosure Statement with Respect to the Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 220].

68.     ***Disputed*** means, with respect to a Claim or Interest, a Claim or Interest (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code; or (b) to which the Debtors or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not yet been withdrawn or determined by a Final Order. If the Debtors

dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors do not dispute, and shall be Disputed as to the balance of such Claim.

69.     ***Distribution Date*** means the date, occurring as soon as practicable after the Effective Date, on which distributions under the Plan are made to holders of Allowed Claims and any date thereafter on which distributions under the Plan are made to holders of Allowed Claims.

70.     ***Distribution Record Date*** means the date for determining which holders of Allowed Claims, other than Note Secured Claims, are eligible to receive distributions under the Plan, which shall be (a) five days before the originally scheduled date of the Confirmation Hearing; or (b) such other date as designated by an order of the Bankruptcy Court.

71.     ***DTC*** means The Depository Trust Company.

72.     ***Effective Date*** means the first Business Day after which all provisions, terms, and conditions specified in Section 10.2 have been satisfied or waived pursuant to Section 10.3.

73.     ***Entity*** means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, other person (as defined in section 101(41) of the Bankruptcy Code), or other entity.

74.     ***Estate*** means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

75.     ***Exculpated Claim*** means any claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, Amended Disclosure Statement, the Original Plan, the Plan, the RSA, or any contract, instrument, release, or other agreement, or document created or entered into in connection with the Amended Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the consummation, administration, and implementation of the Plan, including the issuance of Plan securities, or the distribution of property under the Plan or any other related agreement; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or intentional fraud to the extent imposed by applicable non-bankruptcy law. For the avoidance of doubt, no Cause of Action, obligation, or liability expressly set forth in or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

76.     ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

77.     ***Existing Stearns Holdings Interests*** means the current membership interests of Stearns Holdings that are authorized, issued, and outstanding.

78.     ***Exit Repo Facility*** means the repurchase facility or facilities established pursuant to the Exit Repo Facility Documents.

79.     ***Exit Repo Facility Agent*** means the agent under the Exit Repo Facility Documents.

80.     ***Exit Repo Facility Agreement*** means that certain Master Repurchase Agreement by and among the Exit Repo Facility Agent, the Reorganized Debtors, and the Exit Repo Facility Lenders, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof. A form of Exit Repo Facility Agreement will be provided with the Plan Supplement.

81.     ***Exit Repo Facility Documents*** means, collectively, the Exit Repo Facility Agreement and each other agreement, security agreement, pledge agreement, collateral assignment, mortgage, control agreement, guarantee, certificate, document, or instrument executed and/or delivered in connection with any of the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, supplemented, or replaced from time to time, that shall govern the Exit Repo Facility. Forms of the Exit Repo Facility Documents will be provided with the Plan Supplement.

82.     ***Exit Repo Facility Lenders*** means the lenders under the Exit Repo Facility Documents and their permitted assigns.

83.     ***Exit Repo Facility Parties*** means (a) the Exit Repo Facility Agent; and (b) the Exit Repo Facility Lenders, in each case, in their capacities as such.

84.     ***Fannie Mae*** means the Federal National Mortgage Association.

85.     ***Fee Claim*** means a Claim for Accrued Professional Compensation. All Fee Claims are Administrative Claims.

86.     ***Fee Claim Estimate*** means the sum of (a) billed but unpaid fees and expenses of Professionals as of the Effective Date; and (b) the unbilled fees and expenses of Professional estimated by Professionals attributable to fees and expenses to be incurred as of the Effective Date.

87.     ***Fee Claim Reserve*** means the interest-bearing escrow account, maintained by the Reorganized Debtors, into which Cash equal to the aggregate Fee Claim Estimate of all Professionals shall be deposited on the Effective Date to fund all Fee Claims.

88.     ***Final DIP Repo Order*** means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 556, 559, 560, and 561 (A) Authorizing Debtors to Enter into Repurchase Agreement Facilities and Related Documents; (B) Authorizing Debtors to Sell and Repurchase Mortgage Loans in the Ordinary Course of Business; (C) Granting Backup Liens and Superpriority Administrative Expense Claims; (D) Modifying the Automatic Stay; and (E) Granting Related Relief* [Docket No. 198], entered by the Bankruptcy Court on July 31, 2019.

89.     ***Final Order*** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (a) which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari

has been timely taken; and (b) as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought.

90.    ***Freddie Mac*** means the Federal Home Loan Mortgage Corporation.

91.    ***General Unsecured Claim*** means any Unsecured Claim against any Debtor unless such Claim is (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Priority Non-Tax Claim; or (d) a Go-Forward Trade Claim.

92.    ***Ginnie Mae*** means the Government National Mortgage Association.

93.    ***Go-Forward Trade Claim*** means any Unsecured Claim against any Debtor (other than any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims, or General Unsecured Claims) as of the Petition Date held by an Entity that is identified by the Debtors, in their reasonable discretion, as providing goods or services on favorable terms that are important for the ongoing operations of the Reorganized Debtors.

94.    ***Impaired*** means any Claim or Interest in an Impaired Class.

95.    ***Impaired Class*** means a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

96.    ***Indemnification Provisions*** means each of the indemnification provisions, agreements, or obligations of the Debtors in place as of the Petition Date, if any, whether in the bylaws, certificate of incorporation or other formation documents, board resolutions, or employment contracts, in each case for the benefit of the Debtors and the current and former directors, officers, members, employees, attorneys, other Professionals, and agents of the Debtors.

97.    ***Indenture*** means the indenture, dated as of August 8, 2013, as modified from time to time, by and among Stearns Holdings, each of the guarantors party thereto, and Wilmington Trust, National Association, as Indenture Trustee and noteholder collateral agent.

98.    ***Indenture Trustee*** means Wilmington Trust, as trustee under the Indenture.

99.    ***Insurance Policies*** means, collectively, all insurance policies  that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto that any of the Debtors is a party to, including, for the avoidance of doubt, those providing workers' compensation coverage.

100.    ***Insurer*** means any company or other entity that issued an Insurance Policy, and any respective predecessors and/or affiliates thereof.

101.    ***Intercompany Claims*** means any Claims held by a Debtor or Non-Debtor Affiliate against a Debtor or Non-Debtor Affiliate.

102.    ***Intercompany Interests*** means Interests held by a Debtor or a Debtor's Affiliate, excluding the Interests in Stearns Holdings.

103.    ***Interest*** means any equity interest in the Debtors as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors together with any warrants, options, or contractual rights (including any rights under registration agreements or equity incentive agreements) to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

104.    ***Interim Compensation Order*** means the *Order Granting Debtors' Motion for Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 195], entered by the Bankruptcy Court on July 31, 2019.

105.    ***Interim DIP Repo Order*** means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 556, 559, 560, and 561 (A) Authorizing Debtors to Enter into Repurchase Agreement Facilities and Related Documents; (B) Authorizing Debtors to Sell and Repurchase Mortgage Loans in the Ordinary Course of Business; (C) Granting Backup Liens and Superpriority Administrative Expense Claims; (D) Modifying the Automatic Stay; (E) Scheduling a Final Hearing; and (F) Granting Related Relief* [Docket No. 90], entered by the Bankruptcy Court on July 11, 2019.

106.    ***Investment Agreement*** means that certain Amended Investment Agreement, dated as of August 21, 2019, by and between Stearns Holdings and Blackstone, as the same may be further amended from time to time with the consent of the Required Consenting Noteholders, which consent shall not be unreasonably withheld.

107.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

108.    ***Limited Recourse Guarantee*** means that certain Limited Recourse Guarantee made on or about the DIP Closing Date, as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, made by Blackstone Capital Partners VI NQ/NF L.P., as guarantor, to and for the benefit of Barclays Bank PLC, as administrative agent for the purchasers under the DIP Repo Facility Agreement.

109.    ***New Money Investment*** means the sum of (a) $65 million in Cash; and (b) Cash in an amount sufficient to fund all payments to Claims in Class 5 to be made on the Effective Date, provided by the Plan Sponsor to the Debtors pursuant to the Investment Agreement and the RSA.

110.    ***New Notes*** means the 5% senior unsecured notes due 2024 issued by the Reorganized Debtors on the Effective Date pursuant to the New Notes Indenture. Forms of the New Notes will be provided with the Plan Supplement.

111.    ***New Notes Indenture*** means the indenture, as modified from time to time, to be entered into by and among Reorganized Stearns Holdings, each of the guarantors party thereto, and an indenture trustee to be determined. A form of New Notes Indenture will be provided with the Plan Supplement.

112.    ***Non-Debtor Affiliate*** means any Affiliate of the Debtors that has not filed a case under chapter 11 of the Bankruptcy Code.

113.    ***Noteholder*** means a holder of a Notes Secured Claim.

114.    ***Notes*** means the 9.375% senior secured notes due 2020 issued pursuant to the Indenture.

115.    ***Notes Secured Claim*** means any Claim arising under or in connection with the Notes (including all accrued and unpaid interest through and including the Petition Date); *provided*, *however*, that any portion, if any, of the Notes Secured Claim that is unsecured shall be deemed waived under this Plan.

116.    ***Original Plan*** means the *Joint Chapter 11 Plan of Reorganization of Stearns Holdings, LLC, et al.* [Docket No. 219].

117.    ***Other Secured Claim*** means any Secured Claim against a Debtor other than a Notes Secured Claim or Artemis Note Claim.

118.    ***Person*** has the meaning set forth in Bankruptcy Code section 101(41).

119.    ***Petition Date*** means July 9, 2019.

120.    ***PIMCO*** means Pacific Investment Management Company LLC.

121.    ***PIMCO Noteholders*** means certain holders of Notes for which PIMCO serves as investment manager or adviser.

122.    ***Plan*** means this plan, including and incorporating by reference all attachments, exhibit, appendices, and schedules hereto, and all Plan Supplements, in present form or as may be subsequently amended, restated, supplemented, or otherwise modified in accordance with the Bankruptcy Code, Bankruptcy Rules, and this Plan.

123.    ***Plan Sponsor*** means Blackstone, in its capacity as plan sponsor.

124.    ***Plan Supplement*** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan to be filed by the Debtors seven days prior to the Voting Deadline, each of which documents and forms of documents, schedules, and exhibits shall be in all respects reasonably acceptable to the Required Consenting Noteholders and the Consenting Equity Holders.

125.    ***Priority Non-Tax Claim*** means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a), other than (a) an Administrative Claim; or (b) a Priority Tax Claim.

126.    ***Priority Tax Claim*** means any Claim of a governmental unit, as defined in Bankruptcy Code section 101(27), of the kind specified in Bankruptcy Code section 507(a)(8).

127.    ***Pro Rata*** means, as applicable, the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in that Class, or the proportion that all Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in such Class and other Classes entitled to share in the same recovery under the Plan.

128.    ***Professional*** means a Person: (a) retained pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code sections 327, 363, or 1103 and to be compensated for services rendered before or on the Effective Date, pursuant to Bankruptcy Code section 327, 328, 330, 331, or 363; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

129.    ***Proof of Claim*** means any proof of claim filed against any Debtor in the Chapter 11 Cases.

130.    ***Protos Interests*** means Interests held by Blackstone Capital Partners VI NQ/NF L.P. in Protos.

131.    ***Reinstate***, ***Reinstated***, or ***Reinstatement*** means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; or (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim or Interest is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement and shall be deemed cured on the Effective Date.

132.    ***Rejection Schedule*** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan that will be included in the Plan Supplement.

133.    ***Related Parties*** means any Entity's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, investment managers and advisers, and all of their respective current and former officers, directors, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, advisory board members, financial advisors,

attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

134.    ***Released Party*** means each of: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Credit Parties; (d) the Creditors' Committee and each of its members in their capacity as such; (e) the Exit Repo Facility Parties; (f) the Consenting Equity Holders; (g) each Noteholder, except for any Noteholder that (i) opts out of the releases contained in Section 9.3 by checking the box on its timely submitted applicable Ballot or (ii) votes to reject the Plan; (h) the Indenture Trustee; and (i) with respect to each of the foregoing clauses (a) through (h), to the fullest extent permitted by law, such Person's Related Parties, in each case only in their capacity as such.

135.    ***Releasing Parties*** means, collectively: (a) the DIP Credit Parties; (b) the Creditors' Committee, if any, and each of its members in their capacity as such; (c) each holder of a Claim voting to accept the Plan; (d) each holder of a Claim abstaining from voting or voting to reject the Plan, unless such holder elects to opt out of the releases contained in Section 9.3 by checking the box on its timely submitted applicable Ballot; (e) the Consenting Equity Holders; (f) the Consenting Noteholders; (g) the Indenture Trustee; and (h) with respect to each of the foregoing clauses (a) through (g), to the fullest extent permitted by law, such Person's Related Parties, in each case in their capacity as such. For the sake of clarity, the Releasing Parties identified in items (c) and (d) above shall not include Persons in Classes 1, 3, 4, 5, 6, 7, 8, 9, or 10 that are presumed to either accept the Plan or reject the Plan and/or such Persons' Related Parties.

136.    ***Reorganized*** means, with respect to the Debtors, any Debtor or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

137.    ***Reorganized Debtors*** means the Debtors, as reorganized pursuant to and under the Plan on or after the Effective Date.

138.    ***Reorganized Stearns Holdings*** means Stearns Holdings as Reorganized.

139.    ***Reorganized Stearns Holdings Interests*** means the Interests in Reorganized Stearns Holdings.

140.    ***Required Consenting Noteholders*** means Consenting Noteholders holding a majority in principal amount of the then-outstanding Notes held by all Consenting Noteholders.

141.    ***RSA*** means that certain Restructuring Support Agreement, dated as of September 5, 2019, by and among the Debtors, the Consenting Equity Holders, and the Consenting Noteholders, together with all exhibits and schedules thereto, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

142.    ***Schedules*** means, collectively, any schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and in substantial accordance with the Official Bankruptcy Forms, as may be amended from time to time before entry of a final decree;

*provided*, *however*, that the Debtors may seek a waiver of the requirement set forth in Bankruptcy Code section 521.

143.    ***Secured*** means, when referring to a Claim: (a) secured by a Lien on property in which the Estate of the Debtor against which the Claim is asserted has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to Bankruptcy Code section 506(a); (b) subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed pursuant to this Plan as a Secured Claim.

144.    ***Securities Act*** means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder.

145.    ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

146.    ***Unimpaired*** means not Impaired.

147.    ***United States Trustee*** means the United States Trustee for the Southern District of New York.

148.    ***Unsecured Claim*** means any unsecured Claim against any Debtor.

149.    ***Voting Deadline*** means the final day for a Class entitled to vote to accept or reject the Plan to vote on the Plan.

150.    ***Warrants*** means warrants to purchase non-voting Class B units in the Reorganized Debtors worth 15% of the aggregate value appreciation of the Reorganized Debtors above the New Money Investment in accordance with the terms of the RSA.

*Section 1.2    Rules of Interpretation*

For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any immaterial effectuating provisions may be

interpreted by the Reorganized Debtors in a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order.

### Section 1.3    Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

### Section 1.4    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation of the Debtors or Reorganized Debtors, as applicable.

### Section 1.5    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### Section 1.6    Reference to the Debtors or Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III, and shall have the following treatment:

### Section 2.1    Administrative Claims

*Administrative Claims.* Except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, each holder of an Allowed Administrative Claim (other than a Fee Claim, Priority Tax Claim, or DIP Claim) shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Administrative Claim, Cash equal to the unpaid portion of its Allowed Administrative Claim on the latest of: (a) the first Distribution Date; (b) the date on which its Administrative Claim becomes an Allowed Administrative Claim;

16

(c) the date on which its Administrative Claim becomes payable under any agreement with the Debtors relating thereto; (d) in respect of liabilities incurred in the ordinary course of business, the date upon which such liabilities are payable in the ordinary course of the Debtors' business, consistent with past practice; or (e) such other date as may be agreed upon between the holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as the case may be; *provided*, *however*, that the holder of any Administrative Claim shall have filed a Proof of Claim no later than the Administrative Claims Bar Date, and such Claim shall have become an Allowed Claim, other than the holder of: (v) a DIP Claim; (w) a Fee Claim; (x) an Administrative Claim Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date; (y) an Administrative Claim that is not Disputed, arose in the ordinary course of business, and was paid or is to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim; or (z) an Administrative Claim arising under chapter 123 of title 28 of the United States Code. Any request for payment of an Administrative Claim pursuant to this Section 2.1 that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Debtors.

*Section 2.2*      *Fee Claims*

(a)      *Claims for Accrued Professional Compensation*. Professionals or other Persons asserting a Fee Claim for services rendered to the Debtors or any statutory committee appointed in these Chapter 11 Cases before the Effective Date must file and serve on the Debtors, and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order, or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to any Fee Claim must be filed and served on the Reorganized Debtors, any statutory committee appointed by the United States Trustee, the United States Trustee, and the requesting party no later than 60 days after the Effective Date.

(b)      *Fee Claim Reserve*. No later than two days prior to the Effective Date, Professionals shall estimate fees and expenses that have not or will not have been billed as of the Effective Date and shall deliver such estimate to the Debtors and such estimate shall be included in the Fee Claim Estimate; *provided*, *however*, that if a Professional does not provide an estimate to the Debtors prior to two days before the Effective Date, then the Debtors may estimate the unbilled fees and expenses of such Professional incurred as of the Effective Date; *provided*, *further* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. On the Effective Date, the Reorganized Debtors shall fund the Fee Claim Reserve with Cash equal to the aggregate Fee Claim Estimate for all Professionals. The funds in the Fee Claim Reserve shall not be considered property of the Debtors, the Reorganized Debtors, or the Estates.

(c)      *Post-Effective Date Fees and Expenses*. Upon the Effective Date, any requirement that Professionals comply with the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business, without any further notice to any party or action, or order or approval of the Bankruptcy Court.

(d)    *Fees and Expenses Pursuant to RSA.* The Debtors shall pay all reasonable and documented fees and expenses that were incurred in connection with the Chapter 11 Cases or otherwise in connection with the restructuring of the Company, whether incurred pre- or post-petition, by (a) one primary counsel and one financial advisor for all Consenting Equity Holders; (b) one primary counsel and one financial advisor for PIMCO; and (c) (i) the Indenture Trustee, and (ii) one primary counsel for the Indenture Trustee, in accordance with the terms of the RSA (as applicable), without the need of such parties to file fee applications with the Bankruptcy Court or motions seeking payment of such fees as administrative claims pursuant to Bankruptcy Code section 503(b), or the need for approval of the Bankruptcy Court. Such fees and expenses shall be paid (i) on the Effective Date, with respect to fees and expenses evidenced by invoices received by the Debtors at least 10 calendar days prior to the Effective Date, and (ii) as soon as practicable upon receipt, but in no event later than 10 calendar days from the date of receipt, with respect to fees and expenses evidenced by subsequent invoices.

*Section 2.3    Priority Tax Claims*

The legal and equitable rights of the holders of Priority Tax Claims are Unimpaired by this Plan. Unless the holder of such Claim and the Debtors agree to a different treatment, on the Effective Date each holder of an Allowed Priority Tax Claim shall have its Claim Reinstated.

The Debtors or the Reorganized Debtors shall pay in full, in Cash, all Allowed Claims (the "Texas Tax Claims") of the County of Bell Tax Appraisal District, Texas and the County of Denton, Texas (collectively, the "Texas Taxing Authorities") on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date (or as soon as reasonably practicable thereafter) that such Claims first become Allowed Claims. The Texas Taxing Authorities reserve the right to assert, as part of their Claims, interest (if applicable and payable) from the Petition Date until payment in full at the state statutory rate pursuant to 11 U.S.C. §§ 506(b), 511, and 1129.

The Texas Taxing Authorities shall retain any Liens that secure their Claims, and such Liens' priority shall be unaltered by the Plan or the Confirmation Order until such Claims are paid in full. In the event that any collateral that secures the Texas Tax Claims is returned to a creditor that is junior to the Texas Taxing Authorities, the Debtors or the Reorganized Debtors (as applicable) shall first pay all Allowed Texas Tax Claims that are secured by such collateral.

The Debtors or the Reorganized Debtors shall pay in full, in Cash, all Allowed Claims (the "Maricopa Tax Claims") of the Maricopa County Treasurer of Maricopa County, Arizona ("MCT"), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date (or as soon as reasonably practicable thereafter) that such Claims first become Allowed Claims. MCT reserves the right to assert, as part of its Claims, interest (if applicable and payable) from the Petition Date until payment in full at the state statutory rate pursuant to 11 U.S.C. §§ 506(b), 511, and 1129.

MCT shall retain any Liens that secure its Claims, and such Liens' priority shall be unaltered by the Plan or the Confirmation Order until such Claims are paid in full. In the event that any collateral that secures the Maricopa Tax Claims is returned to a creditor that is junior to

MCT, the Debtors or the Reorganized Debtors (as applicable) shall first pay all Allowed Maricopa Tax Claims that are secured by such collateral.

The Debtors or the Reorganized Debtors shall pay in full, in Cash, all Allowed Claims (the "Washington Tax Claims") of the State of Washington Departments of Revenue, Labor & Industries, and Employment Security (collectively, the "Washington Taxing Authorities") on the later of (a) the Effective Date (or as reasonably practicable thereafter) or (b) the date (or as soon as reasonably practicable thereafter) that such Claims first become Allowed Claims. The Washington Taxing Authorities reserve the right to assert, as part of their Claims, interest (if applicable and payable) pursuant to 11 U.S.C. §§506(b), 511, and 1129 from the Petition Date until payment in full at the rates specified by applicable Washington state statute.

The Washington Taxing Authorities shall retain any Liens that secure their Claims, and such Liens' priority shall be unaltered by the Plan or Confirmation Order until such Claims are paid in full. In the event that any collateral that secured the Washington Tax Claims is returned to a creditor that is junior to the Washington Taxing Authorities, the Debtors or Reorganized Debtors (as applicable) shall first pay all Allowed Washington Tax Claims that are secured by such collateral.

*Section 2.4    DIP Claims*

(a)    *DIP Repo Claims*. On the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed DIP Repo Claim, each such Allowed DIP Repo Claim shall be, on the Effective Date: (a) indefeasibly paid in full in Cash; or (b) refinanced in full with the Exit Repo Facility.

(b)    *Cash Flow DIP Claims*. Except to the extent that a holder of an Allowed Cash Flow DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Cash Flow DIP Claim, each such Allowed Cash Flow DIP Claim shall be, on the Effective Date, converted into a like amount of the Cash Flow Exit Facility pursuant to the terms of the Cash Flow Exit Facility Agreement and the RSA.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*Section 3.1    Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, withdrawn, or otherwise settled before the Effective Date.

*Section 3.2      Grouping of Debtors for Convenience Only*

Each Class of Claims or Interests will be deemed to contain sub-classes for each of the Debtors, to the extent applicable for voting and distribution purposes. To the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor. Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claim shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim. The grouping of the Debtors in this manner shall not change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any Assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal Entities.

*Section 3.3      Summary of Classification*

The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtors for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in this Article III shall be in full and complete satisfaction, release, and discharge of such Claims and Interests.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Notes Secured Claim | Impaired | Yes |
| 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4 | Go-Forward Trade Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 6 | Artemis Note Claims | Impaired | No (deemed to reject) |
| 7 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| 8 | Existing Stearns Holdings Interests | Impaired | No (deemed to reject) |
| 9 | Intercompany Interests | Unimpaired | No (deemed to accept) |
| 10 | Protos Interests | Unimpaired | No (deemed to accept) |

*Section 3.4      Treatment of Claims and Interests*

(a)      Priority Non-Tax Claims

(i)      *Impairment and Voting*. Class 1 is Unimpaired, and holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Allowed Priority Non-Tax Claims.

(ii)      *Distribution*. Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the sole option of the Debtors, or the Reorganized Debtors, as applicable: (A) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is 30 days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable, or on such other date as agreed to between the Debtors or Reorganized Debtors and such holder; (B) such holder's Allowed Priority Non-Tax Claim shall be Reinstated; or (C) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired; *provided*, *however*, that Priority Non-Tax Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(b)      Notes Secured Claim

(i)      *Impairment and Voting*. Class 2 is Impaired, and holders of Allowed Notes Secured Claims are entitled to vote to accept or reject this Plan.

(ii)      *Distribution*. In accordance with the RSA, except to the extent that a Noteholder agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Notes Secured Claim, all holders of Allowed Notes Secured Claims will receive their Pro Rata share of (a) $65 million in Cash; (b) Warrants; and (c) the New Notes in the aggregate principal amount of (x) $15 million, less (y) 90% of payments to be made on the Effective Date from the New Money Investment to holders of General Unsecured Claims (with such payments to be deemed capped at $12.5 million for purposes of calculating the reduction of the principal amount of the New Notes in this Section 3.4(b)(ii)).

(iii)      *Allowed Notes Secured Claim Amount*. Notes Secured Claims are hereby Allowed in an amount no less than $189 million. Notwithstanding anything to the contrary in this Plan, Allowed Notes Secured Claims shall not be subject to any defenses or rights of setoff, counterclaim, recoupment, and/or subordination pursuant to the provisions of the Bankruptcy Code, including Bankruptcy Code sections 502, 506(c), and 553, or applicable law. The Notes Secured Claims shall be deemed Allowed without the need of the holders of Allowed Notes Secured Claims or the Indenture Trustee to file or serve any Proofs of Claim, or requests, applications, claims, proofs, or motion for payment or allowance of any Administrative Claim and shall not be subject to any bar date or similar deadline governing claims. Notwithstanding the foregoing, the distributions for Allowed Notes Secured Claims shall solely be as set forth in Section 3.4(b)(ii) above.

(c)      Other Secured Claims

(i)      *Impairment and Voting*. Class 3 is Unimpaired, and holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to

section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Other Secured Claims are not entitled to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Allowed Other Secured Claims.

(ii)     *Distribution*. Except to the extent that a holder of an Allowed Other Secured Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, at the sole option of the Debtors, or the Reorganized Debtors, as applicable: (A) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is 30 days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable, or on such other date as agreed to between the Debtors or Reorganized Debtors and such holder; (B) such holder's Allowed Other Secured Claim shall be Reinstated; or (C) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired; *provided*, *however*, that Other Secured Claims that arise in the ordinary course of the Debtors' business and that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(d)     Go-Forward Trade Claims

(i)     *Impairment and Voting*. Class 4 is Unimpaired, and holders of Allowed Go-Forward Trade Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Go-Forward Trade Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Allowed Go-Forward Trade Claims.

(ii)     *Distribution*. Except to the extent that holders of Allowed Go-Forward Trade Claims agree to a less favorable treatment, in full and final satisfaction of such Allowed Go-Forward Trade Claims, at the sole option of the Debtors, or the Reorganized Debtors, as applicable: (A) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the Effective Date, as soon thereafter as is reasonably practicable, or on such other date as agreed to between the Debtors or Reorganized Debtors and such holder; (B) such holder's Allowed Go-Forward Trade Claim shall be Reinstated; or (C) such holder shall receive such other treatment so as to render such holder's Allowed Go-Forward Trade Claim Unimpaired.

(e)     General Unsecured Claims

(i)     *Impairment and Voting*. Class 5 is Unimpaired, and holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed General Unsecured Claims are not entitled to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Allowed General Unsecured Claims..

(ii)     *Distribution*. Except to the extent that holders of Allowed General Unsecured Claims agree to a less favorable treatment, in full and final satisfaction of such

Allowed General Unsecured Claims, at the sole option of the Debtors, or the Reorganized Debtors, as applicable: (A) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the Effective Date, as soon thereafter as is reasonably practicable, or on such other date as agreed to between the Debtors or Reorganized Debtors and such holder; (B) such holder's Allowed General Unsecured Claim shall be Reinstated; or (C) such holder shall receive such other treatment so as to render such holder's Allowed General Unsecured Claim Unimpaired.

(f)     Artemis Note Claims

        (i)     *Impairment and Voting*. Class 6 is Impaired, and holders of Allowed Artemis Note Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Artemis Note Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

        (ii)     *Distribution*. The holders of Allowed Artemis Note Claims shall not receive or retain any property under the Plan on account of such Allowed Artemis Note Claims, and the obligations of the Debtors and Reorganized Debtors on account of Allowed Artemis Note Claims shall be discharged.

(g)     Intercompany Claims

        (i)     *Impairment and Voting*. Class 7 is Unimpaired, and holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed Intercompany Claims are not entitled to accept or reject the Plan, and the votes of such holders will not be solicited.

        (ii)     *Distribution*. Upon the Effective Date of the Plan or as soon thereafter as is reasonably practicable, Allowed Intercompany Claims will be: (i) Reinstated; (ii) cancelled, released, waived, and discharged; or (iii) otherwise settled in the Debtors' sole discretion.

(h)     Existing Stearns Holdings Interests

        (i)     *Impairment and Voting*. Class 8 is Impaired, and holders of Allowed Existing Stearns Holdings Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Existing Stearns Holdings Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

        (ii)     *Distribution*. Upon the Effective Date or as soon thereafter as is reasonably practicable, all Allowed Existing Stearns Holdings Interests shall be deemed cancelled without further action or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

(i)      Intercompany Interests

(i)      *Impairment and Voting*. Class 9 is Unimpaired, and holders of Allowed
Intercompany Interests are conclusively deemed to have accepted, solely for purposes of
administrative convenience, the Plan pursuant to section 1126(f) of the Bankruptcy Code.
Therefore, holders of Allowed Intercompany Interests are not entitled to vote to accept or
reject the Plan, and the votes of such holders will not be solicited.

(ii)     *Distribution*. Upon the Effective Date or as soon thereafter as is
reasonably practicable, Intercompany Interests shall be Reinstated and rendered
Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(j)      Protos Interests

(i)      *Impairment and Voting*. Class 10 is Unimpaired, and holders of Allowed
Protos Interests are conclusively deemed to have accepted, solely for purposes of
administrative convenience, the Plan pursuant to section 1126(f) of the Bankruptcy Code.
Therefore, holders of Allowed Protos Interests are not entitled to vote to accept or reject
the Plan, and the votes of such holders will not be solicited.

(ii)     *Distribution*. Upon the Effective Date or as soon thereafter as is
reasonably practicable, Protos Interests shall be Reinstated and rendered Unimpaired in
accordance with section 1124 of the Bankruptcy Code.

*Section 3.5      Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors'
rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and
equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.
Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed under the Plan.

*Section 3.6      Intercompany Interests and Protos Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany
Interests and Protos Interests are not being received by holders of such Intercompany Interests or
Protos Interests, respectively, on account of their Intercompany Interests or Protos Interests, but
are for administrative convenience only.

## ARTICLE IV

## ACCEPTANCE REQUIREMENTS

*Section 4.1      Acceptance or Rejection of the Plan*

(a)      Voting Classes

Class 2 is Impaired under this Plan and is entitled to vote to accept or reject this
Plan.

24

(b)    Presumed Acceptance of the Plan

Classes 1, 3, 4, 5, 7, 9, and 10 are Unimpaired under this Plan and are therefore conclusively presumed to have accepted this Plan pursuant to Bankruptcy Code section 1126(f).

(c)    Presumed Rejection of the Plan

Classes 6 and 8 will not receive any distribution under this Plan and are therefore conclusively presumed to have rejected this Plan pursuant to Bankruptcy Code section 1126(g).

*Section 4.2    Confirmation Pursuant to Bankruptcy Code Section 1129(b)*

The Debtors shall seek Confirmation of this Plan pursuant to Bankruptcy Code section 1129(b) with respect to rejecting Classes of Claims and Interests. The Debtors reserve the right to amend or modify this Plan in accordance with Section 11.1 hereof, to the extent, if any, that Confirmation pursuant to Bankruptcy Code section 1129(b) requires such amendment or modification.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

*Section 5.1    Cancellation of Securities and Agreements*

Except for the purpose of evidencing a right to distribution under the Plan and except as otherwise provided in the Plan, on the Effective Date: (a) each purchase right, instrument, guarantee, certificate, share, bond, note, warrant, indenture, option, put, agreement (including registration rights agreements), and other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors or giving rise to any Claim or Interest, including, without limitation, the Existing Stearns Holdings Interests, shall be deemed cancelled or extinguished with respect to the Debtors' obligations, and the Indenture Trustee shall deliver any such cancelled certificated Notes to the Reorganized Debtors and (b) the obligations of the Debtors in any way pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the purchase rights, guarantees, certificates, shares, bonds, notes, warrants, options, puts, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; *provided*, *however*, that the cancellation of purchase rights, instruments, guarantees, certificates, shares, bonds, notes, warrants, indentures, options, puts, agreements, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors hereunder shall not itself alter the obligations or rights among third parties (apart from the Debtors, Reorganized Debtors, and Non-Debtor Affiliates). For the avoidance of doubt, this provision shall have no effect on, or application to, the rights and obligations under any Executory Contract or Unexpired Lease that is being assumed as provided in the Plan. On and after the Effective Date, all duties, responsibilities, or obligations of the Indenture Trustee under the Indenture shall be fully discharged.

Notwithstanding anything else in the Plan to the contrary, the Indenture shall continue in effect solely for the purposes of, as applicable, (a) allowing Noteholders to receive distributions under the Plan and (b) allowing and preserving the rights of the Indenture Trustee to (i) make distributions in satisfaction of Notes Secured Claims; (ii) maintain and exercise its Charging Liens; (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in making or facilitating distributions to Noteholders; (iv) maintain and enforce any right to indemnification, expense reimbursement, contribution, or subrogation or any other claim or entitlement that the Indenture Trustee may have under the Indenture or applicable law; and (v) appear and raise issues in these Chapter 11 Cases.

If the record holder of any Notes or Interest, including, without limitation, Existing Stearns Holdings Interests, is DTC or its nominee or another securities depository or custodian thereof, and such Note or Interest is represented by a global certificated security held by or on behalf of DTC or such other securities depository or custodian, then each beneficial owner of such Note or Interest shall be deemed to have surrendered its Note or Interest upon surrender of such global certificated security by DTC or such other securities depository or custodian thereof.

**Section 5.2**     *Sources of Consideration for Plan Distributions*

(a)     *Exit Facilities*. On the Effective Date, the Debtors shall enter into the Cash Flow Exit Facility Agreement and each Allowed Cash Flow DIP Claim shall be converted into a like amount of the Cash Flow Exit Facility pursuant to the terms of the Cash Flow Exit Facility Agreement and the RSA. Also on the Effective Date, the Debtors shall enter into the Exit Repo Facility Documents and may begin operating thereunder.

(b)     *Cash Consideration*. All Cash consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained from (i) the New Money Investment to fund distributions; and (ii) other Cash on hand of the Debtors, including Cash from business operations. Further, the Debtors and the Reorganized Debtors, as the case may be, will be entitled to transfer funds from Non-Debtor Affiliates as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account practices and will not violate or otherwise be affected by the terms of the Plan.

(c)     *New Notes*. On the Effective Date, the Reorganized Debtors shall issue the New Notes. The New Notes shall be distributed Pro Rata to holders of Allowed Secured Notes Secured Claims pursuant to Section 3.4 of the Plan in an aggregate amount equal to (i) $15 million, less (ii) 90% of Cash distributions made on the Effective Date to holders of General Unsecured Claims (with such distributions not to exceed $12.5 million for purposes of calculating the reduction of the principal of the New Notes).

(d)     *New Interests*. On the Effective Date, Reorganized Stearns Holdings shall issue the Reorganized Stearns Holdings Interests. One-hundred percent of the Reorganized Stearns Holdings Interests shall be distributed to the Plan Sponsor on account of the New Money Investment and the Plan Sponsor's non-economic contributions and agreements as further

26

described in the RSA and Section 5.16 below. The Reorganized Debtors shall also issue to the Noteholders the Warrants pursuant to the terms of the RSA. All of the Reorganized Stearns Holdings Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and nonassessable.  Notwithstanding anything in the Plan to the contrary, and although all of the below-referenced transactions shall occur on the Effective Date, the New Money Investment, and the issuance of Reorganized Stearns Holdings Interests will not be deemed to occur until immediately following the Discharge of Claims and Termination of Interests pursuant to Section 9.5 of the Plan and section 1141(d) of the Bankruptcy Code.

**Section 5.3      Exemption from Securities Act Registration Requirements**

Except as otherwise set forth in this Plan, the issuance and distribution of any securities pursuant to this Plan will be exempt from the registration requirements of section 5 of the Securities Act pursuant to section 4(a)(2) of the Securities Act, section 1145 of the Bankruptcy Code, or other available exemption from registration under the Securities Act, as applicable.

**Section 5.4      Governance Documents and Corporate Existence**

(a)      On the Effective Date, the Corporate Governance Documents of the Debtors shall be amended in a form as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code (including, without limitation, section 1123(a)(6) of the Bankruptcy Code), and shall be included in the Plan Supplement.

(b)      Except as otherwise provided herein, in the Corporate Governance Documents, or elsewhere in the Plan Supplement, each Debtor, as Reorganized, shall continue to exist after the Effective Date as a separate corporate entity or limited liability company, as the case may be, with all the powers of a corporation or limited liability company, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated.  After the Effective Date, each Reorganized Debtor may amend and restate its Corporate Governance Documents as permitted by the laws of its respective state, province, or country of formation and its respective charter and bylaws.

**Section 5.5      Reorganized Debtors' Board of Directors**

The identity of the members of the new board of each of the Reorganized Debtors shall be determined by the Plan Sponsor in its sole discretion and will be identified in the Plan Supplement or in a filing with the Bankruptcy Court at or prior to the Confirmation Hearing.

**Section 5.6      Employee Benefits**

Except as otherwise provided herein, on and after the Effective Date, the Reorganized Debtors shall: (a) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation (other than equity-based compensation related to Interests), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, retention benefits, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time; and (b) honor, in the ordinary course of business, Claims of

27

employees employed as of the Effective Date for accrued vacation time arising before the Petition Date; *provided*, *however*, that the Debtors' or Reorganized Debtors' performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program or plan.  Nothing herein shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, Claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

*Section 5.7        Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in this Plan, or in any agreement, instrument, or other document incorporated therein, on the Effective Date all property in each Debtor's Estate, and all Causes of Action (except those released pursuant to Section 9.2 of this Plan), shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as provided in this Plan, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property, or may compromise or settle Claims, Interests, and Causes of Action without Bankruptcy Court supervision or approval, and free of any Bankruptcy Code or Bankruptcy Rule restrictions.

*Section 5.8        Reorganization Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law, and any other terms to which the applicable Persons may agree; (b) the execution of and performance under the Investment Agreement; (c) the execution and delivery of the Exit Repo Facility Documents and the Cash Flow Exit Facility Agreement; (d) the execution of and performance under the New Notes Indenture; (e) the execution and delivery of appropriate documents to establish and issue the Warrants; (f) performance under the RSA; (g) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (h) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (i) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

*Section 5.9        Corporate Action*

(a)        Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) the selection of the directors, officers, and managers of the Reorganized Debtors; (ii) the distribution of Reorganized Stearns Holdings Interests; and (iii) all other actions contemplated by the Plan (whether to occur before, on or after

28

the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtors.

(b)     On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors.  The authorizations and approvals contemplated by this Section 5.9 shall be effective notwithstanding any requirements under non-bankruptcy law.

*Section 5.10    Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors and the officers and members of the board of directors thereof are authorized to issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

*Section 5.11    Section 1146 Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to: (a) the creation of any mortgage, deed of trust, Lien, or other security interest; (b) the making or assignment of any lease or sublease; (c) any restructuring transaction authorized by Article V hereof; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including: (w) any merger agreements; (x) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (y) deeds; or (z) assignments executed in connection with any transaction occurring under the Plan.

*Section 5.12    D&O Liability Insurance Policies and Indemnification Provisions*

Notwithstanding anything herein to the contrary, as of the Effective Date, the D&O Liability Insurance Policies and Indemnification Provisions belonging or owed to directors, officers, and employees of the Debtors (or the Estates) who served or were employed at any time

by the Debtors shall be deemed to be, and shall be treated as though they are, Executory Contracts and the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies and Indemnification Provisions pursuant to sections 105 and 365(a) of the Bankruptcy Code.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies and Indemnification Provisions.  On or before the Effective Date, the Debtors shall obtain reasonably sufficient tail coverage (*i.e.*, director and officer insurance coverage that extends beyond the end of the policy period) under a directors' and officers' liability insurance policy for the current and former directors, officers, and managers for a period of six years.

Section 5.13    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including the releases by the Debtors provided by Section 9.2 hereof), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Person may rely on the absence of a specific reference in the Plan or the Amended Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have released any Person on or before the Effective Date (including pursuant to the releases by the Debtors or otherwise), the Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, Claim preclusion, estoppel (judicial, equitable or otherwise), or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

Section 5.14    *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claims.

*Section 5.15    Fannie Mae; Freddie Mac; Ginnie Mae*

(a)    *Fannie Mae*. Notwithstanding anything herein or in the Confirmation Order, Plan Supplement, Exit Repo Facility Documents, Cash Flow Exit Facility Agreement, New Notes Indenture, or any other order in the Chapter 11 Cases to the contrary: (i) the Debtors' rights and obligations relating to Fannie Mae shall not be transferred by the Debtors to the Plan Sponsor (or any other Person or Entity) without the express prior written consent of Fannie Mae, in its sole and absolute discretion; (ii) the assumption or assumption and assignment of any agreements between any of the Debtors and Fannie Mae shall be subject to the express prior written consent of Fannie Mae in its sole and absolute discretion; (iii) any proposed severance of rights and obligations or any other proposed modification of any agreement between any of the Debtors and Fannie Mae shall be subject to the prior written consent of Fannie Mae, in its sole and absolute discretion; (iv) Fannie Mae's rights, powers, prerogatives, remedies, payment or lien priorities, and Claims against the Debtors, any Non-Debtor Affiliate or any other Person or Entity under a contract between the Debtors and Fannie Mae (including, without limitation, any guaranty or lien or pledge of any assets by any Debtor or non-Debtor of the obligations thereunder) shall not be Impaired, released, modified, or limited in any respect, except as otherwise expressly agreed to in writing by Fannie Mae; (v) no Lien or security interest shall attach to, modify, prime, or otherwise affect (A) any other property interest or rights related to agreements between any of the Debtors and Fannie Mae (including any servicing, subservicing, or servicer advance receivables with respect to mortgages which are now or hereafter serviced or subserviced by the Debtors for Fannie Mae) except as otherwise expressly authorized by Fannie Mae, or (B) any Cash, accounts, securities, or other collateral (and any proceeds thereof) pledged to Fannie Mae pursuant to any collateral pledge agreement or other security agreement between the Debtors or any other Person or Entity and Fannie Mae; (vi) the term of agreements between any of the Debtors and Fannie Mae shall remain unchanged, and any extension of the term or changes to other provisions of a contract between any of the Debtors and Fannie Mae must be expressly agreed to by the parties in a separate written agreement; (vii) Fannie Mae does not, and shall not be deemed to, release any Released Party or any other Person or Entity from any Claims or Causes of Action that it may have, nor shall Fannie Mae be enjoined from pursuing any such Claims or Causes of Action; (viii) agreements between any of the Debtors and Fannie Mae shall be, upon the Effective Date, assumed by the Reorganized Debtors; (ix) all transactions with and transfers to Fannie Mae prior to the Effective Date are hereby reaffirmed and ratified by the Debtors and shall not be subject to avoidance; and (x) Fannie Mae shall not be required to file a Proof of Claim, or take any other action in the Chapter 11 Cases, to preserve any of its rights, Claims, defenses, or Causes of Action against the Debtors or any other Person or Entity. Without limiting the generality of, and subject to, the foregoing, in connection with the proposed assumption or assumption and assignment of any agreement between any of the Debtors and Fannie Mae, such agreements may be assumed or assumed and assigned only upon: (i)(1) the Reorganized Debtors agreeing to honor all obligations under the agreements between any of the Debtors and Fannie Mae whether incurred prior to or after the Effective Date; or (2) such other treatment of the Cure amount or any other obligations as shall be agreed to by Fannie Mae and the Debtors in writing, and (ii) adequate assurance of future performance.

(b)    *Freddie Mac*. Notwithstanding anything herein or in the Confirmation Order, Plan Supplement, Exit Repo Facility Documents, Cash Flow Exit Facility Agreement, New Notes Indenture, or any other order in the Chapter 11 Cases to the contrary: (i) the Debtors' mortgage

servicing rights (if any) with respect to mortgage loans sold to Freddie Mac shall not be transferred to any other Person or Entity without the express prior written consent of Freddie Mac, in its sole and absolute discretion; (ii) the assumption or assumption and assignment of any agreements between any of the Debtors and Freddie Mac shall be subject to the express prior written consent of Freddie Mac in its sole and absolute discretion; (iii) any proposed severance of rights and obligations or any other proposed modification of any agreement between any of the Debtors and Freddie Mac shall be subject to the prior written consent of Freddie Mac, in its sole and absolute discretion; (iv) Freddie Mac's rights, powers, interests, prerogatives, remedies, payment or lien priorities, and Claims against the Debtors, any Non-Debtor Affiliate or any other Person or Entity shall not be Impaired, released, modified, or limited in any respect, except as otherwise expressly agreed to in writing by Freddie Mac; (v) no Lien or security interest shall attach to, modify, prime, impair, or otherwise affect (A) any (1) mortgage servicing rights with respect to mortgage loans sold to Freddie Mac, (2) mortgage loan once it has moved to the "Settlement Lock" status under the Cash Program (as defined in the Freddie Mac Single-Family Seller/Servicer Guide (as amended from time to time, the "Freddie Mac Guide")) or has entered the funding cycle under the Guarantor Program (as defined in the Freddie Mac Guide), or (3) the Servicing Collateral (as defined in, and except as otherwise expressly authorized by, that certain Third Amended, Restated and Supplemented Acknowledgment Agreement dated September 27, 2017 amongst Freddie Mac, Stearns Lending, Wilmington Trust National Association, and NexBank SSB, as may be amended or modified pursuant to its express provisions, as expressly agreed to by Freddie Mac), or (B) any Cash, accounts, securities, or other collateral (and any proceeds thereof) pledged to Freddie Mac pursuant to any collateral pledge agreement or other security agreement between the Debtors and Freddie Mac; (vi) the term of agreements between any of the Debtors and Freddie Mac shall remain unchanged, and any extension of the term or changes to other provisions of a contract between any of the Debtors and Freddie Mac must be expressly agreed to by the parties in a separate written agreement; (vii) Freddie Mac does not, and shall not be deemed to, release any Released Party or any other Person or Entity from any Claims or Causes of Action that it may have, nor shall Freddie Mac be enjoined from pursuing any such Claims or Causes of Action; (viii) all agreements between any of the Debtors and Freddie Mac, including, without limitation, the Master Securities Forward Transaction Agreement between Freddie Mac and Stearns Lending, executed on or about July 2, 2019, shall be, upon the Effective Date, assumed by the Reorganized Debtors, and the Reorganized Debtors shall honor all of the Debtors' obligations to Freddie Mac (whether incurred or arising prior to or after the Effective Date); (ix) all transactions with and transfers to Freddie Mac prior to the Effective Date are hereby reaffirmed and ratified by the Debtors and shall not be subject to avoidance; and (x) Freddie Mac shall not be required to file a Proof of Claim, or take any other action in the Chapter 11 Cases, to preserve any of its rights, Claims, defenses, or Causes of Action against the Debtors or any other Person or Entity.

(c)     *Ginnie Mae*. Notwithstanding anything herein or in the Confirmation Order, Plan Supplement, Exit Repo Facility Documents, Cash Flow Exit Facility Agreement, New Notes Indenture, or any other order in the Chapter 11 Cases to the contrary: (i) the Debtors' obligations relating to Ginnie Mae shall not be transferred by the Debtors to the Plan Sponsor (or any other Person or Entity) without the express prior written consent of Ginnie Mae, in its sole and absolute discretion; (ii) the assumption or assumption and assignment of any agreements between any of the Debtors and Ginnie Mae shall be subject to the express prior written consent of Ginnie Mae in its sole and absolute discretion; (iii) any proposed severance of rights and

obligations or any other proposed modification of any agreement between any of the Debtors and Ginnie Mae shall be subject to the prior written consent of Ginnie Mae, in its sole and absolute discretion; (iv) Ginnie Mae's rights, powers, prerogatives, remedies, payment or lien priorities, and Claims against the Debtors, any Non-Debtor Affiliate or any other Person or Entity under a contract between the Debtors and Ginnie Mae (including, without limitation, any guaranty by any Debtor of the obligations thereunder) shall not be Impaired, released, modified, or limited in any respect, except as otherwise expressly agreed to in writing by Ginnie Mae; (v) no Lien or security interest shall attach to, modify, prime, or otherwise affect (A) any other rights related to agreements between any of the Debtors and Ginnie Mae except as otherwise expressly authorized by Ginnie Mae, or (B) any Cash, accounts, securities, or other collateral (and any proceeds thereof) pledged to Ginnie Mae pursuant to any collateral pledge agreement or other security agreement between the Debtors and Ginnie Mae; (vi) the term of agreements between any of the Debtors and Ginnie Mae shall remain unchanged, and any extension of the term or changes to other provisions of a contract between any of the Debtors and Ginnie Mae must be expressly agreed to by the parties in a separate written agreement; (vii) Ginnie Mae does not, and shall not be deemed to, release any Released Party or any other Person or Entity from any Claims or Causes of Action that it may have, nor shall Ginnie Mae be enjoined from pursuing any such Claims or Causes of Action; (viii) agreements between any of the Debtors and Ginnie Mae shall be, upon the Effective Date, assumed by the Reorganized Debtors; (ix) Ginnie Mae's rights pursuant to 12 U.S.C. § 1721(g) shall not be limited nor shall the right of any governmental unit to take any action not subject to the automatic stay be limited; and (x) all transactions with and transfers to Ginnie Mae prior to the Effective Date are hereby reaffirmed and ratified by the Debtors and shall not be subject to avoidance. Without limiting the generality of, and subject to, the foregoing, in connection with the proposed assumption or assumption and assignment of any agreement between any of the Debtors and Ginnie Mae, such agreements may be assumed or assumed and assigned only upon: (i)(1) the Reorganized Debtors agreeing to honor all obligations under the agreements between any of the Debtors and Ginnie Mae whether incurred prior to or after the Effective Date; or (2) such other treatment of the Cure amount or any other obligations as shall be agreed to by Ginnie Mae and the Debtors in good faith negotiations, and (ii) adequate assurance of future performance.

*Section 5.16    Global Settlement*

The Plan includes and effectuates a good faith compromise of Claims and Causes of Action, as set forth in the RSA (the "Global Settlement"). In particular, the Plan Sponsor has agreed to, among other things, (a) provide the New Money Investment in exchange for 100% of the Reorganized Stearns Holdings Interests; and (b) release each Noteholder from any Claims and Causes of Actions pursuant to Section 9.3 of the Plan, except for any Noteholder that (i) opts out of the releases contained in Section 9.3 by checking the box on its timely submitted applicable Ballot or (ii) votes to reject the Plan. The Consenting Noteholders, in turn, have agreed to, with respect to the Plan and subject to the terms and conditions of the RSA, (a) waive their ability to make an election pursuant to section 1111(b) of the Bankruptcy Code; (b) provide a release of Claims and Causes of Action pursuant to Section 9.3 of the Plan; (c) waive any portion of a Notes Secured Claim that is unsecured, if any, pursuant to section 506(a) of the Bankruptcy Code; (d) waive their right to object, encourage another Entity to object, or support another Entity's objection to the Plan; (e) not propose, file, support, or vote for any restructuring, workout, asset sale, or plan other than this Plan; (f) not take any action that is materially

inconsistent with the RSA; (g) vote all their Claims or Interests, as applicable, to accept the Plan, on a timely submitted and duly-executed ballot consenting to any releases under the Plan; and (h) not withdraw, amend, or revoke their tender, consent, or vote with respect to the Plan. The Global Settlement will fully and finally satisfy all Claims held by the Consenting Noteholders.

In connection with the Global Settlement and in full and final satisfaction of their Claims and Causes of Action, the Consenting Noteholders have obtained significant value for holders of the Notes Secured Claims, as these holders will receive a Pro Rata distribution of (a) $65 million; (b) the Warrants; and (c) the New Notes. This represents a substantial improvement as compared to the distribution that such holders would have received prior to the execution of the RSA and implementation of the Global Settlement. The Consenting Noteholders shall also receive releases from the Debtors and the Releasing Parties. The Global Settlement ends potentially expensive, extensive, and time-consuming litigation over Confirmation and provides for an expedited and efficient conclusion to these Chapter 11 Cases for the benefit of all stakeholders.

The Global Settlement also provides a substantial benefit to holders of Go-Forward Trade Claims and General Unsecured Claims. Because the Consenting Noteholders have agreed to waive any portion of a Notes Secured Claim that is unsecured, if any, pursuant to section 506(a) of the Bankruptcy Code, the Debtors are able to provide treatment to holders of Go-Forward Trade Claims and other holders of General Unsecured Claims such that those holders' Claims are Unimpaired.

Pursuant to Bankruptcy Code section 1123(b)(3)(A) and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan implementing the Global Settlement constitute a good faith compromise and settlement of all released Claims against the Released Parties, and the Plan constitutes a request for the Bankruptcy Court to authorize and approve such compromise and Global Settlement, to release all of the released Claims belonging to the Debtors and any other Person that is deemed to have given a release pursuant to Article IX of the Plan against each and every Released Party. Distributions to be made pursuant to the Plan shall be made on account of and in consideration of the Global Settlement. Entry of the Confirmation Order shall confirm the Bankruptcy Court's approval of the Global Settlement, as of the Effective Date, of all components of the Global Settlement, and the Bankruptcy Court's finding that the Global Settlement is in the best interests of the Debtors, the Reorganized Debtors, their respective Estates, and the holders of Claims and Interests, and is fair, equitable, and reasonable.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*Section 6.1      Assumption and Rejection of Executory Contracts and Unexpired Leases*

(a)      Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed unless such contract or lease (i)

34

was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) had previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date; (iv) is identified for rejection on the Rejection Schedule included in the Plan Supplement; or (v) is to be rejected pursuant to the terms of the Plan.

(b)    Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejection Schedule at any time before the Effective Date.  After the Effective Date, the Reorganized Debtors shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

(c)    All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtors, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts, or conditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of these Chapter 11 Cases or any successor cases is hereby deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

*Section 6.2*    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Bankruptcy Court.

**Section 6.3**      *Determination of Assumption Disputes and Deemed Consent*

(a)      Except as otherwise provided in the Plan, any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure.  If there is a dispute regarding (i) the nature or amount of any Cure; (ii) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

(b)      Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

(c)      If a proper and timely objection to the Debtors' proposed Cure was filed by the Cure Objection Deadline, the Cure shall be equal to (i) the amount agreed to between the Debtors or Reorganized Debtors and the applicable counterparty; or (ii) to the extent the Debtors or Reorganized Debtors and counterparty do not reach an agreement regarding any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues. Objections, if any, to the proposed assumption and/or Cure must be in writing, filed with the Bankruptcy Court, and served in hard-copy form so that they are actually received by the Cure Objection Deadline.

(d)      If an objection to the proposed assumption and/or to the Cure is timely filed and received, and the parties do not reach a consensual resolution of such objection, a hearing with respect to such objection shall be held at such time scheduled by the Bankruptcy Court or the Debtors or Reorganized Debtors. Objection to the proposed Cure amount or assumption of an Executory Contract or Unexpired Lease will not be treated as objections to Confirmation of the Plan.

**Section 6.4**      *Insurance Policies*

Notwithstanding anything to the contrary in the Amended Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any Bar Date Order, or any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) (i) all Insurance Policies shall continue in effect after the Effective Date pursuant to their respective terms and conditions and shall be treated as if assumed by the Debtors (and assigned to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) pursuant to sections 105 and 365(a) of the Bankruptcy Code, and (ii) all debts, obligations, and liabilities of Debtors (and, after the Effective Date, of the Reorganized Debtors) thereunder, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, and entry of the Confirmation

36

Order shall constitute the Bankruptcy Court's approval of the foregoing treatment of each of the Insurance Policies; (b) the claims of the Insurers arising (whether before or after the Effective Date) under the Insurance Policies (i) are actual and necessary expenses of the Debtors' estates (or the Reorganized Debtors, as applicable), (ii) shall be paid in full in the ordinary course of businesses, whether as an Allowed Administrative Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, regardless of when such amounts became liquidated, due, and payable, and subject to such amounts having become liquidated, due, and payable, and (iii) shall not be discharged or released by the Plan or the Confirmation Order or any other order of the Bankruptcy Court; (c) the Insurers shall not need to or be required to file or serve any Proofs of Claim, objections to proposed cure amounts, or requests, applications, claims, proofs or motions for payment or allowance of any Administrative Claim and shall not be subject to any bar date or similar deadline governing Claims or Cure; and (g) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article IX of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies. For the avoidance of doubt, the Debtors shall retain the right, if any, to challenge any amounts owed under the Insurance Policies in accordance with their terms.

In addition, nothing contained herein shall impair or alter in any way the terms, conditions, rights, and obligations of the Debtors, their affiliates, successors, and/or assigns; The Hartford Financial Services Group, Inc., and its affiliates ("Hartford"); and Ohio Casualty Insurance Company and its affiliates ("Ohio", and, together with Hartford, the "Sureties"), under the Court's *Final Order (I) Authorizing the Debtors to Continue and Renew Their Existing Insurance Policies and Surety Bond Program and Pay All Obligations Arising Thereunder and (II) Authorizing and Directing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. 199] (the "Insurance & Surety Bond Program Order"), which order shall survive confirmation of this Plan, the emergence from bankruptcy of the Debtors, their successors, and/or assigns, dismissal of the bankruptcy, or conversion to a proceeding under Chapter 7 of the Bankruptcy Code. All undisputed Claims of the Sureties against the Debtors for Surety Bond Premiums as that term is used in the Insurance & Surety Bond Program Order, as of the Confirmation Date, whether arising pre- or post-petition, shall be treated as Allowed Administrative Claims. Undisputed Claims of the Sureties against the Debtors of any sort arising after the Confirmation Date shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business.

**Section 6.5**      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejection Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**Section 6.6**      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**Section 6.7**      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection herewith.

# ARTICLE VII

# DISTRIBUTIONS

**Section 7.1**      *Record Date for Distributions*

On the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. For the avoidance of doubt, the Distribution Record Date shall not apply to the Debtors' publicly held securities, the holders of which shall receive a distribution in accordance with provisions of the Plan and, as applicable, the customary procedures of the Depository Trust Company on or as soon as practicable after the Effective Date.

**Section 7.2    *Timing and Calculation of Amounts to be Distributed***

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, on the next Distribution Date or as soon as reasonably practicable thereafter), each holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII hereof.  Except as otherwise provided herein, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**Section 7.3    *Disbursing Agent***

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Person designated by the Reorganized Debtors as a Disbursing Agent on the Effective Date.

**Section 7.4    *Rights and Powers of the Disbursing Agent***

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (b) make all distributions contemplated hereby; (c) employ Professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**Section 7.5    *Expenses of Disbursing Agent***

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in their reasonable discretion.

**Section 7.6    *Distributions on Account of Claims Allowed After the Effective Date***

(a)    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

(b)    Special Rules for Distributions to Holders of Disputed Claims

39

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Reorganized Debtors, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

*Section 7.7    Delivery of Distributions and Undeliverable or Unclaimed Distributions*

(a)    Delivery of Distributions in General

(i)    Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Date by the Disbursing Agent: (A) to the signatory set forth on any Proof of Claim filed by such holder or other representative identified therein (or at the last known address(es) of such holder if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address); (B) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (C) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; (D) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf; or (E) at the addresses reflected in the Debtors' books and records. Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. None of the Debtors, the Reorganized Debtors and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence, willful misconduct, or fraud.

(ii)    Except as otherwise provided in the Plan, all distributions to Noteholders shall be governed by the Indenture, and shall be deemed completed when made to the Indenture Trustee, who shall in turn make distributions in accordance with the Indenture.

(b)    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable to or has been claimed by such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable Distribution Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property shall be discharged and forever barred.

**Section 7.8**     *Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by a federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

**Section 7.9**     *Setoffs*

Except as set forth herein, the Debtors and the Reorganized Debtors may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any Claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the holder of any such Allowed Claim.  In the event that any such Claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved Claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, equity interests, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such holder, except as specifically provided herein.

**Section 7.10**     *Claims Paid or Payable by Third Parties*

(a)     *Claims Paid by Third Parties*. The Debtors or the Reorganized Debtors, as applicable, shall reduce in part or in full a Claim to the extent that the holder of such Claim receives payment in part or in full on account of such Claim from a party other than the Debtors or Reorganized Debtors.  To the extent a holder of a Claim receives a distribution on account of such Claim from a party other than the Debtors or Reorganized Debtors, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)     *Insurance Claims*. No distributions under the Plan shall be made on account of Allowed Claims until the holder of such Allowed Claim has exhausted all remedies with respect to the Debtors' Insurance Policies.  To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim, then immediately upon such satisfaction, such Claim may be expunged or reduced, as appropriate, without an objection to the Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

41

(c)      *Applicability of Insurance Policies*. Except as otherwise provided in the Plan, payments to holders of Claims by Insurers shall be made in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Person may hold against any other Person, including Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers.

**Section 7.11    *Allocations of Distributions Between Principal and Unpaid Interest***

To the extent that any Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for United States federal income tax purposes, be allocated on the Debtors' books and records to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the accrued but unpaid interest.

**Section 7.12    *No Postpetition Interest on Claims.***

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no holder of a Claim shall be entitled, under any circumstances, to receive any interest on such Claim.

# ARTICLE VIII

# PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**Section 8.1    *Objections to Claims***

The Debtors (before the Effective Date) or the Reorganized Debtors (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Debtors reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

**Section 8.2    *Allowance of Claims***

Except as expressly provided herein or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), the Reorganized Debtors after the Effective Date will have and retain any and all rights and defenses held by the Debtors with respect to any Claim as of the Petition Date.  All Claims of any Person against any Debtor shall be disallowed unless and until such Person pays, in full, the amount it owes each such Debtor.

### Section 8.3    Distributions After Allowance

On the Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

### Section 8.4    Estimation of Claims

The Debtors or the Reorganized Debtors, as applicable, may (a) determine, resolve, and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Person, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### Section 8.5    Deadline to File Objections to Claims

Any objections to Claims, if any, shall be filed no later than the Claims Objection Deadline.

### Section 8.6    Disallowance of Claims

Subject to Bankruptcy Rule 3007 and upon a motion or objection by the Debtors or Reorganized Debtors, except as otherwise agreed, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim is deemed timely filed by a Final Order of the Bankruptcy Court.

Any Claim that has been listed by the Debtors in the Schedules that has been satisfied in full in accordance with the Debtors' books and records, shall be deemed Disallowed and may be expunged without further notice to, or action, order, or approval of the Bankruptcy Court or amendment of the Schedules.

Nothing herein shall in any way alter, impair, or abridge the legal effect of any Bar Date Order, or the rights of the Debtors, the Reorganized Debtors, or the Creditors' Committee, if any,

before the Effective Date, or other parties in interest to object to Claims on the grounds that they are time barred or otherwise subject to disallowance or modification.

# ARTICLE IX

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*Section 9.1      Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Persons.

Notwithstanding anything contained in this Plan to the contrary, the Sureties' claims, if any, against the Debtors, their affiliates, successors, and/or assigns, to the extent those parties constitute surety bond indemnitors, shall not be released, or deemed to be released, nor shall the Sureties be enjoined from litigating their claims against said indemnitors. Such claims of the Sureties, if any, shall survive Confirmation of this Plan.

*Section 9.2      Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code and to the maximum extent allowed by applicable law, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, the Estates, and Non-Debtor Affiliates from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and Non-Debtor Affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors, the Reorganized Debtors, the Estates, or the Non-Debtor Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors,

the Chapter 11 Cases, the pre- and post-petition investment selection process, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, Reorganized Debtor, Estate, or Non-Debtor Affiliate and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Original Plan, the Plan, the Disclosure Statement, the Amended Disclosure Statement, the Plan Supplement, the DIP Documents, the Investment Agreement, the RSA, or any related agreements, instruments, or other documents, or upon any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that nothing in this Section 9.2 shall be construed to release any party or Entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

## Section 9.3    *Releases by Holders of Claims and Interests*

Except as otherwise provided in the Plan, as of the Effective Date, the Releasing Parties release the Released Parties from any and all Claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, their Estates, and Non-Debtor Affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors, the Reorganized Debtors, the Estates, or the Non-Debtor Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the pre- and post-petition investment selection process, the Debtors' Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, including (without limitation) any tender rights provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between the Releasing Parties and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Original Plan, the Plan, the Disclosure Statement, the Amended Disclosure Statement, Investment Agreement, the DIP Documents, the Plan Supplement, the RSA, or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that nothing in this Section 9.3 shall be construed to release any party or entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan; *provided*, *further*, that the release set forth above shall not operate as a release by the DIP Repo Agent of Blackstone Capital Partners VI NQ/NF L.P. of any claims under the Limited Recourse Guarantee, which

shall remain in full force and effect until such Limited Recourse Guarantee terminates in accordance with its terms.

## Section 9.4       Exculpation

Except as otherwise specifically provided in the Plan or Plan Supplement, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim, obligation, cause of action or liability for any Exculpated Claim, except for gross negligence, intentional fraud or willful misconduct (to the extent such duty is imposed by applicable non-bankruptcy law), but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors and the Reorganized Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Plan securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## Section 9.5       Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. This Plan shall bind all holders of Claims and Interests notwithstanding whether any such holders failed to vote to accept or reject this Plan. All Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under Bankruptcy Code section 502(g). All Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, their successors and assigns, and their Assets and properties any other Claims or Interests based upon any documents, instruments, or any act of omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests, subject to the Effective Date.

*Section 9.6      Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN
SUPPLEMENT, OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED
PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD
CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 9.2
OR SECTION 9.3, DISCHARGED PURSUANT TO SECTION 9.5, OR ARE SUBJECT TO
EXCULPATION PURSUANT TO SECTION 9.4, ARE PERMANENTLY ENJOINED, FROM
AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING
ACTIONS AGAINST THE RELEASED PARTIES: (A) COMMENCING OR CONTINUING
IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON
ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS
OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY
ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST
SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO
ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING
ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY
OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR
WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR
CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY
KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY
SUCH CLAIMS OR INTERESTS RELEASED, SETTLED, OR DISCHARGED PURSUANT
TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL
CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN
COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE
WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND
AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS,
PROPERTY, THE ESTATES, OR THE RELEASED PARTIES.  ON THE EFFECTIVE DATE,
ALL SUCH CLAIMS AGAINST THE RELEASED PARTIES SHALL BE FULLY
RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN
OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE
DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND
DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTORS'
LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY,
INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF
THE BANKRUPTCY CODE.  ALL PERSONS SHALL BE PRECLUDED FROM
ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE
REORGANIZED DEBTORS, EACH OF THEIR RESPECTIVE SUCCESSORS AND
ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR
INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR
OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT
OCCURRED BEFORE THE EFFECTIVE DATE.

**Section 9.7     Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 9.8     Release of Liens**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement, or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all guarantees, mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the rights, titles, and interests of any holder of such guarantees, mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. For the avoidance of doubt, all guarantees, mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

# ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

**Section 10.1    Conditions Precedent to Confirmation of The Plan**

The following are conditions precedent to Confirmation of the Plan:

(a)     the Amended Disclosure Statement Order (in form and substance acceptable to the Debtors) shall have been entered;

(b)     the Plan Supplement shall have been filed in a form that is in all respects reasonably acceptable to the Required Consenting Noteholders and the Consenting Equity Holders; and

(c)     the Confirmation Order (in form and substance acceptable to the parties to the RSA to the extent set forth in the RSA) shall have been entered.

**Section 10.2    Conditions Precedent to Effective Date**

The following are conditions precedent to the Effective Date of the Plan:

(a)    The RSA shall be in full force and effect, in all respects reasonably acceptable to the Required Consenting Noteholders and the Consenting Equity Holders, and shall not have been previously terminated in accordance with its terms;

(b)    The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated herein and in form and substance acceptable to the Debtors;

(c)    The Confirmation Order (in form and substance reasonably acceptable to the parties to the RSA to the extent set forth in the RSA) shall have been entered by the Bankruptcy Court and shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(d)    All conditions to the consummation of the New Money Investment, including (without limitation) all conditions set forth in the Investment Agreement, shall have been satisfied or waived by the Plan Sponsor and the Debtors;

(e)    All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan, including any consents required from the Required Consenting Noteholders and the Consenting Equity Holders pursuant to the RSA, shall have been obtained;

(f)    The Bankruptcy Court shall have approved the RSA pursuant to a court order, which shall be in all respects reasonably acceptable to the Required Consenting Noteholders and the Consenting Equity Holders;

(g)    All actions, documents, certificates, and agreements necessary to implement this Plan shall (i) be acceptable to the Required Consenting Noteholders and the Consenting Equity Holders to the extent set forth in the RSA, and (ii) have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(h)    All Allowed DIP Repo Claims shall have been indefeasibly paid in full in cash, will have been indefeasibly paid in cash simultaneously with the occurrence of the Effective Date, or will have been refinanced pursuant to the Exit Repo Facility simultaneously with the occurrence on the Effective Date;

(i)    The Exit Repo Facility Documents shall (i) have been (or deemed to be) executed and delivered, and any conditions precedent to effectiveness therein have been satisfied or waived in accordance therewith; and (ii) be in full force and effect and binding upon the relevant parties;

(j)    All fees and expenses required to be paid to PIMCO, the Indenture Trustee, the Consenting Equity Holders, and their respective advisors as of the Effective Date shall be indefeasibly paid in cash simultaneously with the occurrence of the Effective Date to the extent due and payable as otherwise set forth herein; and

(k)      Cash in the amount of $65 million shall be indefeasibly paid to the
Indenture Trustee simultaneously with the occurrence of the Effective Date in accordance
with Section 3.4(b)(ii) of the Plan.

## Section 10.3    Waiver of Conditions Precedent

The conditions to Confirmation of the Plan and to the Effective Date set forth in this
Article X may be waived at any time upon waivers of the Debtors; *provided*, *however*, that the
conditions precedent set forth in Section 10.2(h) may only be waived by the DIP Repo Agent (at
the direction of the DIP Repo Facility Purchasers, in their sole discretion); with respect to
Section 10.2(e) and Section 10.2(g) by the Plan Sponsor, to the extent that such consents or
approvals are required to be obtained by the Plan Sponsor; and with respect to Section 10.2(a),
Section 10.2(b),  Section 10.2(e), Section 10.2(f), Section 10.2(g), Section 10.2(j), and Section
10.2(k), by the Required Consenting Noteholders and the Consenting Equity Holders or as
otherwise required by the RSA.

## Section 10.4    Effect of Failure of a Condition

If the Effective Date does not occur, the Plan shall be null and void in all respects and
nothing contained in the Plan or the Amended Disclosure Statement shall: (a) constitute a waiver
or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the
rights of the Debtors, any holders of Claims, or any other Person; or (c) constitute an admission,
acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Person in any
respect.

# ARTICLE XI

# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## Section 11.1    Modification and Amendments

Except as otherwise specifically provided herein and subject to the RSA, the Debtors
reserve the right to modify the Plan as to material terms and seek Confirmation consistent with
the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to
certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and
Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors
expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the
Debtors one or more times, after Confirmation, and, to the extent necessary, may initiate
proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan or remedy any defect
or omission, or reconcile any inconsistencies in the Plan, the Amended Disclosure Statement, or
the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent
of the Plan.

## Section 11.2    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the
Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the

Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*Section 11.3    Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke, subject to the RSA, or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtors or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XII

## RETENTION OF JURISDICTION

*Section 12.1    Retention of Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and the Plan, including jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which a Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including Claims based on the Debtors' rejection of Executory Contracts or Unexpired Leases, Claims based on Cure amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors amending, modifying, or supplementing the Rejection Schedule; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)       ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)       adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)       adjudicate, decide, or resolve any and all matters related to any Cause of Action;

(g)       adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)       resolve any avoidance or recovery actions under sections 105, 502(d), 542 through 551, and 553 of the Bankruptcy Code;

(i)       resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

(j)       issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

(k)       resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications, and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(l)       enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(m)       adjudicate any and all disputes arising from or relating to distributions under the Plan;

(n)       consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(o)       determine requests for the payment of Claims entitled to priority pursuant to the Bankruptcy Code; and

(p)       hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan.

All of the foregoing applies following the Effective Date; *provided* that, from the Confirmation Date through the Effective Date, in addition to the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to all other matters of this Plan that were subject to its jurisdiction prior to the Confirmation Date; *provided*, *further*, that the Bankruptcy Court shall not

have nor retain exclusive jurisdiction over any post-Effective Date agreement, including the Exit Repo Facility Documents, the Cash Flow Exit Facility Agreement, or the New Notes Indenture. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

*Section 13.1    Immediate Binding Effect*

Subject to Section 10.2, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*Section 13.2    Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*Section 13.3    Dissolution of Statutory Committees*

On the Effective Date, all statutory committees, if any, appointed by the United States Trustee under section 1102 of the Bankruptcy Code shall dissolve and each member and each Professional retained by such statutory committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on such statutory committee, the Plan, or the Chapter 11 Cases, except with respect to any matters concerning any Fee Claims held or asserted by any Professional retained by such statutory committee.

*Section 13.4    Reservation of Rights*

None of the Plan, any statement or provision contained in the Plan, or any action taken or not taken by any Debtor with respect to the Plan, the Amended Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests before the Effective Date.

*Section 13.5    Successors and Assigns*

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Person.

*Section 13.6    Service of Documents*

After the Effective Date, any pleading, notice or other document required by the Plan to be served or delivered shall be served as follows:

If to the Debtors or the Reorganized Debtors:

c/o Stearns Lending, LLC
750 East Highway 121 Bypass, Suite 150
Lewisville, TX 75067
Attention: General Counsel

- and -

Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square, Floor 26
New York, NY 10036
Attn: Jay Goffman, Mark McDermott, and Shana Elberg
(212) 735-3000

After the Effective Date, the Debtors may, in their sole discretion, notify Persons that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Persons must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have filed such renewed requests.

*Section 13.7    Entire Agreement*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*Section 13.8    Severability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void, or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

54

Notwithstanding any such holding, alteration, or interpretation, but subject to the RSA, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.

### Section 13.9    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Debtors' counsel, by contacting Skadden, Arps, Slate, Meagher and Flom LLP, 4 Times Square, New York, New York 10036, Attn: Evan Hill and Edward Mahaney-Walter, at the Bankruptcy Court's website at https://ecf.deb.uscourts.gov, or the Debtors' case website at https://cases.primeclerk.com/stearns.

### Section 13.10  Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Plan securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Reorganized Stearns Holdings Interests offered and sold under the Plan.

### Section 13.11  Conflicts

Except as set forth in the Plan, to the extent that any provision of the Amended Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

Dated:    New York, New York
           September 19, 2019

                                      STEARNS HOLDINGS, LLC, on behalf of itself and its
                                        subsidiary Debtors

                                      */s/ David Schneider*_____
                                        Name: David Schneider
                                        Title: Chief Executive Officer

Dated:    New York, New York
          September 19, 2019

PROTOS ACQUISITION, LLC

*/s/ Nadim El Gabbani*
Name: Nadim El Gabbani
Title: President